**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NORCOLD LLC,[1] | Case No. 25-11933 (TMH) |
| Debtor. | |

**AMENDED DISCLOSURE STATEMENT FOR THE AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR NORCOLD LLC**

**Dated: January 13, 2026**

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Jared W. Kochenash (No. 6557)
Daniel Trager (No. 7465)
Roger L. Sharp (No. 7454)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Emails:  sbeach@ycst.com
         mlunn@ycst.com
         jkochenash@ycst.com
         dtrager@ycst.com
         rsharp@ycst.com

*Counsel to the Debtor and Debtor in Possession*

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is:  Norcold LLC (6081).  For purposes of this chapter 11 case, the Debtor's service address is 7101 Jackson Road, Ann Arbor, MI 48103.

## DISCLOSURE STATEMENT DATED JANUARY 13, 2026

\*       \*       \*

**All creditors are encouraged to read and carefully consider this Disclosure Statement, including the Plan, and the matters described under "Risk Factors" in Article XIV prior to submitting ballots in response to this solicitation.  This Disclosure Statement is being delivered to you because you are the holder of, or have otherwise asserted, a Claim or Claims against, or Interests in, Norcold LLC, as debtor and debtor in possession (the "<u>Debtor</u>").**

\*       \*       \*

**The Debtor believes that the *Amended Chapter 11 Plan of Liquidation for Norcold LLC* (the "<u>Plan</u>") is in the best interests of creditors and other stakeholders.[2]  All claimants entitled to vote thereon are urged to vote in favor of the Plan.  A summary of the voting instructions is set forth in Article I.F.2.  More detailed instructions are included in the ballots that will be distributed to the creditors entitled to vote on the Plan.  To be counted, your ballot must be duly completed, executed, and received by the Debtor's voting, notice, and claims agent, Stretto, Inc. (the "<u>Notice and Claims Agent</u>") by 4:00 p.m. (ET) on February 12, 2026 (the "<u>Voting Deadline</u>"), unless extended.**

\*       \*       \*

**All of the projected recoveries to creditors set forth herein are based upon the analysis performed by the Debtor and its professionals.  Although the Debtor has made every effort to verify the accuracy of the information presented herein and in the exhibits attached hereto, the Debtor cannot make any representations or warranties regarding the accuracy of the information.**

\*       \*       \*

**Although the Debtor has made every effort to ensure that this summary provides adequate information with respect to the Plan, it does not purport to be complete and is qualified to the extent it does not set forth the entire text of the Plan.  If there is any inconsistency between the Plan and any exhibits attached thereto or documents described therein and the summary of the Plan and such other documents contained in this Disclosure Statement, the Plan shall control.  Accordingly, each Holder of a Claim or Interest should review the Plan in its entirety.**

\*       \*       \*

**The Confirmation and the Effective Date of the proposed Plan are subject to material conditions precedent. *See* Article IX.  There is no assurance that these conditions will be satisfied or waived.**

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or First Day Declaration (as defined herein).

\*    \*    \*

**The Plan contains release provisions and provides that the following Entities will be "Releasing Parties": (i) the Released Parties; (ii) all Holders of Claims or Interests who vote to accept the Plan and who do not opt out of the releases in the Plan; (iii) all Holders of Claims or Interests who vote to reject the Plan and who do not opt out of the releases in the Plan; and (iv) with respect to each Entity in clause (i) through (iii), each such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.**

\*    \*    \*

No person is authorized by the Debtor in connection with the Plan or the solicitation of acceptances of the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits attached hereto or incorporated by reference or referred to herein.  If such information or representation is given or made, it may not be relied upon as having been authorized by the Debtor.  The Debtor will make available to Holders of Claims entitled to vote on the Plan such additional information as may be required by applicable law prior to the Voting Deadline.

\*    \*    \*

The information contained in this Disclosure Statement, including the information regarding the history, business, and operations of the Debtor, the historical and projected financial information regarding the Debtor, and the liquidation analysis relating to the Debtor, is included for purposes of soliciting acceptances of the Plan, but, as to contested matters and adversary proceedings, is not to be construed as admissions or stipulations, but rather as statements made in settlement negotiations.

\*    \*    \*

This Disclosure Statement contains forward-looking statements based primarily on the current expectations of the Debtor and projections about future events and financial trends affecting the financial condition of the Debtor.  The words "believe," "may," "estimate," "continue," "anticipate," "intend," "expect," and similar expressions identify these forward-looking statements.  These forward-looking statements are subject to a number of risks, uncertainties, and assumptions, including those described below under the caption "Risk Factors" in Article XIV.  In light of these risks and uncertainties, the forward-looking events and circumstances discussed in this Disclosure Statement may not occur, and actual results could differ materially from those anticipated in the forward-looking statements.  The Debtor does not undertake any obligation to update or revise publicly any forward-looking statements, whether as a result of new information, future events, or otherwise.

\*    \*    \*

This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission (the "SEC"), any state securities commission, any securities exchange or association; nor has the SEC, any state securities commission, any securities exchange, or association passed upon the accuracy or adequacy of the statements contained herein.

\*     \*     \*

Information contained herein is subject to completion or amendment.  The Debtor reserves the right to file an amended plan and related disclosure statement from time to time, subject to the terms of the Plan.

## TABLE OF CONTENTS

I.    OVERVIEW OF THE PLAN ....................................................................................... 1

   A.    Introduction .......................................................................................................... 1

   B.    The Plan ............................................................................................................... 1

   C.    The Adequacy of This Disclosure Statement ...................................................... 3

   D.    Summary of Classes and Treatment of Claims or Interests ................................ 3

   E.    Solicitation Package ............................................................................................ 5

   F.    Voting and Confirmation of the Plan .................................................................. 6

      1.    Certain Factors to be Considered Prior to Voting .................................... 6

      2.    Voting Procedures and Requirements ...................................................... 7

      3.    Confirmation Hearing .............................................................................. 8

      4.    Confirmation ............................................................................................ 8

      5.    Acceptance ............................................................................................... 9

      6.    Feasibility ................................................................................................ 9

      7.    Best Interests Test; Liquidation Analysis ............................................... 9

      8.    Alternatives to Confirmation and Consummation of the Plan ............... 10

II.    HISTORY OF THE DEBTOR ................................................................................... 10

   A.    Organizational Structure ................................................................................... 10

   B.    Business Overview ............................................................................................ 11

      1.    Background ............................................................................................. 11

   C.    Prepetition Capital Structure ............................................................................ 11

      1.    Secured Indebtedness ............................................................................. 11

      2.    Unsecured Indebtedness ......................................................................... 12

   D.    Circumstances Giving Rise to the Chapter 11 Case ......................................... 12

      1.    Financial Performance, Products Liability Litigation, and Liquidity Constraints ........ 12

      2.    Chapter 11 Preparations ........................................................................ 14

      3.    Background of DCA and the DCA Acquisition ..................................... 15

      4.    Product Liability Claims and Potentially Responsive Insurance Policies ................... 16

III.    THE CHAPTER 11 CASE ........................................................................................ 17

   A.    First Day Motions and Orders ........................................................................... 17

   B.    Post-Petition DIP Financing ............................................................................. 18

   C.    The Debtor's Sale Process and Related Motions .............................................. 18

   D.    Other Procedural and Administrative Motions ................................................. 19

   E.    Appointment of the Official Committee of General Unsecured Creditors ....... 19

F.    Schedules and Bar Dates ................................................................................. 19

G.    The Appointment of the Independent Manager and the Investigation ............................ 19

IV.    TREATMENT OF CLAIMS AND INTERESTS ............................................................... 21

A.    Administrative Claims ................................................................................... 21

B.    Professional Fee Claims and Administrative Claims of OCPs ..................................... 22

    1.    Final Fee Applications ........................................................................... 22

    2.    Administrative Claims of OCPs ................................................................ 22

    3.    Post-Effective Date Fees and Expenses ....................................................... 22

    4.    Professional Fee Reserve Amount .............................................................. 23

    5.    Professional Fee Reserve ........................................................................ 23

C.    Priority Tax Claims ...................................................................................... 23

D.    DIP Claims ............................................................................................... 24

E.    U.S. Trustee Statutory Fees ............................................................................. 24

F.    Classified Claims and Interests ........................................................................ 24

    1.    Class 1 – Other Priority Claims ................................................................ 25

    2.    Class 2 – Other Secured Claims ................................................................ 25

    3.    Class 3 – Prepetition Loan Guarantee Claims ................................................ 26

    4.    Class 4 – General Unsecured Claims .......................................................... 26

    5.    Class 5 – Litigation Claims ..................................................................... 27

    6.    Class 6 – Intercompany Claims ................................................................ 27

    7.    Class 7 – Section 510(b) Claims ............................................................... 27

    8.    Class 8 – Interests ................................................................................ 27

G.    Special Provisions Governing Unimpaired Claims .................................................. 28

H.    Elimination of Vacant Classes .......................................................................... 28

I.    Controversy Concerning Impairment .................................................................. 28

J.    Subordination of Claims ................................................................................ 28

K.    Reservation of Rights Regarding Claims .............................................................. 28

L.    Postpetition Interest on Claims ......................................................................... 28

M.    Insurance ................................................................................................. 29

V.    MEANS FOR IMPLEMENTATION OF THE PLAN ......................................................... 29

A.    Sources of Consideration for Plan Distributions .................................................... 29

B.    Wind-Down .............................................................................................. 29

C.    Vesting of Assets ........................................................................................ 29

D.    Liquidating Trust ........................................................................................ 29

1.    Establishment of the Liquidating Trust..................................................... 29

2.    Transfer of the Liquidating Trust Assets ................................................. 30

3.    Insurance Rights Transfer ....................................................................... 30

4.    Liquidating Trust Agreement................................................................... 30

5.    Purpose of the Liquidating Trust ............................................................ 31

6.    Liquidating Trustee................................................................................. 31

7.    Termination of the Liquidating Trust ...................................................... 34

E.    Insurance Provisions ................................................................................... 34

F.    U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust........ 34

G.    Preservation of Causes of Action ................................................................ 35

H.    Corporate Action ......................................................................................... 36

1.    Transfer of Assets and Assumption of Liabilities..................................... 36

2.    Removal of Managers and Officers; Termination of Employees and Consultants ....... 36

I.    Books and Records ...................................................................................... 36

J.    Effectuating Documents and Further Transactions....................................... 37

K.    Section 1146 Exemption from Certain Taxes and Fees................................... 37

L.    Sale Orders.................................................................................................. 37

M.    Authority to Act .......................................................................................... 37

N.    No Revesting of Liquidating Trust Assets..................................................... 37

VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES.......................................................................... 38

A.    General Treatment ....................................................................................... 38

B.    Rejection Damages Claims .......................................................................... 38

VII.    PROVISIONS GOVERNING DISTRIBUTIONS ........................................... 39

A.    Distribution Record Date ............................................................................ 39

B.    Withholdings ............................................................................................... 39

C.    Date of Distributions ................................................................................... 39

D.    Disbursing Agent ........................................................................................ 40

E.    Powers of Disbursing Agent ........................................................................ 40

F.    Surrender of Instruments............................................................................. 40

G.    IRS Forms ................................................................................................... 40

H.    Delivery of Distributions ............................................................................. 41

I.    Manner of Payment ..................................................................................... 41

J.    Foreign Currency Exchange Rate ................................................................ 41

K.    Setoffs and Recoupments............................................................................ 42

L.   Minimum Distributions ................................................................................ 42

M.   Allocation of Distributions Between Principal and Interest ......................... 42

N.   Distributions Free and Clear ........................................................................ 42

O.   Claims Paid or Payable by Third Parties ..................................................... 42

   1.   Claims Paid by Third Parties .................................................................. 42

   2.   Claims Payable by Third Parties ............................................................. 43

   3.   Applicability of Insurance Policies ......................................................... 43

VIII.   PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS 43

A.   Allowance of Claims .................................................................................... 43

B.   Claims Administration Responsibilities ...................................................... 43

C.   Estimation of Claims .................................................................................... 44

D.   Adjustment to Claims Without Objection ..................................................... 44

E.   Time to File Objections to Claims ............................................................... 44

F.   Disallowance of Late Claims ....................................................................... 44

G.   Disputed Claims ........................................................................................... 44

H.   No Distributions Pending Allowance .......................................................... 45

I.   Distributions After Allowance ..................................................................... 45

IX.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ............................. 45

A.   Conditions Precedent .................................................................................... 45

B.   Waiver of Conditions ................................................................................... 46

C.   Effect of Vacatur of the Confirmation Order ............................................... 46

D.   Votes Solicited in Good Faith ...................................................................... 46

X.   RELEASE, INJUNCTION, AND RELATED PROVISIONS ............................. 47

The Plan contains the following release, injunction, and related provisions: ............................. 47

A.   Releases by the Debtor .................................................................................. 47

B.   Releases by Holders of Claims ..................................................................... 47

C.   Exculpation .................................................................................................. 48

D.   Injunction ..................................................................................................... 49

E.   Waiver of Statutory Limitations on Releases ............................................... 49

F.   No Discharge ................................................................................................ 50

G.   Release of Liens ........................................................................................... 50

XI.   RETENTION OF JURISDICTION ................................................................... 51

XII. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ............. 53

A.   Modification of the Plan ............................................................................... 53

B. Other Amendments ............................................................................................. 53

C. Effect of Confirmation on Modifications ........................................................... 53

D. Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date ....... 53

XIII. MISCELLANEOUS PROVISIONS.............................................................................. 53

A. Debtor's Operation from Confirmation Hearing Through Effective Date ....................... 53

B. Immediate Binding Effect................................................................................... 54

C. Additional Documents ........................................................................................ 54

D. Substantial Consummation .................................................................................. 54

E. Reservation of Rights ......................................................................................... 54

F. Successors and Assigns....................................................................................... 54

G. Determination of Tax Liabilities......................................................................... 54

H. Dissolution of the Committee ............................................................................. 55

I. Notices ............................................................................................................... 55

J. Term of Injunctions or Stays............................................................................... 56

K. Entire Agreement ............................................................................................... 56

L. Plan Supplement Exhibits .................................................................................. 56

M. Governing Law .................................................................................................. 56

N. Non-Severability of Plan Provision Upon Confirmation.................................... 57

O. Closing of Chapter 11 Case ................................................................................ 57

XIV. RISK FACTORS ...................................................................................................... 57

A. Plan Confirmation .............................................................................................. 57

B. The Effective Date May Not Occur .................................................................... 58

C. Allowance of Claims........................................................................................... 58

D. Risk Factors That May Affect Recoveries Available to Holders of Allowed Claims Under the Plan.................................................................................................. 58

1. The Amounts of Allowed Claims May Adversely Affect the Recovery of Some Holders of Allowed Claims ............................................................. 58

2. Any Valuation of Any Assets to be Distributed Under the Plan is Speculative ........... 58

3. The Debtor Cannot Guarantee the Timing of Distributions ........................... 58

4. Certain Tax Implications of the Debtor's Bankruptcy.................................... 59

5. Liquidating Trust's Expenses ........................................................................ 59

E. Risk Factors Relating to Securities Law ............................................................. 59

1. Uncertainty of Value..................................................................................... 60

F. Disclosure Statement Disclaimer........................................................................ 60

1.  The Financial Information Contained in This Disclosure Statement Has Not Been Audited.................................................................................................... 60

2.  Information Contained in This Disclosure Statement is for Soliciting Votes ............... 60

3.  This Disclosure Statement was not Reviewed or Approved by the SEC ..................... 60

4.  This Disclosure Statement May Contain Forward Looking Statements....................... 60

5.  No Legal or Tax Advice Is Provided to You by This Disclosure Statement ................. 61

6.  No Admissions Made.................................................................................... 61

7.  Failure to Identify Potential Objections ........................................................... 61

8.  No Waiver of Right to Object or Right to Recover Transfers and Assets..................... 61

9.  Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors 61

10.  Potential Exists for Inaccuracies, and the Debtor Has No Duty to Update .................. 61

11.  No Representations Outside This Disclosure Statement are Authorized....................... 62

XV. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF CONSUMMATION OF THE PLAN....................................................................................... 62

A.   CONSEQUENCES TO HOLDERS OF GENERAL UNSECURED CLAIMS ............. 63

1.  General Consequences to Holders of General Unsecured Claims in Class 4 and Litigation Claims in Class 5 ...................................................................................... 63

2.  Distributions in Respect of Accrued But Unpaid Interest ........................................... 64

B.   TAX TREATMENT OF THE LIQUIDATING TRUST AND HOLDERS OF BENEFICIAL INTERESTS THEREIN ................................................................. 65

1.  General "Liquidating Trust" Tax Reporting by the Liquidating Trust and its Beneficiaries 65

2.  Tax Reporting for Assets Allocable to Disputed Claims.............................................. 66

C.   WITHHOLDING ON DISTRIBUTIONS AND INFORMATION REPORTING.......... 67

XVI.   ADDITIONAL INFORMATION................................................................... 67

XVII.   RECOMMENDATION AND CONCLUSION.............................................. 68

**EXHIBITS**

Exhibit A        Chapter 11 Plan of Liquidation for Norcold LLC

Exhibit B        Liquidation Analysis

33875574.7

# I.     OVERVIEW OF THE PLAN

---

### RECOMMENDATION BY THE DEBTOR

It is the Debtor's opinion that Confirmation and implementation of the Plan is in the best interests of the Estate and the Debtor's creditors.  Therefore, the Debtor recommends that all creditors whose votes are being solicited timely submit a ballot to **accept** the Plan.

---

## A.     Introduction

The following is a brief overview of certain material provisions of the Plan.  This overview is qualified by reference to the provisions of the Plan, which is attached hereto as **Exhibit A**, and the exhibits thereto, as amended from time to time.  In the event that any inconsistency or conflict exists between this Disclosure Statement and the Plan, the terms of the Plan shall control.

The requirements for Confirmation, including the vote of creditors entitled to vote on the Plan and certain of the statutory findings that must be made by the Bankruptcy Court for a chapter 11 plan to be confirmed, are set forth in Article I.F.  Confirmation of the Plan and the occurrence of the Effective Date are subject to certain material conditions, which are summarized in Article IX.  There is no assurance that these conditions will be satisfied or waived.  At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the applicable requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a chapter 11 plan are that the plan: (a) is accepted by the requisite holders of claims or interests in impaired classes under the plan; (b) is in the "best interests" of each holder of a claim or interest in each impaired class under the plan; (c) is feasible; and (d) complies with the applicable provisions of the Bankruptcy Code.

In this instance, only Holders of Claims in Class 3 (Prepetition Loan Guarantee Claims), Class 4 (General Unsecured Claims), and Class 5 (Litigation Claims) are entitled to vote to accept or reject the Plan.  Class 6 (Intercompany Claims), Class 7 (Section 510(b) Claims), and Class 8 (Interests) are Impaired and will not receive distributions under the Plan and are therefore deemed to reject the Plan.  Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are Unimpaired and therefore presumed to accept the Plan.

## B.     The Plan

The Debtor filed for chapter 11 bankruptcy protection on November 3, 2025.

The Debtor commenced this chapter 11 case to implement a sale of all or substantially all of its Assets.  Prior to the Petition Date, the Debtor and its advisors analyzed and explored potential transactions, conducted comprehensive liquidity analyses, and considered potential restructuring alternatives to address the Debtor's liquidity issues before concluding that commencing a sale process was the most viable path to preserve and maximize the value of the Assets.  Accordingly, the Debtor engaged in extensive negotiations with its primary stakeholders and reached an agreement for Dave Carter & Associates, Inc. ("DCA") to serve as the "Stalking Horse Bidder," subject to higher or otherwise better bids received during the auction process.  The Debtor has

entered into a stalking horse asset purchase agreement with DCA pursuant to which DCA will purchase substantially all of the Debtor's assets, subject to higher and better offers. The Debtor will distribute the proceeds from the Sale and liquidate any assets excluded from the Sale in accordance with the priority scheme set forth in the Bankruptcy Code.

The Plan also provides for, among other things: (a) the payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Class 1 Other Priority Claims, and Allowed Class 2 Other Secured Claims in full, or otherwise renders such Claims Unimpaired, (b) the appointment of the Liquidating Trustee pursuant to the mechanics set forth in the Plan, and (c) the establishment of a Liquidating Trust to (i) administer claims and liquidate and distribute the Liquidating Trust Assets to the Holders of Allowed Class 4 General Unsecured Claims and Class 5 Litigation Claims, and (ii) wind down the Debtor.

As set forth in the Plan, the Liquidating Trust Assets[3] will vest in and be transferred to the Liquidating Trust on the Effective Date and include all property of the Debtor's Estate not transferred pursuant to the Sale or distributed to holders of Allowed Claims on the Effective Date, including, without limitation, the Sale Proceeds and the Retained Causes of Action; *provided, however*, that the following shall not constitute Liquidating Trust Assets: (i) the Debtor's Cash reserved for payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Other Priority Claims and (ii) the Professional Fee Reserve.

The Holders of Allowed Class 4 General Unsecured Claims and Allowed Class 5 Litigation Claims will be the beneficiaries of the Liquidating Trust and will receive their *pro rata* share of the Class 4 Liquidating Trust Interests and Class 5 Liquidating Trust Interests, as applicable, which Class 4 Liquidating Trust Interests and Class 5 Liquidating Trust Interests will entitle the holders thereof to receive their *pro rata* share of the distributable proceeds from the Liquidating Trust Assets.

Holders of Class 6 Intercompany Claims, Class 7 Section 510(b) Claims, Class 8 Interests are not entitled to any recovery under the Plan.

A chapter 11 bankruptcy case permits a debtor to resolve its affairs and distribute the proceeds of its estate pursuant to a confirmed chapter 11 plan. To that end, the Debtor filed the Plan, the terms of which are more fully described herein, and a copy is attached hereto as **Exhibit A**. The Plan contemplates a liquidation of the Debtor and the Estate and is therefore referred to as a "plan of liquidation." The primary objective of the Plan is to maximize the value of recoveries to Holders of Allowed Claims and to distribute all property of the Estate that is or becomes available for distribution in accordance with the Bankruptcy Code and Plan. The Debtor asserts that the Plan accomplishes this objective and is in the best interests of the Estate, and therefore seeks to confirm the Plan.

---

[3] The Plan defines the "Liquidating Trust Assets" as all property of the Debtor's Estate not transferred pursuant to the Sale or distributed to holders of Allowed Claims on the Effective Date, including, without limitation, the Sale Proceeds, the Retained Causes of Action, and the Wind-down Amount; *provided, however*, that the following shall not constitute Liquidating Trust Assets: (i) the Debtor's Cash reserved for payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Other Priority Claims and (ii) the Professional Fee Reserve.

The Plan classifies Holders of Claims or Interests according to the type and nature of the Holder's Claim or Interest, as more fully described below. The Plan designates the Classes of Claims against, and Interests in, the Debtor and specifies which Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; or (c) presumed to accept or deemed to reject the Plan. Claims against the Debtor and Interests in the Debtor are classified in eight separate Classes, as described herein.

## C.      The Adequacy of This Disclosure Statement

Before soliciting acceptances of a proposed chapter 11 plan, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a written disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the plan. The Debtor is providing this Disclosure Statement in accordance with and in satisfaction of those requirements. This Disclosure Statement includes, without limitation, information about:

- the Plan, including a summary, the procedures for voting on the Plan, and the projected recoveries thereunder (Article I hereof);

- the statutory requirements for confirming the Plan (Article I.F hereof);

- the Debtor's organizational structure, business operations, and financial obligations (Article II hereof);

- the events leading to the filing of the Chapter 11 Case (Article II.D hereof);

- significant pleadings filed in the Chapter 11 Case (Article III hereof);

- the classification and treatment of Claims or Interests under the Plan, including identification of the Holders of Claims entitled to vote on the Plan (Article IV hereof);

- the means for implementation of the Plan, the provisions governing distributions to certain Holders of Claims pursuant to the Plan, the procedures for resolving Disputed Claims, and other significant aspects of the Plan (Article V hereof);

- the injunction, releases, and exculpation contemplated by the Plan (Article X hereof);

- certain risk factors that Holders of Claims should consider before voting to accept or reject the Plan (Article XIV hereof); and

- certain United States federal income tax consequences of the Plan (Article XV hereof).

## D.      Summary of Classes and Treatment of Claims or Interests

The classification of Claims or Interests, the estimated aggregate amount of Claims in each Class, and the amount and nature of distributions to Holders of Claims or Interests in each Class

are summarized in the table below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.  For a discussion of certain additional matters related to Administrative Claims and Priority Tax Claims, *see* Article II.A., C. of the Plan.

Each amount designated in the table below as "Estimated Percentage Recovery" for each Class is the quotient of the estimated Cash or other Liquidating Trust Assets to be distributed to Holders of Allowed Claims in that Class, divided by the estimated aggregate amount of Allowed Claims in that Class.  In determining those amounts, the Debtor has assumed that the Plan is consummated as described herein.

These calculations do not include any value attributed to recoveries on account of the Retained Causes of Action.  The Debtor is not in a position to provide an estimated value for recoveries for the Retained Causes of Action, such statement merely reflecting the uncertainty and cost of litigation generally as opposed to the merits of the Retained Causes of Action.

For a discussion of various factors that could materially affect the amount of the Liquidating Trust's assets to be distributed pursuant to the Plan, see Article XIV.

| CLASS | CLAIM OR INTEREST | STATUS/ ENTITLED TO VOTE | ESTIMATED ALLOWED CLAIMS OR INTERESTS | ESTIMATED RECOVERY (%)[4] |
|---|---|---|---|---|
| Class 1 | Other Priority Claims | **Unimpaired** Presumed to Accept the Plan. Not Entitled to Vote. | N/A | N/A |
| Class 2 | Other Secured Claims | **Unimpaired** Presumed to Accept the Plan. Not Entitled to Vote. | N/A | N/A |
| Class 3 | Prepetition Loan Guarantee Claims | **Impaired** Entitled to Vote. | $344,326,318 | < 1%[5] |

---

[4] The projected recoveries for Class 3 Prepetition Loan Guarantee Claims, Class 4 General Unsecured Claims, and Class 5 Litigation Claims will be impacted by, among other things, the amount of such Claims ultimately Allowed following the completion of the claims reconciliation process, the proceeds (if any) realized from the pursuit of Retained Causes of Action, the proceeds (if any) realized from Insurance Policies, and the Liquidating Trust's expenses.  Consequently, the projected recoveries listed herein are estimates, provided solely for informational purposes, and are subject to material change.  The estimates set forth herein are solely based on the Cash anticipated to be available for Classes 3, 4, and 5 as of the Effective Date, and do not include any assumptions regarding the treatment of potential recoveries from the Retained Causes of Action or Insurance Policies. Moreover, the estimates for Class 4 (General Unsecured Claims) are subject to material change based on the Debtor's reconciliation of filed Claims.

[5] The Prepetition Loan Guarantee Claims may also be assumed by the Purchaser.

33875574.7

| Class 4 | General Unsecured Claims | **Impaired** Entitled to Vote. | $4,000,000[6] | < 2% |
| Class 5 | Litigation Claims | **Impaired** Entitled to Vote. | Undetermined | < 2% |
| Class 6 | Intercompany Claims | **Impaired** Deemed to Reject the Plan. Not Entitled to Vote. | Undetermined | 0% |
| Class 7 | Section 510(b) Claims | **Impaired** Deemed to Reject the Plan. Not Entitled to Vote. | Undetermined | 0% |
| Class 8 | Interests | **Impaired** Deemed to Reject the Plan. Not Entitled to Vote. | Undetermined | 0% |

### E.  Solicitation Package

The package of materials (the "Solicitation Package")[7] to be sent to the Holders of the Prepetition Loan Guarantee Claims in Class 3, Holders of General Unsecured Claims in Class 4, and Holders of Litigation Claims in Class 5 (collectively, the "Voting Classes") will contain:

- a cover letter describing:  (a) the contents of the Solicitation Package; (b) information about how to obtain access, free of charge, to the Plan, the Plan Supplement, this Disclosure Statement, and the order approving the Disclosure Statement and approving Plan voting tabulation procedures (the "Disclosure Statement Order"), together with the exhibits thereto, on the case administration website; and (c) information about how to obtain, free of charge, paper copies of, or a thumb drive containing, any of the documents included in the Solicitation Package;

- a notice of the Confirmation Hearing;

- an appropriate form of ballot, instructions on how to complete the ballot and a pre-paid, preaddressed ballot return envelope and such other materials as the Bankruptcy Court may direct; and

---

[6]  This amount includes General Unsecured Claims that may be assumed in connection with the Sale, including warranty claims currently estimated to be approximately $2.2 million.

[7]  Only Holders of Claims in the Voting Classes that satisfy the eligibility criteria set forth in section B.(iii)(a) of the *Debtor's Motion for Entry of an Order (A) Approving the Disclosure Statement; (B) Establishing Solicitation and Tabulation Procedures; (C) Approving the Forms of Ballots and Solicitation Materials; (D) Establishing the Voting Record Date; (E) Fixing the Date, Time, and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto; and (F) Granting Related Relief*  [Docket No. 53] (the "Solicitation Procedures Motion") will receive Solicitation Packages and be entitled to vote on the Plan.

33875574.7

- any supplemental documents filed with the Bankruptcy Court and any documents that the Bankruptcy Court orders to be included in the Solicitation Package.

Holders of Claims or Interests in Classes 1, 2, 6, 7, and 8 will receive a notice informing such Holders that they are not entitled to vote under the terms of the Plan.

The Debtor will cause the Notice and Claims Agent to complete the distribution of the Solicitation Packages to Holders of Claims in the Voting Classes on or before two Business Days after entry of the Disclosure Statement Order.

The Solicitation Package may also be obtained free of charge from Stretto, Inc., the Debtor's Notice and Claims Agent by: (1) visiting https://cases.stretto.com/Norcold; (2) emailing the Notice and Claims Agent at TeamNorcold@stretto.com; or (3) calling (833) 256-5483 (toll free).

## F.   **Voting and Confirmation of the Plan**

### 1.   Certain Factors to be Considered Prior to Voting

There are a variety of factors that all Holders of Claims entitled to vote on the Plan should consider prior to voting to accept or reject the Plan.  These factors may impact recoveries under the Plan, including:

- the financial information contained in this Disclosure Statement has not been audited and is based on an analysis of data available at the time of the preparation of the Plan and this Disclosure Statement;

- although the Debtor asserts that the Plan complies with all applicable provisions of the Bankruptcy Code, the Debtor can neither assure such compliance nor that the Bankruptcy Court will confirm the Plan; and

- any delays of either Confirmation or consummation could result in, among other things, increased Administrative Claims or Professional Fee Claims that would likely reduce the recoveries to the Holders of Claims.

2.    <u>Voting Procedures and Requirements</u>

Pursuant to the Bankruptcy Code, only classes of claims against or equity interests that are "impaired" under the terms of a plan of liquidation or reorganization are entitled to vote to accept or reject a plan. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and reinstating maturity.

Classes of Claims or Interests that are not impaired are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan. In addition, Classes of Claims or Interests that will not receive distributions under the Plan are not entitled to vote on the Plan and are deemed to have rejected the Plan. The classification of Claims or Interests is summarized, together with an indication of whether each Class of Claims or Interests is impaired or unimpaired, in Article I.D above. **January 23, 2026** shall serve as the voting record date for purposes of determining which Holders of Filed or scheduled Claims in Classes 3, 4 and 5 are entitled to receive a Solicitation Package.

**Voting on the Plan by the Holders of Claims in Classes 3, 4 and 5 is important. Please carefully follow all of the instructions contained on the ballot(s) provided to you. All ballots must be completed and returned in accordance with the instructions provided. To be counted, each ballot must be:**

**(1) received by the Voting Deadline of <u>4:00 p.m. (ET) on February 12, 2026</u> at the address set forth on the preaddressed envelope provided to you, or**

**(2) submitted electronically via the Notice and Claims Agent's e-ballot portal https://cases.stretto.com/Norcold/ by the Voting Deadline.**

**If you are entitled to vote and you did not receive a ballot, received a damaged ballot, or lost your ballot, please call or email the Notice and Claims Agent, at (833) 256-5483 (toll free) or TeamNorcold@stretto.com. This Disclosure Statement, the Plan, and all of the related exhibits and schedules, including the Plan Supplement, are also available, without charge at https://cases.stretto.com/Norcold/.**

**Ballots cannot be transmitted orally, by email or by facsimile. Accordingly, you are urged to return your signed and completed ballot, by hand delivery, overnight service, regular U.S. mail, or electronically via the Notice and Claims Agent's e-ballot portal https://cases.stretto.com/Norcold/ promptly, so that it is received by the Notice and Claims Agent before the Voting Deadline.**

A vote may be designated (*i.e.*, disregarded) if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not made or solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Under the Bankruptcy Code, the Plan will be "accepted" by a voting Class if (excluding insiders) at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Claims in such voting Class that cast Ballots to accept or reject the Plan vote in favor of the Plan.

3.      <u>Confirmation Hearing</u>

The Debtor will request that the Bankruptcy Court schedule, as promptly as practicable, a hearing to approve this Disclosure Statement as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code.

Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to confirm a plan.  Section 1128(b) provides that a party-in-interest may object to confirmation of a plan.  Objections to confirmation must be filed with the Bankruptcy Court and served on the Debtor as well as the other parties set forth in the notice of the Confirmation Hearing (the "<u>Notice of Confirmation Hearing</u>") by the objection deadline, as set forth in the Notice of Confirmation Hearing.  The Notice of Confirmation Hearing will be mailed to parties at a later date.

At the Confirmation Hearing, the Bankruptcy Court will:

- determine whether the solicitation of votes on the Plan was in compliance with section 1126 of the Bankruptcy Code;

- determine whether the Plan has been accepted by a sufficient number of Holders and amount of claims entitled to vote on the Plan;

- hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of;

- determine whether the Plan meets the confirmation requirements of the Bankruptcy Code; and

- determine whether to confirm the Plan.

4.      <u>Confirmation</u>

To confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtor, including that:[8]

- the Plan has classified Claims and Interests in a permissible manner;

- the Plan complies with the applicable provisions of the Bankruptcy Code;

- the Debtor has complied with the applicable provisions of the Bankruptcy Code;

- the Debtor, as a proponent of the Plan, has proposed the Plan in good faith and not by any means forbidden by law;

---

[8]   The descriptions contained herein are only a summary of certain confirmation requirements; they are not exhaustive of all confirmation requirements and should not be construed as such.

- the disclosures required by section 1125 of the Bankruptcy Code have been made;

- the Plan has been accepted by the requisite votes, except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code, of creditors and equity interest holders, and the Plan is feasible;

- all Statutory Fees due and owing have been paid, or the Plan provides for the payment thereof, on the Effective Date; and

- the Plan is in the "best interests" of all Holders of Claims or Interests in an impaired Class by providing to those Holders on account of their Claims or Interests property of a value, as of the Effective Date, that is not less than the amount that each Holder would receive or retain in a chapter 7 liquidation, unless each Holder of a Claim or Interest in that Class has accepted the Plan.

5.    Acceptance

A plan is accepted by an impaired class of claims if holders of at least two-thirds in dollar amount and a majority in number of claims of that class vote to accept the plan.  Only those holders of claims who actually vote (and are entitled to vote) to accept or to reject a plan count in this tabulation.

6.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor (unless liquidation or reorganization is proposed in the plan).

Because the Plan proposes a liquidation of all of the Debtor's assets, for purposes of this test, the Debtor has analyzed the ability of the Liquidating Trustee to meet its obligations under the Plan.  Based on the Debtor's analysis, including the information contained in **Exhibit B** regarding recoveries available to Holders of Allowed Claims under the Plan, the Liquidating Trustee will have sufficient assets to accomplish its tasks under the Plan.  Therefore, the Debtor believes that its liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

7.    Best Interests Test; Liquidation Analysis

Notwithstanding acceptance of the Plan by each Impaired Class, to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each Holder of a Claim or Interest in any Impaired Class who has not voted to accept the Plan.  Accordingly, if an Impaired Class does not unanimously accept the Plan, the "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of that Impaired Class a recovery on account of the Holder's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that the Holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

Because the Plan proposes a liquidation of all the Debtor's assets, the Debtor has analyzed factors that will impact recoveries (the "Recoveries") available to creditors in each scenario. These factors include, but are not necessarily limited to, professional fees and expenses, asset disposition expenses, applicable taxes, potential Claims arising during the pendency of the Chapter 11 Case or a chapter 7 case and trustee fees and expenses.

The information contained in **Exhibit B** hereto provides a summary of the Recoveries under the Plan and in a chapter 7 liquidation.

In summary, the Debtor has determined that a chapter 7 liquidation would result in diminution in the Recoveries to be realized by Holders of Allowed Claims, as compared to the proposed distributions under the Plan. Consequently, the Debtor has determined that the Plan will provide a greater ultimate return to Holders of Allowed Claims than would a chapter 7 liquidation of the Debtor.

8.    Alternatives to Confirmation and Consummation of the Plan

The Debtor evaluated alternatives to the Plan, including alternative structures and terms of the Plan. While the Debtor concluded that the Plan is the best alternative and will maximize recoveries to Holders of Allowed Claims, if the Plan is not confirmed, the Debtor, or (subject to the Debtor's exclusive periods under the Bankruptcy Code to file and solicit acceptances of a plan or plans) any other party in interest in the Chapter 11 Case, could attempt to formulate and propose a different plan. Further, if no plan under chapter 11 of the Bankruptcy Code can be confirmed, the Chapter 11 Case may be converted to a chapter 7 case. In liquidation cases under chapter 7 of the Bankruptcy Code, a trustee would be appointed to liquidate the remaining assets of the Debtor and distribute proceeds to creditors. The proceeds of the liquidation would be distributed to the respective creditors of the Debtor in accordance with the priorities established by the Bankruptcy Code. For further discussion of the potential impact on the Debtor of the conversion of the Chapter 11 Case to a chapter 7 liquidation, *see* Article XIV.A of this Disclosure Statement. The Debtor has determined that Confirmation and consummation of the Plan is preferable to the available alternatives.

## II.    HISTORY OF THE DEBTOR

An overview of the Debtor's history is set forth below. Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the filing of the Chapter 11 Case is set forth in the *Declaration of Richard Wu in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") [Docket No. 2], available at https://cases.stretto.com/Norcold/court-docket/.

### A.    **Organizational Structure**

An organizational chart showing the Debtor's corporate structure is attached as Exhibit A to the First Day Declaration.

33875574.7

B.   **Business Overview**

1.   Background

The Debtor is a long-time supplier of refrigeration products for mobile applications and was acquired by Thetford Corporation ("Thetford") in 1997.  The Debtor's core business was the manufacturing and distribution of gas absorption refrigerators for RVs, and Thetford's acquisition of the Debtor allowed Thetford to leverage its global operations and expand the refrigeration product line from North America—with the Debtor operating as the global enterprise's refrigeration unit—into the international market.

In 2021, Thetford's shares were sold to Monomoy Capital Partners ("MCP").[9]  MCP continued to utilize the Debtor as Thetford's base of its North American refrigeration operations. By that time, however, the Debtor suffered from poor financial performance as original equipment manufacturers ("OEMs") and end-users started switching to DC compressor technology and the costs associated with product liability litigation and claims continued to mount.  In response to these challenges, the Debtor implemented several cost-cutting measures, including shuttering its U.S. plants, transitioning gas absorption operations to Europe, and sourcing DC compressor units from China.  As a result, the Debtor has no employees and does not manufacture products.  Instead, the Debtor operates as a distributor of RV refrigerators and related parts, and Thetford provides the Debtor, among other subsidiaries, with operational support such as IT, shipping/receiving, sales, engineering, and administrative support.

C.   **Prepetition Capital Structure**

The Debtor is a wholly-owned subsidiary of Thetford LLC, and Thetford LLC is indirectly wholly-owned by Monomoy Capital Partners IV, LP, Monomoy Capital Partners IV Parallel, LP and the Dyson Kissner Moran Corporation.

Subject to the rights of the Debtor and Liquidating Trustee, as applicable, to contest the validity and amount of any purported indebtedness in accordance with the Plan, at the commencement of the Chapter 11 Case, the Debtor's debt obligations consisted of (i) a guarantee on a prepetition secured financing agreement and (ii) numerous unsecured claims by multiple parties, including, without limitation, vendors, suppliers, warranty and rebate claimants, taxing authorities, and litigation claimants.

1.   Secured Indebtedness

The Debtor is a guarantor under that certain Financing Agreement (including all exhibits thereto and as may be amended, modified, or supplemented from time to time, the "Prepetition Financing Agreement"), dated as of December 13, 2021, by and among Trailblazer IV, Inc., Yosemite Intermediate I, Inc., and any person executing a joinder to the Financing Agreement as borrowers (collectively, the "Borrowers"), each subsidiary of any Borrower as guarantors, the lenders from time to time party thereto (the "Prepetition Lenders"), and Cerberus Business Finance Agency, LLC, as collateral and administrative agent (the "Prepetition Agent").  Pursuant to the

---

[9]  Thetford also converted from a corporation to a limited liability company.

Financing Agreement, the Prepetition Lenders extended loans to the Borrowers consisting of (a) a term loan in the aggregate principal amount of $311.8 million and (b) a revolving credit facility in an aggregate principal amount not to exceed $32.5 million at any time outstanding.

The Debtor received both direct and indirect benefits from the Prepetition Financing Agreement.  As noted above, the Debtor has generally operated at a net loss since 2021, and it has relied on the availability of intercompany cash, which is ultimately backed by the Prepetition Financing Agreement and loans made thereunder.  In addition to the liquidity provided to the overall enterprise within which the Debtor operates, the Debtor has also benefitted from efficiencies and cost savings of operating within the enterprise through mechanisms such as shared services.

### 2. Unsecured Indebtedness

The Debtor also has numerous unsecured claims outstanding as of the Petition Date, including, without limitation, amounts owed to vendors, suppliers, warranty and rebate claimants, taxing authorities, and litigation claimants.  The Debtor believes that, collectively, such unsecured claims approximate $4 million, excluding potential litigation claims.

### D. Circumstances Giving Rise to the Chapter 11 Case

1. Financial Performance, Products Liability Litigation, and Liquidity Constraints

The Debtor grew over the decades since its founding in 1959, but in 2010, a fault was discovered in certain refrigerator units.  The Debtor determined that the refrigerator units' boiler tubes were at risk of irregular corrosion, which could lead to gas escaping and pose a fire risk.  This fault led to a major recall (the "Recall") and a subsequent class action lawsuit in 2016.  The Debtor settled the class action lawsuit, which was not insured, for approximately $36 million, and total costs associated with product liability were in excess of $80 million (excluding the class action settlement).

After discovering the issue, the Debtor improved the thickness of its boiler tubes and installed temperature sensors to remedy the underlying fault, but the financial instability created by the Recall continued.  Despite significant investments to improve the quality of the products and reduce costs, the Debtor has been unable to sustain a profitable operation.

The Debtor's financial struggles were exacerbated by a market shift to DC compressor refrigerators that accelerated during the COVID-19 pandemic and changing consumption behaviors.  Around 2018, RV OEMs, which comprised the Debtor's primary customer base, began adopting DC compressor refrigerators which led to a steep decline in the Debtor's revenue.  Then, the COVID-19 pandemic struck, and consumer demand for RVs surged.  As one of only two suppliers of gas absorption refrigeration, the Debtor was unable to meet this increased demand.  This led OEMs to adopt DC compressor refrigerators at a higher rate, making both manufacturers and consumers more familiar and comfortable with the DC compressor technology.  Although the Debtor's revenues increased with the market surge, it nevertheless sustained net loss given the legacy product liability cost overhang.

33875574.7

The Debtor's revenue and market share drastically declined as OEMs and consumers shifted toward a highly competitive DC compressor market. The Debtor has generated a cumulative net loss since 2021, and net revenue declined from approximately $153 million in 2021 to less than $28 million in projected revenue for 2025. In addition to the market share decline, the Debtor has continued to be significantly burdened by costs related to products liability. The Debtor has faced over 10,500 claims related to its products. As a result of such claims, the Debtor has paid approximately $84 million in total settlements since 2010, consisting of $75 million in Recall- related claims and $9 million in non-Recall claims.

Although litigation has gradually decreased over the years, the Debtor has been unable to overcome the resulting financial overhang. The Debtor has largely had to pay out-of-pocket for these losses due to the high cost and high-deductible insurance policies. Currently, the general liability policy has a split self-insured retention ("SIR") endorsement whereby non-Recalled products are subject to a $500,000 SIR on a per occurrence basis, and Recalled products are subject to a $5.0 million SIR on a per occurrence basis. Moreover, although the Debtor obtains its insurance through a broader policy shared among the Thetford enterprise in an effort to obtain efficiency and cost-savings, Norcold-related litigation comprises a majority of the costs, and the Debtor is therefore allocated with about $3 million of the approximately $5 million total premium.

In response to operational challenges as well as the accelerated consumer shift to DC compressor technology, beginning in 2021, the Debtor began to reduce gas absorption production and transition to DC compressor technology. In 2022, the Debtor closed manufacturing facilities in Ohio, resulting in a workforce reduction of approximately 500 full time employees. The Debtor also transferred its limited production of gas absorption refrigerators to a non-Debtor affiliate in Europe, Thetford BV, which serviced any remaining demand of absorption refrigerators starting in 2023. The Debtor further introduced additional DC compressor models, all of which were sourced from a Chinese manufacturer, and the Debtor converted from a manufacturing company to a "Buy & Sell" distributor.

In connection with the wind-down of manufacturing operations, the Debtor sold the manufacturing facility located in Sidney, Ohio to a third-party for approximately $6.5 million. Additionally, a separate, smaller building located in Sidney, Ohio was sold to a third-party for approximately $500,000.

The Debtor transferred certain of its remaining equipment and tooling components to its affiliate, Thetford B.V., at book value of $330,500. The Debtor also sold approximately $1.6 million of inventory to Thetford B.V. in 2023, the price of which was based on the lower of cost or market. When the changes in market conditions decreased the anticipated demand for Norcold products, in 2024, Thetford B.V. wrote off approximately $1.5 million associated with inventory acquired from the Debtor.

Most of the remaining inventory and equipment was sold at auction to various third parties for a total of approximately $1.6 million, requiring an asset write-down of approximately $3.8 million. In 2024, approximately $150,000 of remaining inventory was sold to Thetford B.V. and another affiliate.

The proceeds from the real estate and inventory/equipment sales were swept by Yosemite and primarily used to pay down intercompany payables owed by Norcold to its non-Debtor affiliates. The Debtor has and continues to maintain records of intercompany transfers and transactions, and as further described below in Article III.G., the Debtor's records as of the Petition Date reflect an approximate $2.8 million receivable due from Yosemite.

Now operating solely as a distributor as part of the global Thetford enterprise, the Debtor relies on, and transacts with, various non-Debtor affiliates in the normal course of its operations. On an aggregate net basis, the Debtor owes its affiliates approximately $1.9 million.

### 2. **Chapter 11 Preparations**

Prior to the Petition Date, the Debtor retained Alvarez & Marsal North America, LLC ("A&M") on August 20, 2025,[10] Young Conaway Stargatt & Taylor, LLP ("Young Conaway") on August 19, 2025, Hilco Corporate Finance, LLC ("Hilco") on October 7, 2025, and Stretto, Inc. ("Stretto" and collectively with A&M, Young Conaway, and Hilco, the "Restructuring Advisors") on October 7, 2025, to assist with contingency planning for a potential chapter 11 proceeding.

The Debtor also appointed Michael Buenzow as its independent manager (the "Independent Manager"). Pursuant to the *First Amendment to Limited Liability Agreement of Norcold LLC*, dated September 25, 2025, the Independent Manager has "full, exclusive and complete authority, power, and discretion over all aspects of the Company's business, including, to review, consider, and approve or disapprove (i) any transaction between the Company and any affiliate of the Company and (ii) any matter arising in connection with, or relating to, a case commenced by the Company under chapter 11 of title 11 of the United States Code."

Prior to the Petition Date, the Debtor and its Restructuring Advisors analyzed and explored potential transactions, conducted comprehensive liquidity analyses, and considered potential restructuring alternatives to address the Debtor's liquidity issues. Ultimately, the Debtor concluded that commencing a sale transaction was the most viable path to preserve and maximize the value of its assets. During this time, the Debtor (led by the Independent Manager and Restructuring Advisors) engaged in extensive negotiations with its primary stakeholders, including its parent, Thetford, LLC ("Thetford, LLC"). As a result of these efforts, prior to commencing this Chapter 11 Case, the Debtor reached an agreement with its primary stakeholders on a series of transactions that will serve as the blueprint for this Chapter 11 Case.

These transactions include:

- Commitment by Dave Carter & Associates ("DCA") to provide a $13 million new-money DIP facility to fund this Chapter 11 Case and the sale process;

---

[10] The original engagement letter was subsequently superseded by that certain engagement letter dated November 2, 2025. *See Application of the Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to (I) Retain Alvarez & Marsal North America, LLC to Provide the Debtor a Chief Restructuring Officer and Certain Additional Personnel and (II) Designate Richard Wu as Chief Restructuring Officer for the Debtor, Effective as of the Petition Date* [Docket No. 65].

33875574.7

- Commitment by DCA to serve as the "Stalking Horse Bidder" (and DCA's bid, the "Stalking Horse Bid") subject to higher or otherwise better bids received during the auction process; and

- Filing a chapter 11 plan of liquidation, which will (a) implement the sale of substantially all of the Debtor's assets to DCA or the highest and otherwise best bidder and (b) establish a liquidating trust to distribute sale proceeds, monetize other assets, such as insurance policies,[11] for the benefit of creditors, and implement a wind-down of the Debtor's estate.

Together, these transactions provide a path for the Debtor to run a value maximizing sale process and confirm a chapter 11 plan. The transactions provide the Debtor with certainty, while also allowing the Debtor to solicit, encourage, and entertain higher alternative transactions—all for the benefit of the Debtor's estate and stakeholders.

Overall, the Debtor's decision to file this Chapter 11 Case and continue its pursuit of a sale of its assets subject to a court-supervised marketing process and chapter 11 liquidating plan was informed by, among other things, the difficult liquidity challenges it faces due to long term operating losses as a result of industry headwinds, shift in market technology from absorption to lower margin DC compressor units, and significant costs associated with the products liability overhang. Deliberations by the Independent Manager and Restructuring Advisors concluded that a value-maximizing transaction in chapter 11 is most beneficial for the Debtor's stakeholders.

### 3. Background of DCA and the DCA Acquisition

DCA was founded in 1978 and operates 11 distribution centers across the United States and Canada. On September 17, 2025, DCA was acquired by Expedition Acquisition Corporation ("Expedition"). DCA was acquired due to synergies between DCA and Thetford. DCA's product portfolio, which includes electrical components, plumbing supplies and building products, complements Thetford's existing sanitation and comfort product solutions for the RV market.

The acquisition of DCA was unrelated to the Debtor's bankruptcy, and the Debtor had no relationship with DCA prior to DCA's acquisition. Following DCA's acquisition, DCA became an indirect affiliate of the Debtor. Specifically, Expedition is wholly owned by Yosemite Acquisition Corp., Yosemite Acquisition Corp. wholly owns Thetford, and Thetford wholly owns the Debtor.

---

[11] The liquidation of Claims, including the potential monetization of Insurance Policies, will be administered by the Liquidating Trust in accordance with the Liquidating Trust Agreement. Monetization of the Insurance Policies may include, without limitation, coordinating insurance coverage of Litigation Claims or settling with applicable insurance companies and/or claimants. The powers and duties of the Liquidating Trustee are described further in Article V.D.6 of this Disclosure Statement, and a general description of the procedures for resolving unliquidated and disputed Claims is provided in Article VIII of this Disclosure Statement.

4.      **Product Liability Claims and Potentially Responsive Insurance Policies**

As noted above, the Debtor has faced and continues to face product liability claims, which the Debtor anticipates will largely comprise Class 5 (Litigation Claims).  Also as noted above and in the First Day Declaration, the amount of product liability claims has decreased over the years. As of the Petition Date, the Debtor was aware of nine pending product liability lawsuits and no pending judgments.  The Debtor has also either been put on notice or otherwise become aware of approximately one hundred other instances in which a Debtor product may be at issue ("Notices of Circumstances").  Less than thirty-five of these Notices of Circumstances were received in 2025.  Moreover, many of such Notices of Circumstances are highly contingent, and it is unclear if a claim against the Debtor exists.  For example, if a RV distributor is sued over property damage on the RV stemming from an alleged product default, the RV distributor may put all the RV's component manufacturers on notice.

As of the Petition Date, the total amount of damages expressed by potential claimants is approximately $13.8 million.  These amounts are highly speculative, contingent, unliquidated, and disputed, and in some instances multiple potential defendants have been named.  The Debtor strongly believes that the $13.8 million damages expressed by potential claimants does not accurately represent the Debtor's potential liability (if any) on account of such potential claims, and such acknowledgment of the expressed damages shall not be construed as an admission as to liability.

The Debtor is covered under general liability Insurance Policies that have at times responded to product liability claims.  The Debtor's insurance policies contain aggregate limits of approximately $95-97 million per year since 2021, which the Debtor believes is sufficient to cover product liability claims.  However, as noted above, the current primary policy is subject to a split SIR, whereby non-Recalled products are subject to a $500,000 SIR on a per occurrence basis, and Recalled products are subject to a $5 million SIR on a per occurrence basis.  The Debtor's historical general liability policies dating back to at least 2021 have similar split SIRs for Recall and non-Recalled products.[12]

Given the highly contingent, unliquidated, and disputed nature of product liability claims, estimating such claims' aggregate amount and value would be costly and overly burdensome under the facts and circumstances of this chapter 11 case.  Similarly, it would be costly and burdensome to estimate such claims' potential recoveries under the Plan.  However, under the Plan, if a Litigation Claim is liquidated through a judicial process or settlement with the Liquidating Trust, the Debtor believes that under certain circumstances such Litigation Claim may possess the right to access funds available under the Insurance Policies and potentially recover the full liquidated amount of such Litigation Claim.

---

[12] For general liability Insurance Policies covering 2021 to 2022, the Debtor is subject to a $1 million SIR for certain recalled products and $2 million for certain other cooling units manufactured between May 1, 1999 and November 30, 1999 and December 1, 1996 and February 28, 2001.

III.    **THE CHAPTER 11 CASE**

On November 3, 2025 (the "<u>Petition Date</u>"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The Chapter 11 Case is captioned *In re Norcold LLC*, Case No. 25-11933 (TMH).  Upon the commencement of the Chapter 11 Case, the automatic stay set forth in the Bankruptcy Code enjoined the commencement or continuation of all collection efforts by creditors and the enforcement of liens against property of the Debtor, with limited exceptions.

A.    <u>**First Day Motions and Orders**</u>

On the Petition Date, the Debtor filed the following certain "first day" motions and applications with the Bankruptcy Court seeking certain immediate relief to aid in the efficient administration of the Chapter 11 Case, and to facilitate the Debtor's transition to debtor-in-possession status:

- *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Serve Certain Parties in Interest by Email and (B) Redact Certain Personally Identifiable Information of Individuals; and (II) Granting Related Relief* [Docket No. 7];

- *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Payment of Certain Taxes, Fees, Customs and Tariffs, and (II) Granting Related Relief* [Docket No. 6];

- *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Continue its Insurance Policies, Including its Insurance Premium Financing Agreements and its Surety Bonds, and Pay All Obligations in Respect Thereof and (II) Granting Related Relief* [Docket No. 4];

- *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Maintain and Administer its Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related Relief* [Docket No. 9];

- *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Pay Certain Prepetition Claims of Certain Critical Vendors, Foreign Vendors, Shippers and Logistics Providers, and 503(b)(9) Claimants; and (II) Granting Related Relief* [Docket No. 5];

- *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing (A) Continued Use of the Cash Management System, (B) Maintenance of Bank Accounts and Business Forms, (C) Performance of Intercompany Transactions, and (D) Certain Prepetition Obligations to be Honored; (II) Granting Administrative Expense Priority Status to Postpetition Intercompany Claims; and (III) Granting Related Relief* [Docket No. 8]; and

- *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing (A) Continued Use of the Cash Management System, (B) Maintenance of Bank Accounts and Business Forms, (C) Performance of Intercompany Transactions, and (D) Certain Prepetition Obligations to be Honored; (II) Granting Administrative Expense Priority Status to Postpetition Intercompany Claims; (III) Waiving Strict Compliance with 11 U.S.C. § 345(B) and Certain Operating Guidelines; and (IV) Granting Related Relief* [Docket No. 10].

**B.    Post-Petition DIP Financing**

To implement the contemplated sale process and preserve asset value during the pendency of the Chapter 11 Case, the Debtor required an immediate infusion of new liquidity.  Accordingly, the Debtor negotiated and reached agreement on the terms of debtor-in-possession financing (the "DIP Financing") to be provided by the DIP Lender, consisting of a non-amortizing, priming, super-priority, senior secured revolving facility in an aggregate principal amount not to exceed $13 million of new money commitment (the "DIP Commitment").  It is contemplated that $6.5 million of the DIP Financing will be made available to the Debtor following the Bankruptcy Court's entry of an interim order approving the DIP Financing, and the remaining balance will be made available following the Bankruptcy Court's entry of a final order approving the DIP Financing.

The DIP Financing provides the Debtor with the necessary liquidity to satisfy the administrative claims during the Chapter 11 Case, including continuing to honor warranty claims.

The DIP Financing is secured by a priming first lien security interest on all property and assets (now and hereinafter acquired and all proceeds thereof) of the Debtor's estate.

**C.    The Debtor's Sale Process and Related Motions**

On the Petition Date, the Debtor filed a motion (the "Bid Procedures Motion") requesting that the Bankruptcy Court, among other things, approve certain bidding procedures to govern the Sale Process, including the solicitation of competing bidders to participate in an auction, which will allow the Debtor to obtain the highest or otherwise best offers for the assets, thereby maximizing the value of the assets for the benefit of the Debtor's estate and creditors.

Prior to and subsequent to the Petition Date, Hilco has and continues to reach out to parties potentially interested in acquiring the Debtor's Assets, in whole or in part.

On December 12, 2025, the Bankruptcy Court entered an order (the "Bid Procedures Order") approving the Bid Procedures Motion.  Among other things, the Bid Procedures Order set (i) a deadline of January 15, 2026 as the deadline by which interested parties were required to submit bids and (ii) a hearing to consider approval of the Sale for January 28, 2026 at 2:00 p.m. (ET) (the "Sale Hearing").  The Debtor intends to proceed with the Sale Hearing, and accordingly, the Sale may close prior to confirmation.

On January 7, 2026, the Debtor filed a proposed form of order (the "Sale Order") approving the Sale to the Stalking Horse Purchaser.  If the Debtor receives other bids, conducts an auction,

and determines that another bid or bids are higher or otherwise better, the Debtor will revise the proposed form of order accordingly.

### D. Other Procedural and Administrative Motions

Subsequent to the Petition Date, the Debtor intends to file a number of customary motions and applications to (i) retain professionals, (ii) further facilitate the smooth and efficient administration of the Chapter 11 Case, and (iii) reduce the administrative burdens on the Debtor operating as a debtor-in-possession.

### E. Appointment of the Official Committee of General Unsecured Creditors

On November 22, 2025, the U.S. Trustee appointed the Committee, which comprises the following persons: (a) Dellware Electrical Appliance (HK) Co. Limited.; (b) Kristina Stracke; and (c) Traci Marx, Raymond Marx. [Docket No. 72].

### F. Schedules and Bar Dates

On November 26, 2025, the Debtor Filed its Schedules of Assets and Liabilities and Statements of Financial Affairs [Docket Nos. 74 & 75] (collectively, the "Schedules and SOFAs").

On November 20, 2025, the Debtor Filed a motion [Docket No. 69] to establish certain deadlines for filing Proofs of Claim against the Debtor, which motion was approved by the Bankruptcy Court through an order [Docket No. 110] (the "Bar Date Order") entered on December 9, 2025.

The Bar Date Order provides, among other things, that each person or Entity (excluding Governmental Units) that asserts a Claim against the Debtor that arose (or is deemed to have arisen) before the Petition Date, including 503(b)(9) Claims, shall be required to File an original written proof of claim so that such proof of claim is actually received on or before January 23, 2026 at 5:00 p.m. (prevailing Eastern Time). All Governmental Units holding Claims that arose (or are deemed to have arisen) before the Petition Date shall be required to File an original written proof of claim so that such proof of claim is actually received on or before May 4, 2026 at 5:00 p.m. (prevailing Eastern Time). Notice of the foregoing deadlines was provided by mail and publication in accordance with the procedures outlined in the Bar Date Order.

### G. The Appointment of the Independent Manager and the Investigation

On September 29, 2025, Mr. Michael Buenzow was appointed to serve as Independent Manager of the Debtor. In connection therewith, the Independent Manager was granted full, exclusive and complete authority, power, and discretion over all aspects of the Company's business, including, to review, consider, and approve or disapprove (i) any transaction between the Company and any affiliate of the Company and (ii) any matter arising in connection with, or relating to, a case commenced by the Company under chapter 11 of title of 11 of the United States Code. Such authority also includes the exclusive rights, authority, and powers in connection with any matters arising in or related to potential insider claims, including, but not limited to, the authority to make a determination regarding the propriety of any releases provided by the Debtor and the Estate under the Plan.

In furtherance thereof, the Independent Manager commenced an investigation (the "Investigation") of potential claims and causes of action the Debtor may possess against third parties, including Thetford and its affiliates, including DCA, and directed Young Conaway to conduct diligence on such potential claims. On October 8, 2025, Young Conaway delivered an initial diligence request letter to the Debtor requesting information and documents for the period from September 1, 2021 through the present (the "Investigation Period"). Young Conaway supplemented this initial request on a continuous basis as the Investigation progressed. In addition to the documents provided in response to such diligence requests, Young Conaway also received various documents from Thetford. Additional materials were made available to Young Conaway via a virtual data room maintained by A&M.

Young Conaway reviewed, among other documents: (i) organizational documents, (ii) minutes of board meetings of affiliated entities, including resolutions and written consents adopted by the board and committees of affiliated entities, (iii) documents related to the financing arrangements of Norcold and its affiliates, (iv) employee agreements, (v) financial statements, audits, and other financial data, (vi) material contracts, (vii) insurance policies, (viii) documents related to products liability claims and other lawsuits, (ix) expense allocation reports, (x) products liability and recall information, and (xi) documents relating to intercompany claim balances among Norcold and its affiliates.

Following the review of such materials, Young Conaway conducted diligence interviews with the following individuals: Michael Buenzow (Independent Manager), Richard Wu (CRO), Benjamin Humphreys (Senior Operating Executive, Monomoy Capital Partners), Mary Pouliot (Executive VP of the Americas, Thetford), Peter Struijs (CFO, Thetford and certain affiliates), Stephane Cordeille (CEO, Thetford and certain affiliates), Chris Sullivan & Chris Winter (Director & Associate, A&M), Mitchel Powell (Principal, Cokinos | Young, Norcold's national products liability counsel), and Aaron Ludwiczak (Finance Director, Thetford). Young Conaway then had additional discussions with Messrs. Sullivan and Winter of A&M, Mr. Ludwiczak on specific Norcold-related financial topics, and Ryan Roney (Norcold's General Counsel).

Young Conaway held regular meetings with the Independent Manager to discuss the progress of the Investigation. These meetings facilitated ongoing oversight and feedback by the Independent Manager, updates on workstreams, and deliberation on findings.

The Investigation focused on, among other potential claims and causes of action, the following potential claims and causes of action: veil piercing, successor liability, contribution for products liability, breach of fiduciary duties, breach of contract, fraudulent transfer, preference, tort, substantive consolidation, recharacterization, and equitable subordination.

On December 15, 2025, Young Conaway presented its findings to the Independent Manager. Through his independent decision-making process, the Independent Manager has determined that three potentially viable claims exist (the "Potential Claims"). First, Norcold possesses an approximately $2.8 million receivable due from an indirect affiliate, Yosemite Intermediate I, Inc. ("Yosemite"). This receivable arose from the Debtor and its non-Debtor affiliates' consolidated cash management system. In connection with the cash management system, Yosemite swept funds from the Debtor and certain non-Debtor affiliates on a daily basis and amounts due to and from the Debtor were tracked as intercompany receivables and payables,

respectively.  As of the Petition Date, the Debtor's records reflect an approximately $2.8 million receivable due from Yosemite, and the Independent Manager's investigation did not uncover an amount owed by Norcold to Yosemite that would be subject to setoff from this receivable.

Second, the Debtor anticipates that it will receive approximately $100,000 from a settlement of a historical worker's compensation action.  Counsel representing the Debtor in that matter on a contingency basis is entitled to one-third of the amount received.

Finally, the Debtor may possess potential preference claims totaling approximately $500,000 relating to two payments made by the Debtor in August 2025 to its non-Debtor affiliate, Thetford B.V.  However, these claims are likely subject to a "new value" defense under section 547(c)(4) of the Bankruptcy Code because Thetford B.V. delivered no less than $500,000 of products and services following the August payments.

Based on review of relevant documents, interviews of persons having relevant knowledge, analyses of the facts and potential claims, and other considerations (including the low likelihood of a court finding any liability on the part of the potential defendants, anticipated litigation costs, and anticipated recoveries, if any), the Investigation determined that other than the Potential Claims, Norcold likely does not have any other viable claims or causes of action against insiders or affiliates that would benefit the Estate.

On December 19, 2025, Young Conaway presented its findings to proposed counsel to the Committee and solicited the Committee's feedback regarding the Investigation.  Young Conaway has also responded to the Committee's various diligence requests and continues to respond to such requests.  The Independent Manager will continue to seek feedback from the Committee and conduct further review and investigation of claims and causes of action to the extent facts or circumstances indicate that such a review is prudent or necessary.

## IV.   TREATMENT OF CLAIMS AND INTERESTS

The Plan provides for the following treatment of Claims and Interests, as set forth more fully in the Plan:

### A.   Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Liquidating Trustee (as applicable), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims, OCPs, and Holders of Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which (i) an order allowing such Administrative Claim becomes a Final Order or (ii) the Debtor or the Liquidating Trustee (as applicable) and the holder of the Administrative Claim consensually agree to the Allowed amount of such claim, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims, all applications seeking allowance and payment of Administrative Claims must be Filed and served on the Debtor or the Liquidating Trustee (as applicable) and their counsel no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Any objection to such applications must be Filed and served on the requesting party on or before the Claims Objection Deadline. After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**Except as otherwise provided in Articles II.B or II.E of the Plan, Holders of Administrative Claims that do not File and serve an application for payment of administrative expense requesting the allowance of an Administrative Claim no later than the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, or their assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date, without further order of the Bankruptcy Court, unless otherwise ordered by the Bankruptcy Court.**

### B.  Professional Fee Claims and Administrative Claims of OCPs

#### 1.  Final Fee Applications

All requests for payment of Professional Fee Claims by Retained Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than thirty (30) days after the Effective Date. Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. Unless otherwise agreed to by the Debtor and the Retained Professional, the Debtor shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Reserve Account within five (5) Business Days of the entry of such Final Order.

#### 2.  Administrative Claims of OCPs

All requests for payment of Administrative Claims of OCPs shall be made pursuant to the OCP Order. To the extent any Administrative Claims of OCPs have not been paid pursuant to the OCP Order on or before the Effective Date, the amount of Administrative Claims owing to such OCPs shall be paid in Cash to such OCPs by the Debtor or the Liquidating Trustee (as applicable) as soon as reasonably practicable after such Administrative Claims are authorized in accordance with the OCP Order.

#### 3.  Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without any further notice to

33875574.7

or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the Chapter 11 Case that are incurred after the Effective Date.  Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 of the Bankruptcy Code or that OCPs comply with the OCP Order in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee may employ and pay any retained professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

4.      Professional Fee Reserve Amount

Unless otherwise agreed to prior to the Effective Date by the Debtor and the Retained Professional, to receive payment for (a) unpaid fees and expenses incurred through the Effective Date and (b) unpaid fees and expenses anticipated to be incurred post-Effective Date in connection with the preparation of the Retained Professionals' Professional Fee Claims, the Retained Professionals shall estimate such amounts and shall deliver such estimates to the Debtor and its counsel no later than three (3) Business Days prior to the Effective Date; *provided* that such estimates shall not be binding with respect to the fees and expenses of such Retained Professional. If a Retained Professional does not provide an estimate of its unpaid fees and expenses, the Debtor may estimate such fees and expenses of the Retained Professional.  The total amount so estimated hereunder as of the Effective Date shall comprise the "Professional Fee Reserve Amount."  The Retained Professionals may submit invoices for their post-Effective Date services, including with respect to the preparation of Professional Fee Claims, to the Liquidating Trust in the ordinary course of business.

5.      Professional Fee Reserve

On or before the Effective Date, the Debtor shall fund the Professional Fee Reserve Account with Cash equal to the Professional Fee Reserve Amount, which shall be held in the trust account of counsel to the Debtor.  The Professional Fee Reserve and amounts funded therein are, and shall continue to be, maintained in trust solely for the benefit of each Retained Professional separately on a per-Retained Professional basis until all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more Final Orders.  Such funds shall not be considered property of the Debtor, its Estate, or the Liquidating Trust (as applicable); *provided*, *however*, that the Liquidating Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Reserve after payment in full of all Allowed Professional Fee Claims without any further notice, action, or order of the Bankruptcy Court.

**C.      Priority Tax Claims**

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the Debtor or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

D.    **DIP Claims**

In full and final satisfaction, compromise, settlement, and release of and in exchange for all Allowed DIP Claims, (i) if the Debtor consummates the Sale to the Stalking Horse Purchaser, the Allowed DIP Claims shall be credited and applied to the Purchase Price or (ii) if the Debtor consummates the Sale to another Purchaser that is not the Stalking Horse Purchaser, all Allowed DIP Claims shall be paid in full from Sale Proceeds.

E.    **U.S. Trustee Statutory Fees**

All Statutory Fees that are due and owing as of the Effective Date shall be paid by the Debtor, the Post-Effective Date Debtor, or the Liquidating Trust, as applicable, in full in Cash on the Effective Date. The Debtor shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Post- Effective Date Debtor and the Liquidating Trustee, as applicable, shall file with the Bankruptcy Court the final monthly operating reports and separate UST Form 11- PCR reports when they become due. After the Effective Date, the Post-Effective Date Debtor and the Liquidating Trustee shall be jointly and severally liable to pay any and all applicable Statutory Fees in full in Cash when due and payable. The U.S. Trustee shall not be treated as providing any release under the Plan. Statutory Fees are Allowed. The U.S. Trustee shall not be required to file any proof of claim or any request for administrative expense for Statutory Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

F.    **Classified Claims and Interests**

Except for the Claims addressed in Article II of the Plan (or as otherwise set forth in the Plan), all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtor as described in Article III of the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|:---:|:---:|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition Loan Guarantee Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Litigation Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

1.      **Class 1 – Other Priority Claims**

(a)      *Classification*:  Class 1 consists of all Other Priority Claims against the Debtor.

(b)      *Treatment*:  In full and final satisfaction, compromise, settlement, and release of and in exchange for such Claim, on, or as soon as reasonably practicable following the Effective Date, each holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)      *Voting*:  Class 1 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.      **Class 2 – Other Secured Claims**

(a)      *Classification*:  Class 2 consists of all Other Secured Claims against the Debtor.

(b)      *Treatment*:  In full and final satisfaction, compromise, settlement, and release of and in exchange for such Claim, on, or as soon as reasonably practicable following the Effective Date, each holder of an Allowed Other Secured Claim shall receive, at the Debtor's option:  (a) payment in full in Cash, (b) the collateral securing its Allowed Other Secured Claim, (c) reinstatement of its Allowed Other Secured Claim, or (d) such other treatment rendering its

Allowed Other Secured Claim as Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)     *Voting*:  Class 2 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.     **Class 3 – Prepetition Loan Guarantee Claims**

(a)     *Classification*:  Class 3 consists of the Prepetition Loan Guarantee Claims.

(b)     *Treatment*:  In full and final satisfaction, compromise, settlement and release of and in exchange for such Claim, the Holder of the Allowed Prepetition Loan Guarantee Claim shall (i) have such Claim assumed by the Purchaser under the Sale, (ii) receive payment on account of such Claim from the Loan Parties (as defined in the Prepetition Financing Agreement) other than the Debtor in accordance with the terms of the Prepetition Financing Agreement or (iii) receive any distributable Sale Proceeds available after satisfaction of the DIP Claims in connection with the Sale (with any deficiency Claim being treated as a General Unsecured Claim) if such Claim is not assumed by the Purchaser.[13]

(c)     *Voting*:  Class 3 is Impaired, and Holders of Prepetition Loan Guarantee Claims are entitled to vote to accept or reject the Plan.

4.     **Class 4 – General Unsecured Claims**

(a)     *Classification*:  Class 4 consists of all General Unsecured Claims.

(b)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtor or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed General Unsecured Claim, each Holder thereof will receive its pro rata share of the Class 4 Liquidating Trust Interests, which Class 4 Liquidating Trust Interests shall entitle the holders thereof to receive their pro rata share of the distributable proceeds from the Liquidating Trust Assets.

(c)     *Voting*:  Class 4 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

---

[13] For the avoidance of doubt, nothing contained in the Plan or the Confirmation Order shall in any respect amend, modify, restrict or impair the rights of the Prepetition Senior Secured Parties against any Loan Party (other than the Debtor) under the Prepetition Documents.

33875574.7

5.      **Class 5 – Litigation Claims**

(a)      *Classification*:  Class 5 consists of all Litigation Claims against the Debtor.

(b)      *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Litigation Claim and the Debtor or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Litigation Claim, each Holder thereof will receive its pro rata share of the Class 5 Liquidating Trust Interests, which Class 5 Liquidating Trust Interests shall entitle the holders thereof to receive their pro rata share of the distributable proceeds from the Liquidating Trust Assets and any Insurance Rights under any Insurance Policies.

(c)      *Voting*:  Class 5 is Impaired, and Holders of Litigation Claims are entitled to vote to accept or reject the Plan.

6.      **Class 6 – Intercompany Claims**

(a)      *Classification*:  Class 6 consists of all Intercompany Claims.

(b)      *Treatment*:  On the Effective Date, except to the extent that an Intercompany Claim is assumed under the Plan, all Intercompany Claims shall be extinguished, subject to any setoff, recoupment, or defense of the Holder of such Intercompany Claim.

(c)      *Voting*:  Class 6 is Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.      **Class 7 – Section 510(b) Claims**

(a)      *Classification*:  Class 7 consists of all Section 510(b) Claims.

(b)      *Treatment*:  On the Effective Date, all Section 510(b) Claims, if any, shall be cancelled, released, and extinguished without distribution, and will be of no further force or effect.

(c)      *Voting*:  Class 7 is Impaired, and Holders of Section 510(b) Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

8.      **Class 8 – Interests**

(a)      *Classification*:  Class 8 consists of all Interests.

(b)      *Treatment*:  On the Effective Date, all Interests shall be cancelled, released, and extinguished without distribution, and will be of no further force or effect.

(c)     *Voting*: Class 8 is Impaired, and Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 8 Interests are not entitled to vote to accept or reject the Plan.

### G.    Special Provisions Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's or the Liquidating Trustee's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

### H.    Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### I.    Controversy Concerning Impairment

If a controversy arises as to whether any Claim or any Class of Claims or Interests is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Hearing.

### J.    Subordination of Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor or the Liquidating Trustee (as applicable) reserves the right to seek the Bankruptcy Court's permission to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### K.    Reservation of Rights Regarding Claims

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtor's or the Liquidating Trustee's respective rights and defenses, whether legal or equitable, with respect to any Claim, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### L.    Postpetition Interest on Claims

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan or the Confirmation Order, postpetition interest, penalties, or other fees will not accrue or be payable on account of any Claim.

### M.    Insurance

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

## V.    MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Sources of Consideration for Plan Distributions

Subject in all respects to the provisions of the Plan concerning the Professional Fee Reserve, and except as otherwise provided for herein, the Debtor or the Liquidating Trustee (as applicable) shall fund distributions under the Plan from the Sale Proceeds, Cash on hand as of the Effective Date, and all other Liquidating Trust Assets.  For the avoidance of doubt, if the Purchaser under the Sale is the Stalking Horse Purchaser, prior to Closing of the Sale, the Debtor shall fully draw the debtor-in-possession financing facility, and such Cash proceeds shall be used to fund distributions in accordance with the terms of this Plan.

### B.    Wind-Down

Following the occurrence of the Effective Date and subject to the terms of the Plan, the Liquidating Trustee shall wind-down the affairs and operations of the Debtor and the Estate, as applicable, including, but not limited to, (i) expeditiously and efficiently liquidating the Liquidating Trust Assets; (ii) procuring any appropriate insurance to facilitate the Wind-Down, including appropriate D&O Liability Insurance Policies; and (iii) expeditiously and efficiently pursuing, compromising, settling, and/or liquidating the Retained Causes of Actions.

### C.    Vesting of Assets

On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in and be transferred to the Liquidating Trust free and clear of all Claims, Liens and interests of creditors, equity security holders and of members of the Debtor, except as otherwise expressly provided in the Plan.

### D.    Liquidating Trust

#### 1.    Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, which will be Filed with the Bankruptcy Court as part of the Plan Supplement. On the Effective Date, all property of the Estate not transferred pursuant to the Sale or distributed to holders of Allowed Claims on the Effective Date, including, without limitation, the Retained Causes of Action, shall vest in the Liquidating Trust.  Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtor or any employees, members, managers, officers, agents, advisors, or representatives of the Debtor.

33875574.7

2. <u>Transfer of the Liquidating Trust Assets</u>

Subject to section 1141 of the Bankruptcy Code, all property vesting in and transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, and interests of creditors, equity security holders and of general partners in the Debtor, except as may be otherwise provided for in the Plan. Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtor will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

3. <u>Insurance Rights Transfer</u>

In furtherance of the purpose of the Liquidating Trust:

    (a) On the Effective Date, the Debtor shall irrevocably transfer, grant, and assign to the Liquidating Trust, and the Liquidating Trust shall receive and accept the Debtor's Insurance Rights.

    (b) The Insurance Rights Transfer is made free and clear of all Claims, Liens, encumbrances, or Causes of Action of any nature whatsoever, except available limits of liability for coverage of certain types of Claims under one or more Insurance Policies that may have been reduced by certain prepetition payments made by an Insurance Company to, or on behalf of, the Debtor.

    (c) The Insurance Rights Transfer is made to the maximum extent possible under applicable law.

    (d) The Insurance Rights Transfer is absolute and does not require any further action by the Debtor, the Post-Effective Date Debtor, the Liquidating Trust, the Bankruptcy Court, or any other Entity.

    (e) The Insurance Rights Transfer shall be governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the Insurance Policies.

4. <u>Liquidating Trust Agreement</u>

On the Effective Date, the Debtor shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement. Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtor or the Liquidating Trustee (as applicable) will be automatically ratified if made in accordance with the terms of the Liquidating Trust Agreement. The Liquidating Trust Agreement will contain provisions permitting the amendment

or modification of the Liquidating Trust Agreement necessary to implement the provisions of the Plan.

### 5.   Purpose of the Liquidating Trust

The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) conducting, administering, and facilitating the Wind-Down; (c) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests; (d) making distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and the Liquidating Trust Agreement; (e) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries; and (f) commencing and pursuing the Retained Causes of Action and managing and administering any proceeds thereof, with no objective to continue or engage in the conduct of a trade or business in accordance with Treasury Regulation section 301.7701-4(d). The Liquidating Trust is intended to qualify as a "liquidating trust" under Treasury Regulation section 301.7701-4(d) and a "grantor trust" under section 671 of the Internal Revenue Code (the "Tax Code"), to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

### 6.   Liquidating Trustee

#### a.   *Appointment of the Liquidating Trustee*

Upon the occurrence of the Effective Date, the Liquidating Trustee shall be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be selected by the Debtor (in consultation with the Committee, as applicable) and, once appointed, the Liquidating Trustee shall be the sole officer and manager of the Post-Effective Date Debtor. The Liquidating Trustee, subject to the terms and conditions of the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including the Wind-Down. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable.

#### b.   *Liquidating Trustee as Representative of the Estate*

From and after the occurrence of the Effective Date, the Liquidating Trustee shall act as the exclusive representative of the Estate for all purposes and shall succeed to the rights, powers, and authority that would have been applicable to the Debtor's officers and managers prior to the Effective Date, including the authority to facilitate the Wind-Down, analyze, preserve, and pursue Insurance Policy proceeds (including the authority to settle with any Insurance Company with respect to an Insurance Policy), and pursue the Retained Causes of Action. The Debtor's existing

managers as of the Effective Date shall be deemed to have resigned on the Effective Date, and all powers of managers shall vest in the Liquidating Trustee on the Effective Date. Upon the occurrence of the Effective Date, the Liquidating Trustee shall have the power to dissolve the Post-Effective Date Debtor, and the Post-Effective Date Debtor shall be dissolved upon the conclusion of the Wind-Down. Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

c.  *Responsibilities and Authority of the Liquidating Trustee*

The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following rights and responsibilities, which shall be the exclusive rights and responsibilities of the Liquidating Trustee: (i) preserving and liquidating the Liquidating Trust Assets, including the Retained Causes of Action; (ii) facilitating the Wind-Down; (iii) administering and paying taxes, including, among other things, (1) filing tax returns and (2) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (iv) retaining and paying, without the need for retention or fee applications, professionals in connection with the Liquidating Trustee's performance of its duties under the Plan and the Liquidating Trust Agreement; (v) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (vi) preparing and filing all monthly operating reports due after the Effective Date and all post-confirmation reports as required by the U.S. Trustee; (vii) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; (viii) making distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and Liquidating Trust Agreement; and (ix) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan, the Plan Supplement, the Liquidating Trust Agreement, or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of the Plan.

d.  *Powers of the Liquidating Trustee*

The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement (subject to approval by the Bankruptcy Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein, *provided*, *however*, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of the Plan, the Liquidating Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidating Trustee, including, without limitation, to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by the Plan.

The powers of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following: (i) the power to invest funds of the Liquidating Trust, and withdraw, make distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with the Plan and the Liquidating Trust

Agreement; (ii) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; (iii) the exclusive power and authority to investigate, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Causes of Action, or to decline to take any of the foregoing actions, in accordance with the best interests of the Liquidating Trust Beneficiaries, provided, in each case, the Liquidating Trustee need not obtain the consent or approval of any third party or provide further notice to, or obtain approval of the Bankruptcy Court; (iv) the power to object to Claims, including, without limitation, the power to seek subordination or recharacterization of Claims by objection, motion, or adversary proceeding, as applicable; (v) the power and authority to conduct, facilitate, and administer the Wind-Down pursuant to the terms of the Plan, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Entity or its members or any payments to be made in connection therewith, other than the filing of a certificate of cancellation with the appropriate governmental authorities, pursuant to Section 18-203 of the Delaware Limited Liability Company Act codified at title 6 of the Delaware Code or other applicable state or foreign law; (vi) the power and authority to pursue Insurance Policy proceeds (including the authority to settle with any Insurance Company with respect to an Insurance Policy); and (vii) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, the Plan Supplement, the Liquidating Trust Agreement, or by an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of the Plan.

e.      *Compensation of the Liquidating Trustee*

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall fully comply with the terms, conditions, and rights set forth in the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement. The Liquidating Trustee (and any professionals retained by the Liquidating Trustee) shall not be required to File a fee application to receive compensation.

f.      *Retention and Payment of Professionals*

The Liquidating Trustee shall have the right, without Bankruptcy Court approval, to retain the services of attorneys, accountants, and other professionals that the Liquidating Trustee determines, in his or her sole discretion, are necessary to assist in performing his or her duties. In accordance with the Liquidating Trust Agreement, the Liquidating Trust shall pay from the Wind- Down Assets the reasonable fees and expenses of such professionals upon the monthly submission of statements to the Liquidating Trust without further order of the Bankruptcy Court.

g.      *Payment of Liquidating Trust Expenses*

Any and all reasonable and documented costs and expenses incurred by the Liquidating Trust in connection with the Wind-Down shall be paid from the Liquidating Trust Assets, subject to the Liquidating Trust Agreement.

7.  Termination of the Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries; and (b) the fifth anniversary of the creation of the Liquidating Trust; *provided* that, if warranted by the facts and circumstances involved in resolving or monetizing any Liquidating Trust Assets, upon application to, and if approved by, the Bankruptcy Court upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Liquidating Trust Assets and distributing the proceeds to Liquidating Trust Beneficiaries, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified term in accordance with applicable tax laws and regulations. This application must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

E.  **Insurance Provisions**

(a)  Except for the transfer of rights to the Liquidating Trust pursuant to the Insurance Rights Transfer, or as otherwise provided by the Bankruptcy Code, applicable law, the findings made by the Bankruptcy Court in the Confirmation Order, or otherwise, nothing in the Plan shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy issued by any Insurance Company, or the rights or obligations under any such Insurance Policy to the extent such rights and obligations are otherwise available under applicable law, and the rights and obligations, if any, of any Insurance Company relating to or arising out of the Plan Documents, including the Plan, the Confirmation Order, or any provision thereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law.

(b)  Nothing in section IV.F of the Plan is intended or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Person.

F.  **U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust**

For all U.S. federal and applicable state, local, and non-U.S. income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Liquidating Trust, other than the Disputed Claims Reserve, as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code. In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust. Moreover, for all U.S. federal and applicable state, local, and non-U.S. income tax purposes, it is intended that (1) the Liquidating Trust Beneficiaries be treated as if they had (i) received a distribution from the Estate of an undivided interest in the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable Assets) and (ii) subsequently

contributed such undivided interest to the Liquidating Trust in exchange for an interest in the Liquidating Trust and (2) the Liquidating Trust Beneficiaries be treated as the grantors of the Liquidating Trust and as deemed owners of the Liquidating Trust and Liquidating Trust Assets. The terms of the Liquidating Trust Agreement shall be consistent with the foregoing tax treatment and no party hereto shall take any position inconsistent herewith.

For all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9. Following the funding of the Liquidating Trust, Norcold LLC shall provide a "§ 1.468B-9 Statement" in respect of the Disputed Claims Reserve to the Liquidating Trustee in accordance with Treasury Regulation section 1.468B-9(g).

The Liquidating Trustee shall be responsible for filing all tax returns for the Liquidating Trust and the Debtor. The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets. The Liquidating Trustee may request an expedited determination of taxes of the Debtor under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtor for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete and deliver to the Liquidating Trustee the appropriate IRS Form W-8 or IRS Form W-9, as applicable. Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Claim that is to receive a distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such distribution and (ii) no distribution shall be made to or on behalf of such Holder under the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with the Liquidating Trustee's tax withholding and reporting requirements. All Holders of Allowed General Unsecured Claims are deemed to have agreed to use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes.

## G.   <u>Preservation of Causes of Action</u>

The Debtor is continuing to review and analyze its books and records to determine if other potential causes of action exist. To the extent the Debtor identifies any such potential causes of action, the Debtor will include them on the Schedule of Retained Causes of Action, which will be filed as part of the Plan Supplement.

Except as otherwise provided in Article IX of the Plan or in any contract, instrument, release, or agreement entered into in connection with the Plan, in accordance with section 1123(b)

of the Bankruptcy Code, all Retained Causes of Action are preserved and shall vest in and be transferred to the Liquidating Trust on the Effective Date.

### H.    Corporate Action

#### 1.    Transfer of Assets and Assumption of Liabilities

On the Effective Date, (a) the Debtor shall, in accordance with the Plan, cause the Liquidating Trust Assets to be transferred to the Liquidating Trust; and (b) the Liquidating Trust shall assume all obligations of the Debtor under the Plan.

#### 2.    Removal of Managers and Officers; Termination of Employees and Consultants

On the Effective Date, and upon the Debtor causing the Liquidating Trust Assets to be transferred to the Liquidating Trust, the Debtor shall have no further duties or responsibilities in connection with implementation of the Plan, and the managers and officers of the Debtor shall be deemed to have resigned, and the engagement of consultants or other professionals of the Debtor shall be deemed to have terminated. From and after the Effective Date, the Liquidating Trustee shall be authorized to act on behalf of the Estate, *provided* that the Liquidating Trustee shall have no duties other than as expressly set forth in the Plan and the Liquidating Trust Agreement (as applicable).

For the avoidance of doubt, after the Effective Date, the Debtor will continue to exist with respect to (i) any applications for Professional Fee Claims or expense reimbursements for its Retained Professionals, including preparing, objecting to, defending, and attending any hearing with respect to the same; (ii) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order. Following the Effective Date, the Debtor's Retained Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (i) through (iii). Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court subject to the presentment of invoices to the Liquidating Trustee in customary form.

### I.    Books and Records

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtor and the Estate that were not sold and transferred pursuant to the Sale; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of the same is no longer necessary or beneficial.

Notwithstanding anything to the contrary in the Liquidating Trust Agreement, prior to disposing of the Debtor's books and records, the Liquidating Trustee shall file a notice of its intent to abandon or destroy such records with a ten (10) business day objection period and serve the

33875574.7

36

notice on counsel to the Post-Effective Date Debtor (if applicable), the Purchaser, the U.S. Trustee, and all other parties requesting notice pursuant to Bankruptcy Rule 2002. If no objections are received by the expiration of the ten (10) business day objection period, the Liquidating Trustee shall be authorized to abandon and/ or destroy the books and records as set forth in the notice.

### J.    Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtor and the Liquidating Trustee (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan. The Debtor, the Liquidating Trustee, all Holders of Claims receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### K.    Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, as applicable, transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax and are authorized to accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax. Such exemption specifically applies, without limitation, to the transfer of the Liquidating Trust Assets to the Liquidating Trust.

### L.    Sale Orders

Notwithstanding anything to the contrary in the Plan, nothing in the Plan shall affect, impair or supersede any Sale Order entered by the Bankruptcy Court, as applicable, which will remain in full force and effect and govern in the event of any inconsistency with the Plan.

### M.    Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the members, security holders, officers, managers, partners, or other owners of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtor is formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, managers, members, partners or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

### N.    No Revesting of Liquidating Trust Assets

No Liquidating Trust Asset will revest in the Debtor on or after the date such asset vests in or is transferred to the Liquidating Trust but will vest upon such transfer in the Liquidating Trust

33875574.7

to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement.

## VI.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES

### A.   General Treatment

On the Effective Date, except as otherwise provided in the Plan (which exclusion includes the Insurance Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are (i) specifically designated on the Assumption Schedule filed with the Plan Supplement or (ii) the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

### B.   Rejection Damages Claims

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Bankruptcy Court, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, the Liquidating Trustee, Liquidating Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent within twenty-one (21) days of the applicable counterparty to an Executory Contract or Unexpired Lease receiving notice of such rejection and the deadline to file any Claims, which notice may be included in the notice of the Effective Date of the Plan.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable unless otherwise ordered by the Bankruptcy Court. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Article III.B.4 of the Plan; *provided*, *however*, that the foregoing provision shall not limit the rights of any counterparty to an Executory Contract or Unexpired Lease who continued to provide goods or services to the Debtor following the Petition Date to seek to have its Claim(s) Allowed as Administrative Claim(s); *provided*, *further*, *however*, that any such Administrative Claims shall be filed no later than the Administrative Claims Bar Date.

## VII.    PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor, or its respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided in the Plan, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtor or the Liquidating Trustee (as applicable); *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder and the Debtor or Liquidating Trustee (as applicable) shall have no obligation to determine alternative or current addresses.

### B.    Withholdings

The Liquidating Trustee shall (1) withhold, deduct, and pay over to the appropriate governmental authority any amount required to be withheld under tax laws with respect to any distribution pursuant to the Liquidating Trust Agreement; and (2) comply with any reporting requirements imposed by any federal, state, local, or foreign taxing authority.  The Liquidating Trustee may withhold all or the appropriate portion of any distribution due to any Liquidating Trust Beneficiary until such time as such Liquidating Trust Beneficiary provides the necessary information (*i.e.*, IRS Forms) to comply with any withholding requirements of any governmental authority.  Any tax withheld shall be treated as distributed and received by the applicable beneficiary for all purposes of the Liquidating Trust Agreement and Plan.  If a Liquidating Trust Beneficiary fails to provide the information necessary to comply with any withholding requirements of any governmental authority on or before the day that is six (6) months after the Effective Date of the Plan, then such beneficiary's distribution may be treated as unclaimed property in accordance with the Liquidating Trust Agreement.

### C.    Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

33875574.7

D.     **Disbursing Agent**

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  If the Disbursing Agent is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust.

E.     **Powers of Disbursing Agent**

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of the Plan; (2) make all distributions contemplated thereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to the Plan.

F.     **Surrender of Instruments**

As a condition precedent to receiving any distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

G.     **IRS Forms**

In connection with the Plan, to the extent applicable, the Debtor and the Liquidating Trustee (as applicable) shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtor and the Liquidating Trustee (as applicable) shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtor and the Liquidating Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

As a condition precedent to receiving any distribution under the Plan, each Holder of an Allowed Claim that is entitled to a distribution under the Plan must provide the Liquidating Trustee an executed IRS Form. The Liquidating Trustee shall make an initial request (by first-class mail) to Holders of Allowed Claims for the information required under this section as soon as reasonably practicable after the Effective Date and after such Claims are Allowed for distribution purposes and shall specify a period of sixty (60) days to respond.  A second request shall be made after the expiration of the initial sixty (60) day period.  Each such request shall specify that (a) the

information is being requested for purposes of potential distributions under the Plan, (b) Holders must promptly provide written notice of any change in address to the Liquidating Trustee, otherwise the Liquidating Trustee is authorized to conclusively rely on the address for such Holder listed on the Debtor's books and records or in any Filed Proof of Claim or transfer of Claim, and (c) that the failure to respond will result in disallowance of the Claim in accordance with the Plan, absent further other of the Bankruptcy Court to the contrary.

An Allowed Claim of a Holder that fails to provide an executed IRS Form or provide any other required information to effectuate a distribution within thirty (30) days of service (by first-class mail) of the second request for the same shall be deemed disallowed and expunged for purposes of distributions under the Plan. For the avoidance of doubt, the Liquidating Trust is not required to follow up with any Holder of an Allowed Claim if they fail to timely provide an executed IRS Form following service of the requests set forth above.

## H.    Delivery of Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (a) is returned as undeliverable for lack of a current address or otherwise; or (b) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within sixty (60) calendar days after the mailing of such distribution, the Liquidating Trustee shall be authorized to cancel such distribution check. For the avoidance of doubt, the Liquidating Trustee shall have no affirmative obligation to locate the correct current address of such Holder. Thirty (30) calendar days after the cancellation of a distribution check by the Liquidating Trustee, if the Holder has not provided the Liquidating Trustee with written notice of a change of address, (a) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Liquidating Trust for distribution in accordance with the Plan and the Liquidating Trust Agreement and (b) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan, absent further other of the Bankruptcy Court to the contrary.

## I.    Manner of Payment

Any distributions to be made by or on behalf of the Debtor or the Liquidating Trustee (as applicable) pursuant to the Plan shall be made by checks drawn on accounts maintained by the Debtor or the Liquidating Trustee (as applicable), or by wire transfer if circumstances justify, at the option of the Debtor or the Liquidating Trustee (as applicable).

## J.    Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

### K.  Setoffs and Recoupments

The Debtor or the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy and/or non-bankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtor or the Estate may have against the Holder of such Allowed Claim; *provided, however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Trustee (as applicable) of any such claim the Debtor or the Estate may have against the Holder of such Claim. The Liquidating Trustee shall be required to file such notice on the docket of the Chapter 11 Case.

### L.  Minimum Distributions

No payment of Cash in an amount of less than one-hundred U.S. dollars ($100.00) shall be required to be made on account of any Allowed Claim.  Such undistributed amount may instead be used in accordance with the Plan and the Liquidating Trust Agreement.

If the Cash available for the final distribution is less than the cost to distribute such funds, the Liquidating Trustee may donate such funds to the unaffiliated charity of the Liquidating Trustee's choice.

### M.  Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under the Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

### N.  Distributions Free and Clear

Except as otherwise provided in the Plan, any distribution or transfer made under the Plan shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to the Plan.

### O.  Claims Paid or Payable by Third Parties

#### 1.  Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtor and/or the Liquidating Trustee (as applicable) on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed, and if the Claim was paid or satisfied in full other than through the Debtor and/or the Liquidating Trustee (as applicable), then such Claim shall be disallowed and

any recovery in excess of a single recovery in full shall be paid over to the Debtor or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed; *provided, however,* that a notice of satisfaction shall be Filed and served reflecting that a particular Claim has been satisfied.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtor and/or the Liquidating Trustee (as applicable) on account of such Claim, such Holder shall, within fourteen (14) Business Days of receipt thereof, repay or return the distribution to the Debtor or Liquidating Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.       Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's payment of such Claim, the applicable portion of such Claim may be expunged (and the Claims Register adjusted accordingly) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; provided, that the Debtor or the Liquidating Trustee, as applicable, shall serve notice of such satisfaction on the affected Holder of the applicable Claim.

3.       Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall take into account payments made in accordance with the provisions of any applicable Insurance Policy.  Except as set forth in Article X herein, nothing in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity, including the Liquidating Trust, may hold against any other Person or Entity, including Insurance Companies under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurance Company of any defenses, including coverage defenses, held by such Insurance Company.

**VIII.   PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS**

**A.       Allowance of Claims**

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses that the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

**B.       Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trustee shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the

Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.    Estimation of Claims

Before or after the Effective Date, the Debtor or the Liquidating Trustee (as applicable) may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtor or the Liquidating Trustee (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.    Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by the Purchaser in the Sale or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtor or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed following a notice filed on the docket (i.e., a notice of satisfaction of claims) in the Bankruptcy Court of such adjustment or expungement.

### E.    Time to File Objections to Claims

Except as otherwise provided in the Plan, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended upon entry of an order by the Bankruptcy Court).

### F.    Disallowance of Late Claims

Except as provided in the Plan or otherwise agreed to by the Debtor or the Liquidating Trustee (as applicable), any Holder of a Claim Filed, via proof of claim, after the Bar Date shall not receive any distributions on account of such Claims to the extent such Claim has been disallowed and expunged upon objection on notice to the affected Claimant.

### G.    Disputed Claims

All Claims held by Persons or Entities against whom or which the Debtor or the Liquidating Trustee (as applicable) has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer

33875574.7

avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan. A Claim deemed Disputed pursuant to this Article VII.G shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtor or the Liquidating Trustee (as applicable) from such Holder have been paid.

### H.    No Distributions Pending Allowance

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

### I.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan and the Liquidating Trust Agreement (as applicable).  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.  No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

## IX.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.    Conditions Precedent

The occurrence of the Effective Date of the Plan is subject to each of the following conditions precedent provided, that, notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously with the last condition precedent to the Effective Date to occur.

1. The Bankruptcy Court shall have approved this Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2. The Bankruptcy Court shall have entered the Confirmation Order in full force and effect as a Final Order.

3. There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the transactions contemplated by the Plan from being consummated.

4. The Professional Fee Claim Reserve shall have been fully funded in an amount equal to the Professional Fee Claim Reserve Amount pursuant to the terms of the Plan.

5. The Sale Documents shall have been approved and executed by the parties thereto.

6. All actions, documents and agreements necessary to implement the Plan shall have been effected, executed, and/or tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7. The Liquidating Trust Agreement shall have been approved and executed by the parties thereto.

8. The Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under the Plan and the Liquidating Trust Agreement, as applicable.

9. The Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement the Plan and any transaction contemplated hereby that are required by law, regulation, or order.

**B.      Waiver of Conditions**

Except as provided in the Plan, the conditions to the Effective Date set forth in Article VIII.A. of the Plan may be waived in whole or in part by the Debtor, in consultation with the Committee, without notice to any parties in interest or the Bankruptcy Court and without a hearing.

**C.      Effect of Vacatur of the Confirmation Order**

If the Confirmation Order is vacated: (1) the Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor or (b) prejudice in any manner the rights, including any claims or defenses, of any party in interest.

**D.      Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

X.      **RELEASE, INJUNCTION, AND RELATED PROVISIONS**

The Plan contains the following release, injunction, and related provisions:

A.      <u>Releases by the Debtor</u>

**As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code and for good and valuable consideration, each Debtor Released Party is deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtor and the Estate from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtor or the Estate would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtor (or the Estate), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership, or operation thereof, or otherwise), any securities issued by the Debtor and the ownership thereof, the Debtor's in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sale, the DIP Order, the DIP Credit Agreement, and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; provided, however, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Order, the Sale Documents; or (3) the  Retained Causes of Action.**

B.      <u>Releases by Holders of Claims</u>

**As of the Effective Date,  except as otherwise provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement this Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release each Released**

Party from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtor or the Estate would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtor (or the Estate), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership or operation thereof, or otherwise), any securities issued by the Debtor and the ownership thereof, the Debtor's in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sale, or agreement or document created or entered into in connection with the Sale, the DIP Order, the DIP Credit Agreement, and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; provided, however, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (2) any obligations under or in respect of the (i) Sale Order and (ii) the Sale Documents.

### C.   Exculpation

Except as otherwise specifically provided in the Plan, to the maximum extent permitted by applicable law, no Exculpated Party[14] shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim related to any act or omission arising from the Petition Date through and including the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Debtor's in-court restructuring efforts, the Disclosure Statement, documents and pleadings related to the Sale, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct

---

[14]   As set forth in the Plan, "**Exculpated Party**" or "**Exculpated Parties**" means, in each case in its capacity as such,  (i) the Debtor; (ii) the managers of the Debtor and any other person serving as a fiduciary of the Debtor's Estate, in each case, who served at any time between the Petition Date and the Effective Date; and (iii) all financial advisors, attorneys, accountants, investment bankers, and other professionals retained by the Debtor and the Committee  in the Chapter 11 Case. Plan Art. I.A.49.

of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person, but in all respects such Entities shall be entitled to reasonably rely upon the written advice of counsel with respect to their duties and responsibilities pursuant to the Plan to the extent permitted under applicable law.

### D.    Injunction

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) are subject to exculpation pursuant to the Plan; or (4) are otherwise satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from taking any actions to interfere with the implementation and consummation of the Plan and from commencing or continuing in any manner, any action or other proceeding on account of any such claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtor or any Person or Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any released, settled, compromised, or exculpated claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor Released Parties, the Released Parties, or Exculpated Parties (as applicable): (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests ((i) other than a setoff exercised prior to the Petition Date, (ii) unless such Entity has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law; or (iii) otherwise permissible under applicable law, asserted through a timely filed or deemed timely filed proof of claim); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released, exculpated, or settled pursuant to the Plan.

### E.    Waiver of Statutory Limitations on Releases

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER ARTICLE IX OF THE PLAN) EXPRESSLY

ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN ARTICLE IX OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

### F.    No Discharge

Because the Debtor is liquidating, the Debtor is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims.

In accordance with Bankruptcy Code Section 1141(d)(3), the Plan does not discharge the Debtor. Bankruptcy Code Section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and interests against the Debtor, and Bankruptcy Code Section 1141(a) provides that the Plan, as confirmed, will be binding to the extent provided therein. As such, no Entity holding a Claim against the Debtor may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

### G.    Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtor's Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtor and its successors and assigns.

If any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Liquidating Trustee that are necessary or desirable to record or

effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

## XI.    RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case, the Sales, the Confirmation Order, the Plan Supplement, and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction over, among other items, each of the following:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.    Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.    Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4.    Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.    Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date.

6.    Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.    Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action.

8.    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9.    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan.

10. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan.

11. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13. Determine any other matters that may arise in connection with or related to the APAs or related Sale documents, the Disclosure Statement, the Plan, the Plan Supplement, and the Confirmation Order.

14. Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan.

15. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

17. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.

18. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtor or the Liquidating Trustee on behalf of the Liquidating Trust (as applicable) for an expedited determination of tax under section 505(b) of the Bankruptcy Code.

19. To recover all assets of the Debtor and property of the Estate, wherever located.

20. To consider requests for extensions of the term of the Liquidating Trust as provided in the Plan.

21. Enter an order or final decree concluding or closing the Chapter 11 Case.

22. Enforce all orders previously entered by the Bankruptcy Court.

23. Hear any other matter over which the Bankruptcy Court has jurisdiction.

## XII.    MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### A.    Modification of the Plan

Subject to the limitations contained in the Plan, the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### B.    Other Amendments

The Debtor may make appropriate non-material, technical adjustments and modifications to the Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### C.    Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### D.    Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date

Subject to the conditions to the Effective Date, the Debtor reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation.  If the Debtor revokes or withdraws the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan, the Plan Supplement, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtor or any other Person or Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person or Entity.

## XIII.    MISCELLANEOUS PROVISIONS

### A.    Debtor's Operation from Confirmation Hearing Through Effective Date

During the period from the Confirmation Hearing through and until the Effective Date, the Debtor shall continue to operate as a debtor-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

B.       **Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Liquidating Trustee, all Holders of Claims against and Interests in the Debtor (regardless of whether any such Holder has voted or failed to vote to accept or reject the Plan and regardless of whether any such Holder is entitled to receive any distribution under the Plan), all Persons or Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Person or Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

C.       **Additional Documents**

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor, the Liquidating Trustee, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

D.       **Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

E.       **Reservation of Rights**

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.       **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Person or Entity.

G.       **Determination of Tax Liabilities**

As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Estate and Liquidating Trust; *provided*, *however*, that the Liquidating Trustee shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtor (which Interests shall be cancelled pursuant to the Plan), but

33875574.7

shall provide such Holders with any information reasonably required to prepare such forms.  The Debtor and the Liquidating Trustee (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Estate or the Liquidating Trust for any tax incurred during the administration of the Chapter 11 Case.

### H.     Dissolution of the Committee

On the Effective Date, the Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Case; provided, however, that, after the Effective Date, the Committee will continue to exist solely with respect to (1) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing, objecting to, defending, and attending any hearing with respect to the same; (2) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order; and (3) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way the treatment of the Holders of General Unsecured Claims, including, but not limited to, any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.  Following the Effective Date, the Committee's Retained Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (1) through (3).  Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### I.     Notices

In order for all notices, requests, and demands to or upon the Debtor or the Liquidating Trustee, as the case may be, to be effective, such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtor | Counsel to the Debtor |
|---|---|
| Norcold LLC<br>Attn:  Petrus Johannes Adriana Struijs<br>(pstruijs@thetford.eu) | **Young Conaway Stargatt & Taylor, LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attention: Sean M. Beach, Esq.; Matthew B. Lunn, Esq.; Jared W. Kochenash, Esq.<br>Email: sbeach@ycst.com; mlunn@ycst.com; jkochenash@ycst.com |
| **Liquidating Trustee** | **Counsel to the Liquidating Trustee** |
| [●] | [●] |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Persons or Entities that Filed such renewed requests.

### J.     Term of Injunctions or Stays

Except as otherwise provided in the Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-Confirmation jurisdiction to modify the injunctions and stays under the Plan (1) all injunctions with respect to or stays against an action against property of the Debtor or the Estate arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtor or the Estate; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Case is closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that the Chapter 11 Case is dismissed pursuant to a Final Order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

### K.     Entire Agreement

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### L.     Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents shall be made available upon written request to Debtor's counsel or Liquidating Trustee's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.  The documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

### M.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise

set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

### N.        Non-Severability of Plan Provision Upon Confirmation

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor and the Liquidating Trustee (as applicable); and (3) non-severable and mutually dependent.

### O.        Closing of Chapter 11 Case

Following the Effective Date, the Liquidating Trustee shall be permitted, upon notice and a hearing, to close the Chapter 11 Case. After the full administration of the Chapter 11 Case, the Liquidating Trustee shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

## XIV.  RISK FACTORS

Prior to voting on the Plan, the Holders of the Prepetition Loan Guarantee Claims in Class 3, the Holders of General Unsecured Claims in Class 4, and the Holders of the Litigation Claims in Class 5 as well as Entities in non-voting Classes should carefully consider the risk factors described below, as well as all of the information contained in this Disclosure Statement, including the exhibits hereto. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation. *See* Article XV of this Disclosure Statement for a discussion of tax law considerations.

### A.        Plan Confirmation

There is no guarantee that the Plan will be confirmed. If the Plan, or a substantially similar plan, is not confirmed, the terms and timing of any plan of liquidation ultimately confirmed in the Chapter 11 Case, and the treatment of Claims and Interests, will be unknown. In addition, if the Plan is not confirmed, a significant risk exists that the Chapter 11 Case may be converted to a case under chapter 7. In that event, the Debtor believes that creditor recoveries would be substantially diminished.

B.     **The Effective Date May Not Occur**

The Plan provides that there are conditions precedent to the occurrence of the Effective Date.  There is no guarantee as to the timing of the Effective Date.  Additionally, if the conditions precedent to the Effective Date are not satisfied or waived, the Bankruptcy Court may vacate the Confirmation Order.  In that event, the Plan would be deemed null and void, and the Debtor or any other party may propose or solicit votes on an alternative plan of liquidation that may not be as favorable to parties in interest as the Plan.

C.     **Allowance of Claims**

This Disclosure Statement has been prepared based on preliminary information concerning Filed Claims and the Debtor's books and records.  The actual amount of Allowed Claims may materially differ from the Debtor's current estimates.

D.     **Risk Factors That May Affect Recoveries Available to Holders of Allowed Claims Under the Plan**

1.     **The Amounts of Allowed Claims May Adversely Affect the Recovery of Some Holders of Allowed Claims**

The distributions available to the Holders of the Prepetition Loan Guarantee Claims in Class 3, Holders of Allowed General Unsecured Claims in Class 4, and Holders of the Litigation Claims in Class 5 under the Plan can be affected by a variety of contingencies, including, without limitation, the amount of Allowed Professional Fee Claims, Allowed Administrative Claims, Priority Tax Claims, Class 1 Other Priority Claims, and Class 2 Other Secured Claims, thereby reducing the amount of distributions available for Holders of Allowed Claims in Classes 3, 4 and 5.

The Debtor cannot determine with any certainty at this time the number or amount of such Claims that will ultimately be Allowed.  Thus, the projected recoveries for Holders of Allowed Claims in Classes 3, 4 and 5 disclosed in this Disclosure Statement are highly speculative.

2.     **Any Valuation of Any Assets to be Distributed Under the Plan is Speculative**

Any valuation of any of the assets to be distributed under the Plan is necessarily speculative.  Accordingly, the ultimate value, if any, of these assets could materially affect, among other things, recoveries to the Holders of Allowed Claims in Classes 3, 4 and 5.

3.     **The Debtor Cannot Guarantee the Timing of Distributions**

The timing of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted.  Therefore, the Debtor cannot guarantee the timing of any recovery on an Allowed Claim.

4.      **Certain Tax Implications of the Debtor's Bankruptcy**

Holders of Allowed Claims should carefully review Article XV of this Disclosure Statement, "Certain U.S. Federal Income Tax Consequences of Consummation of the Plan," for a description of certain tax implications of the Plan and the Debtor's Chapter 11 Case. As described more fully in that Article, the tax treatment of the Liquidating Trust is subject to substantial uncertainty and the intended tax treatment of the Liquidating Trust will not be known until the resolution of the Disputed Claims. This date may be later than the due date for a Holder's federal income tax return for its taxable year that includes the Effective Date. For example, assuming the Effective Date occurs in 2025, an individual U.S. Holder's federal income tax return would normally be due on April 15, 2026, but the intended tax treatment of the Trust may not be known until later. Thus, a Holder may be required to file for an extension of the filing date for such tax returns or may be required to amend such tax returns if it files them prior to the date the intended tax treatment of the Trust is determined. Further, even if an extension is obtained, the extension generally does not extend the due date for paying any taxes associated with the extended tax return. Holders are urged to consult their tax advisors with respect to the need to file for an extension or amend such tax returns.

5.      **Liquidating Trust's Expenses**

The ultimate amount of Cash available to satisfy Allowed General Unsecured Claims in Class 4 and the Litigation Claims in Class 5 depends, in part, on the manner in which the Liquidating Trustee operates the Liquidating Trust and the expenses it incurs. Such expenses may include, without limitation, the ordinary course and other expenses of administering the Liquidating Trust, including, among other things, any taxes relating thereto and the costs to liquidate the Liquidating Trust Assets, investigate and prosecute the Retained Causes of Action, prosecute objections to Claims, and make distributions. The expenses of the Liquidating Trustee will be given priority over distributions to Holders of Allowed General Unsecured Claims in Class 4 and Litigation Claims in Class 5. As a result, if the Liquidating Trustee incurs professional or other expenses in excess of current expectations, the amount of distributable assets remaining to satisfy Allowed General Unsecured Claims in Class 4 and Litigation Claims in Class 5 will decrease.

E.      **Risk Factors Relating to Securities Law**

Section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan from registration under the Securities Act and state securities laws if three principal requirements are satisfied: (1) the securities must be offered and sold under a plan and must be securities of the debtor, an affiliate participating in a joint plan with the debtor or a successor to the debtor under the plan; (2) the recipients of the securities must hold a pre-petition or administrative expense claim against the debtor or an interest in the debtor; and (3) the securities must be issued entirely in exchange for the recipient's claim against, or interest, in the debtor, or principally in such exchange and partly for cash or property. To the extent that the rights to distributions from the Liquidating Trust are deemed to constitute securities issued in accordance with the Plan, the Debtor believes that those interests satisfy the requirements of section 1145(a)(1) of the Bankruptcy Code and, therefore, those interests are exempt from registration under the Securities Act and applicable state securities laws.

1.      **Uncertainty of Value**

In addition to the prohibition on the transfer of rights to distributions from the Liquidating Trust as discussed above, the value of such rights will depend on various significant risks and uncertainties, including, without limitation, (a) the effect of substantial delays in liquidating claims and other contingent assets and liabilities; and (b) the effects of any changes in tax and other government rules and regulations applicable to the Liquidating Trust.  All of these risks are beyond the control of the Liquidating Trust.  The amount of any recovery realized by the Liquidating Trust and its respective beneficiaries will vary depending upon the extent to which these risks materialize.

F.      **Disclosure Statement Disclaimer**

1.      **The Financial Information Contained in This Disclosure Statement Has Not Been Audited**

In preparing this Disclosure Statement, the Debtor and its advisors relied on financial data derived from the Debtor's books and records that was available at the time of such preparation.  Although the Debtor has used its reasonable business judgment to ensure the accuracy of the financial information provided in this Disclosure Statement, and any conclusions or estimates drawn from that financial information, and although the Debtor believes that the financial information herein fairly reflects the financial condition of the Debtor, the Debtor is unable to warrant that the financial information contained herein, or any conclusions or estimates drawn therefrom, is without inaccuracies.

2.      **Information Contained in This Disclosure Statement is for Soliciting Votes**

The information contained in this Disclosure Statement is for the purpose of soliciting acceptances of the Plan and may not be relied upon for any other purpose.

3.      **This Disclosure Statement was not Reviewed or Approved by the SEC**

This Disclosure Statement was not filed with the SEC under the Securities Act or applicable state securities laws.  Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement or the exhibits or the statements contained in this Disclosure Statement.

4.      **This Disclosure Statement May Contain Forward Looking Statements**

This Disclosure Statement may contain "forward looking statements" within the meaning of the "safe harbor" provisions of the Private Securities Litigation Reform Act of 1995, as amended.  Statements containing words such as "may," "believe," "anticipate," "expect," "intend," "plan," "project," "projections," "business outlook," "estimate," or similar expressions constitute forward-looking statements and may include, without limitations, information regarding the Debtor's expectations with respect to future events.  These forward-looking statements are subject to a number of risks, uncertainties and assumptions, including those risks described in this Article.

5. **No Legal or Tax Advice Is Provided to You by This Disclosure Statement**

This Disclosure Statement is not legal advice to you.  The contents of this Disclosure Statement should not be construed as legal, business or tax advice.  Each Holder of a Claim or an Interest should consult their own legal counsel, accountant or other applicable advisor with regard to any legal, tax and other matters concerning their Claim or Interest.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

6. **No Admissions Made**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any entity (including, without limitation, the Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, Holders of Allowed Claims or Interests, or any other parties in interest.

7. **Failure to Identify Potential Objections**

No reliance should be placed on the fact that a particular Retained Cause of Action or potential objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement.  The Liquidating Trustee may, pursuant to the Plan, object to applicable Claims or Interests after the Effective Date of the Plan or pursue a Retained Cause of Action irrespective of whether this Disclosure Statement identifies a particular Retained Cause of Action or objection to a Claim, excluding any Cause of Action that is released pursuant to Article IX of the Plan.

8. **No Waiver of Right to Object or Right to Recover Transfers and Assets**

The vote by a Holder of a Claim or Interest for or against the Plan does not constitute a waiver or release of any claims, causes of action or rights of the Debtor (or any entity, as the case may be) to object to that Holder's Claim or Interest, or seek to recover any preferential, fraudulent or other voidable transfer of assets, regardless of whether any claims or causes of action of the Debtor or the Estate are specifically or generally identified in this Disclosure Statement.

9. **Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors**

The Debtor's advisors have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement.  Although the Debtor's advisors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement.

10. **Potential Exists for Inaccuracies, and the Debtor Has No Duty to Update**

The statements contained in this Disclosure Statement are made by the Debtor as of the date of this Disclosure Statement, unless otherwise specified in this Disclosure Statement, and the delivery of this Disclosure Statement after the date of this Disclosure Statement does not imply

that there has not been a change in the information set forth in this Disclosure Statement since that date.  While the Debtor has used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtor nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Disclosure Statement.  Further, although the Debtor may subsequently update the information in this Disclosure Statement, the Debtor has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

11. **No Representations Outside This Disclosure Statement are Authorized**

No representations concerning or relating to the Debtor, the Chapter 11 Case or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.  You should promptly report unauthorized representations or inducements to counsel to the Debtor and the U.S. Trustee.

## XV. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF CONSUMMATION OF THE PLAN

The confirmation and execution of the Plan may have tax consequences to the Liquidating Trust Beneficiaries.  The Debtor does not offer an opinion as to any federal, state, local, foreign, or other tax consequences to Liquidating Trust Beneficiaries as a result of the confirmation of the Plan.  All Liquidating Trust Beneficiaries are urged to consult their own tax advisors with respect to the federal, state, local, foreign, and other tax consequences of the Plan.  The Plan is not intended, and should not be construed, as legal or tax advice to any Liquidating Trust Beneficiary or other party in interest.

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and to Holders of certain Claims.  This discussion does not address the U.S. federal income tax consequences to (i) creditors whose Claims are Unimpaired or otherwise entitled to payment in full in cash under the Plan or (ii) Holders who are deemed to reject the Plan, such as Holders of Class 6 Intercompany Claims, Class 7 Section 510(b) Claims, and Class 8 Interests.

The discussion of U.S. federal income tax consequences below is based on the U.S. Internal Revenue Code of 1986, as amended from time to time (the "Tax Code"), Treasury Regulations promulgated or proposed under the Tax Code, judicial authorities, published positions of the Internal Revenue Service ("IRS"), and other applicable authorities, all as in effect on the date of this Disclosure Statement and all of which are subject to change or differing interpretations, possibly with retroactive effect.  The U.S. federal income tax consequences of the Plan are complex and subject to significant uncertainties.  The Debtor has not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the Plan.  No assurance can be given that the IRS will not take a position contrary to the description of U.S. federal income tax consequences of the Plan described below.

This discussion does not address non-U.S., state, or local tax consequences of the Plan, nor does it purport to address the U.S. federal income tax consequences of the Plan to special classes of taxpayers, foreign taxpayers, small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other financial institutions, insurance companies, tax-exempt organizations, retirement plans, individual retirement and other tax deferred accounts, Holders that are, or hold Claims through, S corporations, partnerships or other pass-through entities for U.S. federal income tax purposes, persons whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, traders that mark-to-market their securities, persons subject to the alternative minimum tax or the "Medicare" tax on unearned income, persons who use the accrual method of accounting and report income on an "applicable financial statement," and persons holding Claims that are part of a straddle, hedging, constructive sale, or conversion transaction. In addition, this discussion does not address U.S. federal taxes other than income taxes, nor does it address the Foreign Account Tax Compliance Act. The following discussion generally assumes that the Plan implements the liquidation of the Debtor for U.S. federal income tax purposes and that all distributions by the Debtor will be taxed accordingly. Additionally, this discussion assumes that (i) the various arrangements to which the Debtor is a party will be respected for U.S. federal income tax purposes in accordance with their form and (ii) except if otherwise indicated, the Claims are held as "capital assets" (generally, property held for investment) within the meaning of section 1221 of the Tax Code.

The following discussion of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon each Holder's individual circumstances. Each Holder is urged to consult such Holder's own tax advisor for the U.S. federal, state, local, foreign, and other tax consequences applicable under the Plan.

## A.    CONSEQUENCES TO HOLDERS OF GENERAL UNSECURED CLAIMS

Pursuant to the Plan, each Holder of an Allowed General Unsecured Claim in Class 4 or Litigation Claim in Class 5 will receive, in full and final satisfaction of its applicable claim, its *pro rata* share of the Class 4 Liquidating Trust Interests and Class 5 Liquidating Trust Interests, as applicable. As discussed below (*see* Section XV.C of this Disclosure Statement), each Holder of an Allowed General Unsecured Claim in Class 4 or a Litigation Claim in Class 5 that receives a beneficial interest in the Liquidating Trust will be treated for U.S. federal income tax purposes as directly receiving, and as a direct owner of, an undivided interest in the Liquidating Trust Assets consistent with its pro rata interest in the Liquidating Trust, and subject to any portion(s) of the Liquidating Trust being treated as a "disputed ownership fund" for U.S. federal income tax purposes.

### 1.    General Consequences to Holders of General Unsecured Claims in Class 4 and Litigation Claims in Class 5

In general, Holders of Allowed Trade Claims in Class 4 and Litigation Claims in Class 5 will recognize gain or loss with respect to their Allowed Claim in an amount equal to the difference between (i) the fair market value of their undivided interest in the Liquidating Trust Assets and treated as received in respect of their Claim (other than any consideration attributable to a Claim for accrued but unpaid interest) and (ii) the adjusted tax basis of the Claim exchanged therefor

(other than any tax basis attributable to accrued but unpaid interest previously included in the holder's taxable income). The Liquidating Trustee will in good faith value the Liquidating Trust Assets as of the Effective Date, and all parties to the Liquidating Trust must consistently use such valuation for all U.S. federal income tax purposes. As discussed below, the amount of cash or other property received in respect of an Allowed Claim for accrued but unpaid interest will be taxed as ordinary income, except to the extent previously included in income by a holder under its method of accounting.

After the date of transfer of Liquidating Trust Assets to the Liquidating Trust, a Holder's share of any collections received on the Liquidating Trust Assets (other than as a result of the subsequent disallowance of Disputed Claims or the reallocation of undeliverable distributions) should not be included, for U.S. federal income tax purposes, in the holder's amount realized in respect of its Allowed Claim but should be separately treated as amounts realized in respect of such holder's beneficial interest in the Liquidating Trust Assets.

In the event of the subsequent disallowance of any Disputed Claim, it is possible that a holder of a previously Allowed Claim may receive additional Cash or, in the case of the release of non-Cash assets from a Disputed Claims Reserve, non-Cash distributions in respect of its Claim. Accordingly, it is possible that the recognition of any loss realized by a holder with respect to an Allowed Claim may be deferred until all Claims are Allowed or Disallowed. Alternatively, it is possible that a holder will have additional gain in respect of any additional distributions received.

If gain or loss is recognized, such gain or loss may be long-term capital gain or loss if the Allowed Claim disposed of is a capital asset in the hands of the Holder and has been held for more than one year. Each Holder of an Allowed Claim should consult such Holder's tax advisor to determine whether gain or loss recognized by such Holder will be long-term capital gain or loss and the specific tax effect thereof on such Holder. The character of any gain or loss depends on, among other things, the origin of the Holder's Allowed Claim, when the Holder receives payment (or is deemed to receive payment) in respect of such Allowed Claim, whether the Holder reports income using the accrual or cash method of tax accounting, whether the Holder acquired its Allowed Claim at a discount, whether the Holder has taken a bad debt deduction with respect to such Allowed Claim, and whether (as intended and herein assumed) the Plan implements the liquidation of the Debtor for U.S. federal income tax purposes.

A Holder's aggregate tax basis in such Holder's undivided interest in the Liquidating Trust Assets (subject to any portion(s) of the Liquidating Trust being treated as a "disputed ownership fund" for U.S. federal income tax purposes) will be equal to the fair market value of such interest increased by its share of the Debtor's liabilities to which such assets remain subject upon transfer to the Liquidating Trust. A Holder's holding period generally will begin on the day following the date of transfer of Liquidating Trust Assets to the Liquidating Trust.

### 2.    Distributions in Respect of Accrued But Unpaid Interest

In general, to the extent any amount received (whether in cash or as other property) by a Holder of a debt instrument is received in satisfaction of interest that accrued during such Holder's holding period, such amount will be taxable to the Holder as ordinary interest income (if not previously included in the Holder's gross income under the Holder's normal method of

accounting).  Conversely, a Holder generally recognizes a deductible loss to the extent any accrued interest was previously included in such Holder's gross income and is not paid in full.

**B.      TAX TREATMENT OF THE LIQUIDATING TRUST AND HOLDERS OF BENEFICIAL INTERESTS THEREIN**

The Liquidating Trust is intended to qualify as a "liquidating trust" for U.S. federal income tax purposes (other than in respect of any portion of the assets transferred to the Liquidating Trust that are part of a Disputed Claims Reserve, *i.e.*, assets allocable to Disputed Claims, including assets retained on account of Disputed Claims, as discussed below).  In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as a "grantor" trust (i.e., a pass-through entity).  Revenue Procedure 94-45, 1994-2 C.B. 684 sets forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan.  The Liquidating Trust will be structured with the intention of complying with such general criteria.  Pursuant to the Plan, and in conformity with Revenue Procedure 94- 45, all parties (including, without limitation, the Debtor, the Liquidating Trustee and beneficiaries of the Liquidating Trust) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer of such Liquidating Trust Assets (subject to any obligations relating to those assets) directly to recipients of beneficial interests in the Liquidating Trust (other than any Disputed Claims Reserve) followed by (2) the transfer by such beneficiaries to the Liquidating Trust of such Liquidating Trust Assets in exchange for beneficial interests in the Liquidating Trust. Accordingly, except in the event of contrary definitive guidance, holders of beneficial interests in the Liquidating Trust shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the assets transferred by the Debtor to the Liquidating Trust (other than any Disputed Claims Reserve).

No ruling is currently being requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust.  If the IRS were to challenge successfully such classification, the U.S. federal income tax consequences to the Liquidating Trust and to Holders could vary from those discussed herein.  Certain U.S. federal income tax consequences of the Liquidating Trust or portions thereof being treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9 are also discussed below.

1.      **General "Liquidating Trust" Tax Reporting by the Liquidating Trust and its Beneficiaries**

For all U.S. federal income tax purposes, all parties must treat the Liquidating Trust as a grantor trust of which the holders of beneficial interests in the Liquidating Trust are the owners and grantors, and treat such beneficiaries as the direct owners of an undivided interest in the Liquidating Trust Assets transferred to the Liquidating Trust (other than any Disputed Claims Reserve), consistent with their pro rata interests therein.  The Liquidating Trustee will file tax returns for the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations.  The Liquidating Trustee also shall annually send to each holder of a beneficial interest in the Liquidating Trust a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes.

33875574.7

All taxable income and loss of the Liquidating Trust will be allocated among, and treated as directly earned and incurred by, the holders of beneficial interests in the Liquidating Trust with respect to such Holder's interest in the assets of the Liquidating Trust (and not as income or loss with respect to such Holder's prior Claims), with the possible exception of any taxable income and loss allocable to any Disputed Claims Reserve. The character of any income and the character and ability to use any loss will depend on the particular circumstances of each beneficial interest holder. The U.S. federal income tax consequences to U.S. beneficiaries of U.S. grantor trusts with foreign corporate subsidiaries is not entirely clear. Holders of Liquidating Trust beneficial interests may be taxed on certain income of foreign corporate subsidiaries of the Liquidating Trust, but the amount of such income, if any, is not expected to be material.

As soon as reasonably practicable after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of the fair market value of such Liquidating Trust Assets. All parties to the Liquidating Trust (including, without limitation, the Debtor, Holders of Allowed Claims, and the beneficiaries of the Liquidating Trust) must consistently use such valuation for all U.S. federal income tax purposes.

The U.S. federal income tax obligations of a holder of a beneficial interest in the Liquidating Trust are not dependent on the Liquidating Trust distributing any cash or other proceeds, subject to any Disputed Claims Reserve. Thus, a holder of a beneficial interest in the Liquidating Trust may incur a U.S. federal income tax liability with respect to its allocable share of the Liquidating Trust's income even if the Liquidating Trust does not make a concurrent distribution to the holder. In general, other than in respect of cash retained as part of a Disputed Claims Reserve (the subsequent distribution of which still relates to a holder's Allowed Claim), a distribution of cash by the Liquidating Trust will not be separately taxable to a beneficiary of the Liquidating Trust since the beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying Liquidating Trust Assets (and was taxed at the time the cash was earned or received by the Liquidating Trust). Holders are urged to consult such Holders' tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of cash originally retained by the Liquidating Trust as part of a Disputed Claims Reserve. The Liquidating Trust will comply with all applicable governmental withholding requirements.

### 2.    Tax Reporting for Assets Allocable to Disputed Claims

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by a Liquidating Trustee of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may elect to treat any Disputed Claims Reserve as a "disputed ownership fund" governed by section 1.468B-9(b)(2) of the Treasury Regulations.

Accordingly, if a "disputed ownership fund" election is made with respect to any Disputed Claims Reserves, such reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Liquidating Trust Assets allocable to such Disputed Claims Reserve (including any gain recognized upon the disposition of such Liquidating Trust Assets). All distributions from such reserves (which distributions will be net of the expenses, including taxes, relating to the retention or disposition of such assets) will be treated as received by Holders

in respect of their Claims as if distributed by the Debtor.  All parties (including, without limitation, the Debtor, the Liquidating Trustee and the beneficiaries of the Liquidating Trust) will be required to report for tax purposes consistently with the foregoing.

If a Disputed Claims Reserve is established, such reserve will be responsible for payment, out of the assets of such reserve, of any taxes imposed on the reserve or its assets.  In the event, and to the extent, any cash in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the distribution of the assets in such reserve), assets of the Disputed Claims Reserve may be sold to pay such taxes.

## C.    WITHHOLDING ON DISTRIBUTIONS AND INFORMATION REPORTING

All distributions to Holders of Allowed Claims under the Plan are subject to any applicable tax withholding, including employment tax withholding.  Under U.S. federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate.  Backup withholding generally applies if a Holder (a) fails to furnish such Holder's social security number or other taxpayer identification number, (b) furnishes an incorrect social security number or other taxpayer identification number, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is such Holder's correct number and that such Holder is not subject to backup withholding.  Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax.  Certain Persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.  Holders of Allowed Claims are urged to consult such Holders' tax advisors regarding the Treasury Regulations governing backup withholding and whether the transactions contemplated by the Plan would be subject to those Treasury Regulations.

In addition, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds.  Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the Holder's tax returns.

The foregoing summary has been provided for informational purposes only. All Holders are urged to consult such Holders' tax advisors concerning the federal, state, local, foreign, and other tax consequences applicable under the Plan.

## XVI.   ADDITIONAL INFORMATION

Any statements in this Disclosure Statement concerning the provisions of any document are not necessarily complete, and in each instance reference is made to such document for the full text thereof.  Certain documents described or referred to in this Disclosure Statement have not been attached as exhibits because of the impracticability of furnishing copies of these documents

to all recipients of this Disclosure Statement.  The Debtor will file all exhibits to the Plan with the Bankruptcy Court and make them available for review on https://cases.stretto.com/Norcold no later than seven days before the Voting Deadline.

## XVII.  RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Debtor believes that the Confirmation and consummation of the Plan is preferable to all other alternatives.  Consequently, the Debtor urges all Holders of Claims in Classes 3, 4 and 5 to vote to accept the Plan and to evidence their acceptance by duly completing and returning their ballots so that they will be received on or before the Voting Deadline.

Dated: January 13, 2026

Respectfully submitted,

*/s/ Richard Wu*_____ _____
By: Richard Wu
Chief Restructuring Officer
Norcold LLC

33875574.7

68

## EXHIBIT A

**Chapter 11 Plan of Liquidation for Norcold LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| NORCOLD LLC,[1] | Case No. 25-11933 (TMH) |
| Debtor. | |

## AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR NORCOLD LLC

**Dated: January 13, 2026**

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Jared W. Kochenash (No. 6557)
Daniel Trager (No. 7465)
Roger L. Sharp (No. 7454)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Emails:  sbeach@ycst.com
          mlunn@ycst.com
          jkochenash@ycst.com
          dtrager@ycst.com
          rsharp@ycst.com

*Counsel to the Debtor and Debtor in Possession*

---

[1]    The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is:  Norcold LLC (6081).  For purposes of this chapter 11 case, the Debtor's service address is 7101 Jackson Road, Ann Arbor, MI 48103.

33832587.3

# TABLE OF CONTENTS

ARTICLE I.    DEFINED TERMS AND RULES OF INTERPRETATION ................................. 6
  A.    Definitions ................................................................................................ 6
  B.    Rules of Interpretation ............................................................................ 17
  C.    Computation of Time .............................................................................. 18
  D.    Controlling Document ............................................................................ 18

ARTICLE II.    ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY
FEES ....................................................................................................................... 18
  A.    Administrative Claims ............................................................................ 18
  B.    Professional Fee Claims and Administrative Claims of OCPs ..................... 19
      1.  Final Fee Applications ............................................................................ 19
      2.  Administrative Claims of OCPs ............................................................... 19
      3.  Post-Effective Date Fees and Expenses .................................................... 19
      4.  Professional Fee Reserve Amount ........................................................... 20
      5.  Professional Fee Reserve ........................................................................ 20
  C.    Priority Tax Claims ................................................................................ 20
  D.    DIP Claims ............................................................................................ 20
  E.    U.S. Trustee Statutory Fees .................................................................... 21

ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ... 21
  A.    Classification of Claims and Interests ...................................................... 21
  B.    Treatment of Claims and Interests ........................................................... 22
      1.  Class 1 – Other Priority Claims ............................................................... 22
      2.  Class 2 – Other Secured Claims ............................................................... 22
      3.  Class 3 – Prepetition Loan Guarantee Claims ........................................... 22
      4.  Class 4 – General Unsecured Claims ........................................................ 23
      5.  Class 5 – Litigation Claims ...................................................................... 23
      6.  Class 6 – Intercompany Claims ................................................................ 24
      7.  Class 7 – Section 510(b) Claims .............................................................. 24
      8.  Class 8 – Interests .................................................................................. 24
  C.    Special Provisions Governing Unimpaired Claims ..................................... 24
  D.    Elimination of Vacant Classes ................................................................ 24
  E.    Controversy Concerning Impairment ....................................................... 25
  F.    Subordination of Claims ......................................................................... 25
  G.    Reservation of Rights Regarding Claims .................................................. 25

# TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| H. | Postpetition Interest on Claims | 25 |
| I. | Insurance | 25 |
| ARTICLE IV. | MEANS FOR IMPLEMENTATION OF THIS PLAN | 26 |
| A. | Sources of Consideration for Plan Distributions | 26 |
| B. | Wind-Down | 26 |
| C. | Vesting of Assets | 26 |
| D. | Liquidating Trust | 26 |
| 1. | Establishment of the Liquidating Trust | 26 |
| 2. | Transfer of the Liquidating Trust Assets | 26 |
| 3. | Insurance Rights Transfer | 27 |
| 4. | Liquidating Trust Agreement | 27 |
| 5. | Purpose of the Liquidating Trust | 27 |
| 6. | Liquidating Trustee | 28 |
| 7. | Termination of the Liquidating Trust | 30 |
| E. | Insurance Provisions | 31 |
| F. | U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust | 31 |
| G. | Preservation of Causes of Action | 32 |
| H. | Corporate Action | 32 |
| 1. | Transfer of Assets and Assumption of Liabilities | 32 |
| 2. | Removal of Directors and Officers; Termination of Employees and Consultants | 32 |
| I. | Books and Records | 33 |
| J. | Effectuating Documents and Further Transactions | 33 |
| K. | Section 1146 Exemption from Certain Taxes and Fees | 34 |
| L. | Sale Orders | 34 |
| M. | Authority to Act | 34 |
| N. | No Revesting of Liquidating Trust Assets | 34 |
| ARTICLE V. | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES | 34 |
| A. | General Treatment | 34 |
| B. | Rejection Damages Claims | 35 |

# TABLE OF CONTENTS
(continued)

ARTICLE VI.    PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 35

    A.      Distribution Record Date.......................................................................... 35

    B.      Withholdings ............................................................................................ 36

    C.      Date of Distributions ............................................................................... 36

    D.      Disbursing Agent...................................................................................... 36

    E.      Powers of Disbursing Agent .................................................................... 37

    F.      IRS Forms ................................................................................................ 37

    G.      Delivery of Distributions ......................................................................... 38

    H.      Manner of Payment .................................................................................. 38

    I.      Foreign Currency Exchange Rate ............................................................ 38

    J.      Setoffs and Recoupments ........................................................................ 38

    K.      Minimum Distributions ........................................................................... 39

    L.      Allocation of Distributions Between Principal and Interest..................... 39

    M.      Distributions Free and Clear.................................................................... 39

    N.      Claims Paid or Payable by Third Parties ................................................. 39

      1.      Claims Paid by Third Parties ................................................................... 39

      2.      Claims Payable by Third Parties.............................................................. 39

      3.      Applicability of Insurance Policies .......................................................... 40

ARTICLE VII.    PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED
CLAIMS ....................................................................................................................... 40

    A.      Allowance of Claims ............................................................................... 40

    B.      Claims Administration Responsibilities................................................... 40

    C.      Estimation of Claims ............................................................................... 40

    D.      Adjustment to Claims Without Objection ................................................ 41

    E.      Time to File Objections to Claims ........................................................... 41

    F.      Disallowance of Late Claims ................................................................... 41

    G.      Disputed Claims ...................................................................................... 41

    H.      No Distributions Pending Allowance....................................................... 41

    I.      Distributions After Allowance ................................................................. 42

ARTICLE VIII.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ....................... 42

    A.      Conditions Precedent................................................................................ 42

# TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| B. | Waiver of Conditions | 43 |
| C. | Effect of Vacatur of the Confirmation Order | 43 |
| D. | Votes Solicited in Good Faith | 43 |
| ARTICLE IX. | RELEASE, INJUNCTION, AND RELATED PROVISIONS | 43 |
| A. | Releases by the Debtor | 43 |
| B. | Releases by Holders of Claims | 44 |
| C. | Exculpation | 45 |
| D. | Injunction | 45 |
| E. | Waiver of Statutory Limitations on Releases | 46 |
| F. | No Discharge | 46 |
| G. | Release of Liens | 47 |
| ARTICLE X. | RETENTION OF JURISDICTION | 47 |
| ARTICLE XI. | MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN | 49 |
| A. | Modification of this Plan | 49 |
| B. | Other Amendments | 49 |
| C. | Effect of Confirmation on Modifications | 49 |
| D. | Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date | 50 |
| ARTICLE XII. | MISCELLANEOUS PROVISIONS | 50 |
| A. | Debtor's Operation from Confirmation Hearing Through Effective Date | 50 |
| B. | Immediate Binding Effect | 50 |
| C. | Additional Documents | 50 |
| D. | Substantial Consummation | 51 |
| E. | Reservation of Rights | 51 |
| F. | Successors and Assigns | 51 |
| G. | Determination of Tax Liabilities | 51 |
| H. | Dissolution of the Committee | 51 |
| I. | Notices | 52 |
| J. | Term of Injunctions or Stays | 52 |
| K. | Entire Agreement | 53 |
| L. | Plan Supplement Exhibits | 53 |

**TABLE OF CONTENTS**
(continued)

M.      Governing Law ............................................................................................. 53

N.      Non-Severability of Plan Provision Upon Confirmation ............................................ 53

O.      Closing of the Chapter 11 Case .................................................................... 54

## INTRODUCTION

Norcold LLC, as debtor and debtor in possession (the "<u>Debtor</u>") in the above-captioned chapter 11 case, proposes this chapter 11 plan (this "<u>Plan</u>") under section 1121 of the Bankruptcy Code. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. Supplemental agreements and documents referenced in this Plan and the Disclosure Statement are available for review on both the Bankruptcy Court's docket and on the Debtor's case information website: https://cases.stretto.com/Norcold.

Reference is made to the Disclosure Statement filed contemporaneously with this Plan for a discussion of the Debtor's history, business, historical financial information, and liquidation analysis, as well as a summary and analysis of this Plan and certain related matters, including distributions to be made under this Plan.

**ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.**

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Definitions

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.      "<u>Administrative Claim(s)</u>" means a Claim entitled to priority under section 503(b), 507(a)(2), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including (a) actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate, operating the Debtor's business, and the ongoing liquidation of the Debtor, (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court), and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

2.      "<u>Administrative Claims Bar Date</u>" means the deadline for Filing all requests for allowance and payment of Administrative Claims (other than requests for payment of Professional Fee Claims by Retained Professionals or OCPs or requests for payment of claims pursuant to section 503(b)(9) of the Bankruptcy Code), which shall be the date that is thirty (30) days after the Effective Date.

3.      "<u>Allowed</u>" means, with respect to any Claim, except as otherwise provided in this Plan: (a) a Claim that is evidenced by a Filed Proof of Claim (or for which Claim under this Plan, the Bankruptcy Code, or pursuant to a Final Order, a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed in an amount different than the amount listed on such Schedules; (c) a Claim Allowed pursuant to the Bankruptcy Code, this Plan, or a Final Order of the Bankruptcy Court; or (d) any Claim that is compromised, settled, or otherwise

resolved pursuant to the authority of the Debtor or the Liquidating Trustee, as applicable; *provided* that with respect to a Claim described in clause (a) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection or challenge to the allowance, validity, extent or priority thereof has been Filed by the Debtor, the Liquidating Trustee, or any other party in interest within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection was so Filed and the Claim shall have been Allowed by a Final Order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtor to the Debtor or the Liquidating Trust (as applicable).  "<u>Allow</u>" and "<u>Allowing</u>" shall have correlative meanings.

4.      "<u>APA</u>" means an agreement reflecting the sale of substantially all the Debtor's assets to the Purchaser.

5.      "<u>Assumption Schedule</u>" means the schedule of Executory Contracts (if any) to be assumed or assumed and assigned by the Debtor pursuant to the Plan and sections 365 and 1123 of the Bankruptcy Code, which will be included in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the Confirmation Order.

6.      "<u>Avoidance Actions</u>" means any and all actual or potential avoidance, recovery, subordination, or other similar Causes of Action that may be brought by or on behalf of the Debtor or the Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Causes of Action or remedies arising under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law, including fraudulent transfer laws.

7.      "<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

8.      "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware.

9.      "<u>Bankruptcy Rule(s)</u>" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code.

10.      "<u>Bar Date</u>" means, as applicable, the Administrative Claims Bar Date, and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed, including the general bar date and bar date for Governmental Units, each as determined by order of the Bankruptcy Court.  Notwithstanding the foregoing, Professional Fee Claims shall be Filed in accordance with Article II.B herein and shall not otherwise be subject to the Bar Date.

11.      "<u>Bid Procedures</u>" means the bid procedures with respect to the Sale Process approved by the Bankruptcy Court through the Bid Procedures Order.

12.      "<u>Bid Procedures Order</u>" means, as applicable, the order of the Bankruptcy Court establishing the Bid Procedures.

13.     "<u>Business Day</u>" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

14.     "<u>Cash</u>" means cash and cash equivalents in legal tender of the United States of America.

15.     "<u>Causes of Action</u>" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, (e) any Avoidance Action or state law fraudulent transfer claim, (f) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence, and (g) any state or foreign fraudulent transfer or similar claim.

16.     "<u>Chapter 11 Case</u>" means the chapter 11 case Filed by the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

17.     "<u>Claim(s)</u>" means any "claim", as defined in section 101(5) of the Bankruptcy Code, against the Debtor or the Estate.

18.     "<u>Claims Objection Deadline</u>" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other deadline as may be fixed by an order of the Bankruptcy Court for objecting to such Claims; *provided*, *however*, that the Liquidating Trustee may seek extensions of such date from the Bankruptcy Court at any time.

19.     "<u>Claims Register</u>" means the official register of Claims against the Debtor maintained by the Notice and Claims Agent.

20.     "<u>Class</u>" means a category of Claims or Interests as established by and set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

21.     "<u>Class 4 Liquidating Trust Interests</u>" means the beneficial interests in the Liquidating Trust, which interests shall be uncertificated, non-transferable (except as expressly provided otherwise in the Liquidating Trust Agreement), and distributed to holders of Allowed General Unsecured Claims, in accordance with Section III.4 of this Plan.

33832587.3

22.     "<u>Class 5 Liquidating Trust Interests</u>" means the beneficial interests in the Liquidating Trust, which interests shall be uncertificated, non-transferable (except as expressly provided otherwise in the Liquidating Trust Agreement), and distributed to holders of Allowed Litigation Claims, in accordance with Section III.5 of this Plan.

23.     "<u>Committee</u>" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee on November 22, 2025 [*see* Docket No. 72], as it may be reconstituted from time to time.

24.     "<u>Confirmation</u>" means the entry of the Confirmation Order by the Bankruptcy Court.

25.     "<u>Confirmation Date</u>" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

26.     "<u>Confirmation Hearing</u>" means the hearing(s) conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

27.     "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

28.     "<u>D&O Policies</u>" means, collectively, the Debtor's director and officer liability insurance policies along with any other applicable directors' and officers' liability insurance policies, including primary insurance, excess insurance, or tail insurance policies.

29.     "<u>DCA</u>" means Dave Carter & Associates, Inc.

30.     "<u>Debtor</u>" means Norcold LLC as debtor and debtor-in-possession.

31.     "<u>DIP Claim(s)</u>" means a Claim of the DIP Lender in connection with the DIP Order and DIP Term Sheet.

32.     "<u>DIP Term Sheet</u>" means that certain *Senior Secured Superpriority Debtor-In-Possession Revolving Loan Facility Term Sheet* between Norcold LLC, as borrower, and the DIP Lender, as lender.

33.     "<u>DIP Lender</u>" means DCA, in its capacity as lender under the DIP Term Sheet.

34.     "<u>DIP Order</u>" means, an interim or final order of the Bankruptcy Court (as may be amended, modified, or supplemented from time to time) authorizing the Debtor to obtain postpetition financing from the DIP Lender and approving the terms of the DIP Term Sheet, as applicable.

35.     "<u>Disbursing Agent</u>" means the Debtor, the Liquidating Trustee, or the Entity(ies) selected by the Liquidating Trustee, which Entity(ies) may include the Notice and Claims Agent, as applicable, to make or to facilitate distributions pursuant to this Plan.

36.    "Disclosure Statement" means the *Amended Disclosure Statement for the Amended Chapter 11 Plan of Liquidation for Norcold LLC* filed contemporaneously herewith (as such may be amended, supplemented, or modified from time to time), including all exhibits and schedules thereto and references therein that relate to this Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

37.    "Disputed" means, with respect to any Claim, except as otherwise provided herein, a Claim that is not Allowed and not disallowed under this Plan, the Bankruptcy Code, or a Final Order.  To the extent that a Claim is held by a Holder that is or may be liable to the Debtor or the Estate on account of a Retained Cause of Action, such Claim shall be a Disputed Claim unless and until such Retained Cause of Action has been settled or withdrawn or has been determined by a Final Order.

38.    "Disputed Claims Reserve" means any Cash that is reserved for Disputed Claims established and maintained by the Liquidating Trustee.

39.    "Distribution Record Date" means the date established for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

40.    "Effective Date" means the date that is the first Business Day after the entry of the Confirmation Order on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent to the occurrence of the Effective Date, as set forth in Article VIII.A herein, have been satisfied or waived in accordance with this Plan; and (c) the Debtor declares this Plan effective by filing a notice on the docket of the Chapter 11 Case.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

41.    "Entity" means any "entity," as defined in section 101(15) of the Bankruptcy Code.

42.    "Estate" means the bankruptcy estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

43.    "Exculpated Party" or "Exculpated Parties" means, collectively, and in each case in its capacity as such: (i) the Debtor; (ii) the managers of the Debtor and any other person serving as a fiduciary of the Debtor's Estate, in each case, who served at any time between the Petition Date and the Effective Date; (iii) the Committee and Committee members (in their capacity as such) (iv) all financial advisors, attorneys, accountants, investment bankers, and other professionals retained by the Debtor and the Committee in the Chapter 11 Case.

44.    "Executory Contract(s)" means a contract to which the Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

45.    "File" or "Filed" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case, or in the case of a Proof of Claim, the Notice and Claims Agent.

46.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed,

33832587.3

10

stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

47.     "General Unsecured Claim(s)" means any Unsecured Claim against the Debtor (other than (a) an Administrative Claim, (b) a Priority Tax Claim, (c) an Other Priority Claim, (d) a Litigation Claim, (e) a Section 510(b) Claim, or (f) an Intercompany Claim), including claims resulting from the rejection of unexpired leases or executory contracts.

48.     "Governmental Unit(s)" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

49.     "Holder(s)" means a Person or Entity, as applicable, holding a Claim against, or an Interest in, the Debtor, as the context requires.

50.     "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

51.     "Independent Manager" means Michael Buenzow.

52.     "Insurance Company" means any Entity that issued, or that have any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any Insurance Policy, and any third party administrator, parent, subsidiary, affiliate, successor, predecessor, or assign of any of the foregoing, solely in their capacity as such with respect to an Insurance Policy.

53.     "Insurance Policies" means all insurance policies that have been issued at any time to provide coverage to the Debtor and all agreements, documents, or instruments relating thereto.

54.     "Insurance Rights" means any and all rights, titles, privileges, interests, claims, demands, or entitlements of the Debtor or any Litigation Claimants to any proceeds, payments, benefits, Causes of Action, choses in action, defense or indemnity arising under, or attributable to, any and all Insurance Policies available to the Debtor as of the Effective Date now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including: (i) any Insurance Company's failure to provide coverage or otherwise pay under an Insurance Policy; (ii) the refusal of any Insurance Company to compromise and settle any claim or provide defense to any claim; (iii) the interpretation or enforcement of the terms of any Insurance Policy with respect to any Claim; (iv) any conduct by

33832587.3

11

any Insurance Company constituting "bad faith" conduct or that could otherwise give rise to extra-contractual damages, or other wrongful conduct under applicable law; or (v) any right to receive proceeds with respect to any Insurance Policy or a coverage action.

55.     "Insurance Rights Transfer" means the transfer, assignment, and vesting of the Insurance Rights described in Section IV.E.3 of this Plan.

56.     "Intercompany Claim" shall mean a Claim against the Debtor that is held by a direct or indirect parent, subsidiary, or affiliate of the Debtor.

57.     "Interest(s)" means "equity security" (as defined in section 101(16) of the Bankruptcy Code) of the Debtor, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtor, whether fully vested or vesting in the future, including without limitation, equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be granted to current or former employees, directors, officers, or contractors of the Debtor, to acquire any such interest in the Debtor that existed immediately before the Petition Date.

58.     "IRS Form" means IRS Form W-9, any acceptable substitute, or any other tax information form that the Disbursing Agent may require from a Holder of a Claim for a distribution under this Plan.

59.     "Law" means any federal, state, local, or foreign law (including provincial and common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

60.     "Lien" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

61.     "Liquidating Trust" means the liquidating trust established on the Effective Date pursuant to Article IV.D herein and the Liquidating Trust Agreement.

62.     "Liquidating Trustee" means the Entity designated by the Debtor, in consultation with the Committee, and retained as the trustee of the Liquidating Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust, and taking such other actions as may be authorized under the Liquidating Trust Agreement, and any successor subsequently appointed pursuant to the Liquidating Trust Agreement.  The identity and compensation of the Liquidating Trustee shall be disclosed in the Plan Supplement.

63.     "Liquidating Trust Agreement" means the agreement included with the Plan Supplement and executed as of the Effective Date that establishes and governs the Liquidating Trust.

64.     "Liquidating Trust Assets" means all property of the Debtor's Estate not transferred pursuant to the Sale or distributed to holders of Allowed Claims on the Effective Date, including, without limitation, the Sale Proceeds, the Retained Causes of Action, and the Wind-down Amount;

*provided*, *however*, that the following shall not constitute Liquidating Trust Assets: (i) the Debtor's Cash reserved for payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Other Priority Claims and (ii) the Professional Fee Reserve.

65.     "Liquidating Trust Beneficiaries" means all Holders of Class 4 Liquidating Trust Interests and Class 5 Liquidating Trust Interests.

66.     "Litigation Claim" means any Unsecured Claim, demand, suit, Cause of Action (excluding setoff rights), proceeding, or any other right or asserted right to payment, whether existing heretofore, now, or hereafter, whether known or unknown, based upon or in any manner arising from, related to, or in any way involving bodily injury, wrongful death, and/or property damage occurring prior to the Petition Date, including, without limitation any alleged property damage, product recall, personal injury, wrongful death, emotional distress, or other similar claim based on harms (whether physical, emotional or otherwise and whether or not diagnosable or manifested prior to the Petition Date).

67.     "Litigation Claimant" means a party asserting or alleging a Litigation Claim.

68.     "Notice and Claims Agent" means Stretto, Inc. in its capacity as noticing, claims, and solicitation agent for the Debtor.

69.     "OCP(s)" means any ordinary course professional whose retention and compensation has been authorized by the Bankruptcy Court in accordance with the OCP Order.

70.     "OCP Order" means the order of the Bankruptcy Court authorizing the Debtor to retain and compensate the OCPs for services rendered during the Chapter 11 Case.

71.     "Other Priority Claim(s)" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

72.     "Person" means a "person," as defined in section 101(41) of the Bankruptcy Code.

73.     "Petition Date" means November 3, 2025, which is the date on which the Debtor Filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Case.

74.     "Plan" means this plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

75.     "Plan Supplement" means a supplemental appendix to this Plan containing, among other things, forms of applicable documents, schedules, and exhibits to this Plan to be filed with the Bankruptcy Court, including, but not limited to, the following:  (i) the Liquidating Trust Agreement; (ii) the Schedule of Retained Causes of Action; and (iii) the Assumption Schedule.

76.     "<u>Post-Effective Date Debtor</u>" means the Debtor and its successor after the Effective Date.

77.     "<u>Prepetition Agent</u>" means Cerberus Business Finance Agency, LLC, as Administrative Agent and Collateral Agent under the Prepetition Financing Agreement.

78.     "<u>Prepetition Financing Agreement</u>" means that certain Financing Agreement, dated as of December 13, 2021 by and among Yosemite Intermediate I, Inc. as Borrower, Trailblazer IV, Inc. as Parent, the Guarantors party thereto, the lenders from time to time party thereto and Cerberus Business Finance Agency, LLC, as Administrative Agent and Collateral Agent (as amended by that certain Consent and Amendment to Financing Agreement, dated as of December 27, 2021 and that certain Second Amendment to Financing Agreement and First Amendment to Pledge and Security Agreement dated as of June 29, 2023 and that certain Third Amendment to Financing Agreement, dated as of September 29, 2025 and that certain Consent to Financing Agreement dated as of November 2, 2025 and as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time).

79.     "<u>Prepetition Lenders</u>" mean the lenders under the Prepetition Financing Agreement.

80.     "<u>Prepetition Loan Guarantee Claim</u>" means the secured Claims of the Prepetition Agent (on behalf of the Prepetition Lenders) against the Debtor arising under and related to the Debtor's guarantee under the Prepetition Financing Agreement.

81.     "<u>Priority Tax Claim(s)</u>" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

82.     "<u>Professional Fee Claim(s)</u>" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

83.     "<u>Professional Fee Claims Estimate</u>" means an estimate of the aggregate unpaid Professional Fee Claims through the Effective Date, including fee estimates from ordinary course professionals.

84.     "<u>Professional Fee Claim Reserve</u>" means the reserve established and funded by the Debtor prior to the Effective Date in an amount equal to the Professional Fee Reserve Amount to be held in trust to satisfy the unpaid Professional Fee Claims.

85.     "<u>Professional Fee Reserve Amount</u>" has the meaning set forth in Article II.B.4 herein.

86.     "<u>Proof of Claim</u>" means a proof of Claim Filed against a Debtor in the Chapter 11 Case.

87.     "<u>Purchaser</u>" means the purchaser of the Debtor's assets through the Sale.

88.    "Purchase Price" means the price paid by the Purchaser for the Debtor's assets in connection with the Sale.

89.    "Related Party" means, with respect to any Person or Entity, such Person's or Entity's respective current and former (i) officers; (ii) directors; (iii) employees; (iv) partners; (v) affiliates and subsidiaries; (vi) professionals; (vii) advisors and advisory board members; (viii) agents, (ix) shareholders; (x) principals; (xi) members; (xii) managers; (xiii) managed accounts and funds; (xiv) fund advisors; (xv) attorneys, (xvi) accountants, (xvii) consultants, (xviii) investment bankers, (xix) financial advisors, and (xx) the predecessors, successors, assigns, estates, nominees or heirs of such Person or Entity (in each case, solely in their respective capacities as such).

90.    "Released Party" means, except to the extent such party is included in the Schedule of Retained Causes of Action, each of the following solely in their capacity as such: (i) the Debtor and the Estate; (ii) the DIP Lender; (iii) the Purchaser; (iv) the Committee and its members (solely in their capacity as Committee members); (v) the Prepetition Agent; (vi) the Prepetition Lenders; and (vii) to the extent not included in the foregoing, each of the preceding entities' respective Related Parties, including the Independent Manager and any professional retained by the Debtor, DIP Lender, the Prepetition Agent, the Prepetition Lenders or the Committee.  Notwithstanding the foregoing, if any party identified in clauses (i) through (vii) elects to opt-out of the releases in the Plan, such party shall not be considered a Released Party.

91.    "Releasing Parties" means, collectively, and in each case, in their respective capacities as such: (i) the Released Parties; (ii) all Holders of Claims or Interests who vote to accept the Plan and who do not opt out of the releases in the Plan; (iii) all Holders of Claims or Interests who vote to reject the Plan and who do not opt out of the releases in the Plan; and (iv) with respect to each Entity in clause (i) through (iii), each such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

92.    "Retained Causes of Action" means the Causes of Action identified on the Schedule of Retained Causes of Action and not released pursuant to Article IX.A. herein, if any, which shall be filed with the Plan Supplement.

93.    "Retained Professional(s)" means a Person or Entity (other than an OCP) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 328, 363, and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

94.    "Sale" means the transaction between the Debtor and the Purchaser, pursuant to which the Debtor will sell substantially all of its assets to the Purchaser pursuant to sections 363 and 365 of the Bankruptcy Code, as set forth in the Sale Order and the APA.

95.    "Sale Documents" means any agreements, documents, or instruments related to the Sale.

96.    "Sale Order" means an order entered by the Bankruptcy Court authorizing the Sale pursuant to the Sale Documents and sections 363 and 365 of the Bankruptcy Code.

97.    "Sale Proceeds" means all cash and non-cash proceeds of the Sale received by the Debtor.

98.    "Sale Process" means the marketing and sale process conducted by the Debtor concurrently with the solicitation of votes on this Plan pursuant to the Bid Procedures and approved by the Bankruptcy Court through the Bid Procedures Order, for the purpose of soliciting, receiving, and considering offers in connection with the Sale.

99.    "Schedules" means, collectively, the schedules of assets and liabilities and statements of financial affairs required to be Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the Bankruptcy Rules, and the official bankruptcy forms, as the same may be amended, modified, or supplemented from time to time.

100.    "Schedule of Retained Causes of Action" means a schedule of the Causes of Action retained by the Post-Effective Date Debtor and transferred to the Liquidating Trust, which shall be included in the Plan Supplement.

101.    "Section 510(b) Claims" means a Claim against the Debtor (i) arising from the rescission of a purchase or sale of a security of the Debtor or an affiliate of the Debtor; (ii) for damages arising from the purchase or sale of such security; or (iii) for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such Claim; provided, that, if such security is an Interest, such Claim shall not be a Section 510(b) Claim and shall instead receive the treatment applicable to such Interest.

102.    "Secured Claim(s)" means any Claim that is:  (a) secured by a lien on property in which the Debtor has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) Allowed pursuant to this Plan, or separate order of the Bankruptcy Court, as a secured Claim.

103.    "Stalking Horse Purchaser" means DCA.

104.    "Statutory Fees" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

105.    "Subordinated Claim(s)" means any Claim that is subject to subordination in accordance with sections 510(b)-(c) of the Bankruptcy Code or otherwise, including, but not limited to, and solely to the extent determined to be Claims and not Interests, Claims for damages arising from alleged non-payment to such Holder of amounts based on such Holder's status as an Interest Holder, Claims arising from the issuance of founders shares, and Claims arising from, or related to, options.

106.    "<u>U.S. Trustee</u>" means the Office of the United States Trustee for the District of Delaware.

107.    "<u>Unexpired Lease(s)</u>" means a lease to which the Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

108.    "<u>Unimpaired</u>" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

109.    "<u>Unsecured Claim</u>" means, with respect to any Claim, a Claim that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, or an Other Priority Claim.

110.    "<u>Voting Deadline</u>" means the date and time by which all ballots to accept or reject this Plan must be received to be counted.

111.    "<u>Wind-Down</u>" means the process to (i) wind-down, dissolve, and liquidate the Debtor's Estate, including, among other things, pursuing the Retained Causes of Action, and (ii) distributing any resulting or remaining assets in accordance with this Plan.

112.    "<u>Wind-Down Amount</u>" shall mean $500,000 to be used in connection with the Wind-Down.

## B.    **Rules of Interpretation**

For the purposes of this Plan, and except as otherwise provided herein, the following rules of interpretation shall apply:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan or Confirmation Order; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in this Plan to "Articles" and "Exhibits" are references to the articles and exhibits of or to this Plan unless otherwise noted; (6) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (7) the words "includes" or "including" are not limiting; (8) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (9) unless otherwise specified, references in this Plan to "Docket No." refer to entries on the Chapter 11 Case's docket; (10) subject to the provisions of any contract, certificate of incorporation, by-laws, or similar constituent document, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules, and, to the extent applicable, the laws of the State of Delaware; (11) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (12) all references in this Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### C.    Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.  Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

### D.    Controlling Document

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and the Plan Supplement, or any documents included therein, including the Liquidating Trust Agreement, the terms of this Plan shall control.  In the event of an inconsistency between this Plan or the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III herein.

### A.    Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Liquidating Trustee (as applicable), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims, OCPs, and Holders of Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which (i) an order allowing such Administrative Claim becomes a Final Order or (ii) the Debtor or the Liquidating Trustee (as applicable) and the holder of the Administrative Claim consensually agree to the Allowed amount of such claim, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims, all applications seeking allowance and payment of Administrative Claims must be Filed and served on the Debtor or the Liquidating Trustee (as applicable) and their counsel no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date.  The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Any objection to such applications must be Filed and served on the requesting party on or before the Claims Objection Deadline.  After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**Except as otherwise provided in Articles II.B or II.E herein, Holders of Administrative Claims that do not File and serve an application for payment of administrative expense requesting the allowance of an Administrative Claim no later than the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, or their assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date, without further order of the Court, unless otherwise ordered by the Court.**

## B.    Professional Fee Claims and Administrative Claims of OCPs

### 1.    Final Fee Applications

All requests for payment of Professional Fee Claims by Retained Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than thirty (30) days after the Effective Date. Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. Unless otherwise agreed to by the Debtor and the Retained Professional, the Debtor shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Claim Reserve within five (5) Business Days of the entry of such Final Order.

### 2.    Administrative Claims of OCPs

All requests for payment of Administrative Claims of OCPs shall be made pursuant to the OCP Order. To the extent any Administrative Claims of OCPs have not been paid pursuant to the OCP Order on or before the Effective Date, the amount of Administrative Claims owing to such OCPs shall be paid in Cash to such OCPs by the Debtor or the Liquidating Trustee (as applicable) as soon as reasonably practicable after such Administrative Claims are authorized in accordance with the OCP Order.

### 3.    Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in this Plan, from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the Chapter 11 Case that are incurred after the Effective Date. Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 of the Bankruptcy Code or that OCPs comply with the OCP Order in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee may employ and pay any retained professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

4.      Professional Fee Reserve Amount

Unless otherwise agreed to prior to the Effective Date by the Debtor and the Retained Professional, to receive payment for (a) unpaid fees and expenses incurred through the Effective Date and (b) unpaid fees and expenses anticipated to be incurred post-Effective Date in connection with the preparation of the Retained Professionals' Professional Fee Claims, the Retained Professionals shall estimate such amounts and shall deliver such estimates to the Debtor and its counsel no later than three (3) Business Days prior to the Effective Date; *provided* that such estimates shall not be binding with respect to the fees and expenses of such Retained Professional. If a Retained Professional does not provide an estimate of its unpaid fees and expenses, the Debtor may estimate such fees and expenses of the Retained Professional. The total amount so estimated hereunder as of the Effective Date shall comprise the "Professional Fee Reserve Amount." The Retained Professionals may submit invoices for their post-Effective Date services, including with respect to the preparation of Professional Fee Claims, to the Liquidating Trust in the ordinary course of business.

5.      Professional Fee Reserve

On or before the Effective Date, the Debtor shall fund the Professional Fee Claim Reserve with Cash equal to the Professional Fee Reserve Amount, which shall be held in the trust account of counsel to the Debtor. The Professional Fee Reserve and amounts funded therein are, and shall continue to be, maintained in trust solely for the benefit of each Retained Professional separately on a per-Retained Professional basis until all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more Final Orders. Such funds shall not be considered property of the Debtor, the Estate, or the Liquidating Trust (as applicable); *provided*, *however*, that the Liquidating Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Reserve after payment in full of all Allowed Professional Fee Claims without any further notice, action, or order of the Bankruptcy Court.

**C.      Priority Tax Claims**

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the Debtor or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

**D.      DIP Claims**

In full and final satisfaction, compromise, settlement, and release of and in exchange for all Allowed DIP Claims, (i) if the Debtor consummates the Sale to the Stalking Horse Purchaser, the Allowed DIP Claims shall be credited and applied to the Purchase Price or (ii) if the Debtor consummates the Sale to another Purchaser that is not the Stalking Horse Purchaser, all Allowed DIP Claims shall be paid in full from Sale Proceeds.

### E.        U.S. Trustee Statutory Fees

All Statutory Fees that are due and owing as of the Effective Date shall be paid by the Debtor, the Post-Effective Date Debtor, or the Liquidating Trust, as applicable, in full in Cash on the Effective Date.  The Debtor shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Post- Effective Date Debtor and the Liquidating Trustee, as applicable, shall file with the Bankruptcy Court the final monthly operating reports and separate UST Form 11- PCR reports when they become due. After the Effective Date, the Post-Effective Date Debtor and the Liquidating Trustee shall be jointly and severally liable to pay any and all applicable Statutory Fees in full in Cash when due and payable. The U.S. Trustee shall not be treated as providing any release under this Plan. Statutory Fees are Allowed. The U.S. Trustee shall not be required to file any proof of claim or any request for administrative expense for Statutory Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in this Plan to the contrary.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.        Classification of Claims and Interests

Except for the Claims addressed in Article II herein, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtor pursuant to this Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition Loan Guarantee Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Litigation Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

33832587.3

| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.** **Treatment of Claims and Interests**

1. Class 1 – Other Priority Claims

(a) *Classification*:  Class 1 consists of all Other Priority Claims against the Debtor.

(b) *Treatment*:  As soon as reasonably practicable following the Effective Date, each holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c) *Voting*: Class 1 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject this Plan.

2. Class 2 – Other Secured Claims

(a) *Classification*:  Class 2 consists of all Other Secured Claims against the Debtor.

(b) *Treatment*:  As soon as reasonably practicable following the Effective Date, each holder of an Allowed Other Secured Claim shall receive, at the Debtor's option:  (a) payment in full in Cash, (b) the collateral securing its Allowed Other Secured Claim, (c) reinstatement of its Allowed Other Secured Claim, or (d) such other treatment rendering its Allowed Other Secured Claim as Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*:  Class 2 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject this Plan.

3. Class 3 – Prepetition Loan Guarantee Claims

(a) *Classification*:  Class 3 consists of the Prepetition Loan Guarantee Claims.

(b) *Treatment*:  As soon as reasonably practicable following the Effective Date, each holder of an Allowed Prepetition Loan Guarantee Claim shall (i) have such Claim assumed by the Purchaser under the Sale, (ii) receive payment on account of such Claim from the Loan Parties (as defined in the Prepetition Financing Agreement) other than the Debtor

in accordance with the terms of the Prepetition Financing Agreement, or (iii) receive any distributable Sale Proceeds available after satisfaction of the DIP Claims in connection with the Sale (with any deficiency Claim being treated as a General Unsecured Claim) if such Claim is not assumed by the Purchaser.[2]

(c)      *Voting*:  Class 3 is Impaired, and Holders of Prepetition Loan Guarantee Claims are entitled to vote to accept or reject this Plan.

4.      <u>Class 4 – General Unsecured Claims</u>

(a)      *Classification*:  Class 4 consists of all General Unsecured Claims.

(b)      *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtor or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, each Holder thereof will receive its pro rata share of the Class 4 Liquidating Trust Interests, which Class 4 Liquidating Trust Interests shall entitle the holders thereof to receive their pro rata share of the distributable proceeds from the Liquidating Trust Assets.

(c)      *Voting*:  Class 4 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject this Plan.

5.      <u>Class 5 – Litigation Claims</u>

(a)      *Classification*:  Class 5 consists of all Litigation Claims against the Debtor.

(b)      *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Litigation Claim and the Debtor or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, each Holder thereof will receive its pro rata share of the Class 5 Liquidating Trust Interests, which Class 5 Liquidating Trust Interests shall entitle the holders thereof to receive their pro rata share of the distributable proceeds from the Liquidating Trust Assets and any Insurance Rights under any Insurance Policies.

(c)      *Voting*:  Class 5 is Impaired, and Holders of Litigation Claims are entitled to vote to accept or reject this Plan.

---

[2]    For the avoidance of doubt, nothing contained in this Plan or the Confirmation Order shall in any respect amend, modify, restrict or impair the rights of the Prepetition Senior Secured Parties against any Loan Party (other than the Debtor) under the Prepetition Documents.

6. <u>Class 6 – Intercompany Claims</u>

(a) *Classification*:  Class 6 consists of all Intercompany Claims.

(b) *Treatment*: On the Effective Date, except to the extent that an Intercompany Claim is assumed under the Plan, all Intercompany Claims shall be extinguished, subject to any setoff, recoupment, or defense of the Holder of such Intercompany Claim.

(c) *Voting*: Class 6 is Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject this Plan.

7. <u>Class 7 – Section 510(b) Claims</u>

(a) *Classification*:  Class 7 consists of all Section 510(b) Claims.

(b) *Treatment*:  On the Effective Date, all Section 510(b) Claims, if any, shall be cancelled, released, and extinguished without distribution, and will be of no further force or effect.

(c) *Voting*: Class 7 is Impaired, and Holders of Section 510(b) Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Section 510(b) Claims are not entitled to vote to accept or reject this Plan.

8. <u>Class 8 – Interests</u>

(a) *Classification*:  Class 8 consists of all Interests.

(b) *Treatment*:  On the Effective Date, all Interests shall be cancelled, released, and extinguished without distribution, and will be of no further force or effect.

(c) *Voting*: Class 8 is Impaired, and Holders of Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 8 Interests are not entitled to vote to accept or reject this Plan.

**C.** **Special Provisions Governing Unimpaired Claims**

Except as otherwise provided in this Plan, nothing under this Plan shall affect the Debtor's or the Liquidating Trustee's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

**D.** **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting

to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### E.    Controversy Concerning Impairment

If a controversy arises as to whether any Claim or any Class of Claims or Interests is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Hearing.

### F.    Subordination of Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under this Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor or the Liquidating Trustee (as applicable) reserves the right to seek the Bankruptcy Court's permission to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### G.    Reservation of Rights Regarding Claims

Except as otherwise provided in this Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtor's or the Liquidating Trustee's respective rights and defenses, whether legal or equitable, with respect to any Claim, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### H.    Postpetition Interest on Claims

Except as required by applicable bankruptcy law or as otherwise expressly provided in this Plan or the Confirmation Order, postpetition interest, penalties, or other fees will not accrue or be payable on account of any Claim.

### I.    Insurance

Notwithstanding anything to the contrary in this Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of this Plan governing the Class applicable to such Claim.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

### A.    Sources of Consideration for Plan Distributions

Subject in all respects to the provisions of this Plan concerning the Professional Fee Reserve, and except as otherwise provided for herein, the Debtor or the Liquidating Trustee (as applicable) shall fund distributions under this Plan from the Sale Proceeds, Cash on hand as of the Effective Date, and all other Liquidating Trust Assets.  For the avoidance of doubt, if the Purchaser under the Sale is the Stalking Horse Purchaser, prior to Closing of the Sale, the Debtor shall fully draw the debtor-in-possession financing facility, and such Cash proceeds shall be used to fund distributions in accordance with the terms of this Plan.

### B.    Wind-Down

Following the occurrence of the Effective Date and subject to the terms of this Plan, the Liquidating Trustee shall wind-down the affairs and operations of the Debtor and the Estate, as applicable, including, but not limited to, (i) expeditiously and efficiently liquidating the Liquidating Trust Assets; (ii) procuring any appropriate insurance to facilitate the Wind-Down, including appropriate D&O Liability Insurance Policies; and (iii) expeditiously and efficiently pursuing, compromising, settling, and/or liquidating the Retained Causes of Actions.

### C.    Vesting of Assets

On the Effective Date, subject to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in and be transferred to the Liquidating Trust free and clear of all Claims, Liens and interests of creditors, equity security holders and of members of the Debtor, except as otherwise expressly provided in this Plan.

### D.    Liquidating Trust

#### 1.    Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, which will be Filed with the Bankruptcy Court as part of the Plan Supplement. On the Effective Date, all property of the Estate not transferred pursuant to the Sale or distributed to holders of Allowed Claims on the Effective Date, including, without limitation, the Retained Causes of Action, shall vest in the Liquidating Trust.  Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtor or any employees, members, managers, officers, agents, advisors, or representatives of the Debtor.

#### 2.    Transfer of the Liquidating Trust Assets

Subject to section 1141 of the Bankruptcy Code, all property vesting in and transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, and interests of creditors, equity security holders and of general partners in the Debtor, except as may be otherwise provided for in this Plan.  Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating

Trust, the Debtor will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

      3.    <u>Insurance Rights Transfer</u>

In furtherance of the purpose of the Liquidating Trust:

      a.    On the Effective Date, the Debtor shall irrevocably transfer, grant, and assign to the Liquidating Trust, and the Liquidating Trust shall receive and accept the Debtor's Insurance Rights.

      b.    The Insurance Rights Transfer is made free and clear of all Claims, Liens, encumbrances, or Causes of Action of any nature whatsoever, except available limits of liability for coverage of certain types of Claims under one or more Insurance Policies that may have been reduced by certain prepetition payments made by an Insurance Company to, or on behalf of, the Debtor.

      c.    The Insurance Rights Transfer is made to the maximum extent possible under applicable law.

      d.    The Insurance Rights Transfer is absolute and does not require any further action by the Debtor, the Post-Effective Date Debtor, the Liquidating Trust, the Bankruptcy Court, or any other Entity.

      e.    The Insurance Rights Transfer shall be governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the Insurance Policies.

      4.    <u>Liquidating Trust Agreement</u>

On the Effective Date, the Debtor shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement. Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtor or the Liquidating Trustee (as applicable) will be automatically ratified if made in accordance with the terms of the Liquidating Trust Agreement. The Liquidating Trust Agreement shall contain provisions permitting the amendment or modification of the Liquidating Trust Agreement necessary to implement the provisions of this Plan.

      5.    <u>Purpose of the Liquidating Trust</u>

The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) conducting, administering, and

facilitating the Wind-Down; (c) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests; (d) making distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement; (e) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries; and (f) commencing and pursuing the Retained Causes of Action and managing and administering any proceeds thereof, with no objective to continue or engage in the conduct of a trade or business in accordance with Treasury Regulation section 301.7701-4(d). The Liquidating Trust is intended to qualify as a "liquidating trust" under Treasury Regulation section 301.7701-4(d) and a "grantor trust" under section 671 of the Internal Revenue Code (the "Tax Code"), to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

6.    Liquidating Trustee

(a)    *Appointment of the Liquidating Trustee*

Upon the occurrence of the Effective Date, the Liquidating Trustee shall be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be selected by the Debtor (in consultation with the Committee, as applicable) and, once appointed, the Liquidating Trustee shall be the sole officer and manager of the Post-Effective Date Debtor. The Liquidating Trustee, subject to the terms and conditions of this Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, including the Wind-Down. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in this Plan and the Liquidating Trust Agreement, as applicable.

(b)    *Liquidating Trustee as Representative of the Estate*

From and after the occurrence of the Effective Date, the Liquidating Trustee shall act as the exclusive representative of the Estate for all purposes and shall succeed to the rights, powers, and authority that would have been applicable to the Debtor's officers and managers prior to the Effective Date, including the authority to facilitate the Wind-Down, analyze, preserve, file, and pursue Insurance Policy proceeds (including the authority to settle with any Insurance Company with respect to an Insurance Policy), and pursue the Retained Causes of Action. The Debtor's existing managers as of the Effective Date shall be deemed to have resigned on the Effective Date, and all powers of managers shall vest in the Liquidating Trustee on the Effective Date. Upon the occurrence of the Effective Date, the Liquidating Trustee shall have the power to dissolve the Post-Effective Date Debtor, and the Post-Effective Date Debtor shall be dissolved upon the conclusion of the Wind-Down. Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of this Plan, the Confirmation Order, and the Liquidating Trust Agreement.

(c)    *Responsibilities and Authority of the Liquidating Trustee*

The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following rights and responsibilities, which shall be the exclusive rights and responsibilities of the Liquidating Trustee: (i) preserving and liquidating the Liquidating Trust Assets, including the Retained Causes of Action; (ii) facilitating the Wind-Down; (iii) administering and paying taxes, including, among other things, (1) filing tax returns and (2) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (iv) retaining and paying, without the need for retention or fee applications, professionals in connection with the Liquidating Trustee's performance of its duties under this Plan and the Liquidating Trust Agreement; (v) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (vi) preparing and filing all monthly operating reports due after the Effective Date and all post-confirmation reports as required by the U.S. Trustee; (vii) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; (viii) making distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and Liquidating Trust Agreement; and (ix) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Plan Supplement, the Liquidating Trust Agreement, or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.

(d)    *Powers of the Liquidating Trustee*

The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of this Plan, including without limitation any set forth herein, *provided*, *however*, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of this Plan, the Liquidating Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidating Trustee, including, without limitation, to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by this Plan.

The powers of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following:  (i) the power to invest funds of the Liquidating Trust, and withdraw, make distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with this Plan and the Liquidating Trust Agreement; (ii) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; (iii) the exclusive power and authority to investigate, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Causes of Action, or to decline to take any of the foregoing actions, in accordance with the best interests of the Liquidating Trust Beneficiaries, *provided*, in each case, the Liquidating Trustee need not obtain the consent or approval of any third party or provide further notice to, or obtain

approval of the Bankruptcy Court; (iv) the power to object to Claims, including, without limitation, the power to seek subordination or recharacterization of Claims by objection, motion, or adversary proceeding, as applicable; (v) the power and authority to conduct, facilitate, and administer the Wind-Down pursuant to the terms of this Plan, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Entity or its members or any payments to be made in connection therewith, other than the filing of a certificate of cancellation with the appropriate governmental authorities, pursuant to Section 18-203 of the Delaware Limited Liability Company Act codified at title 6 of the Delaware Code or other applicable state or foreign law; (vi) the power and authority to pursue Insurance Policy proceeds (including the authority to settle with any Insurance Company with respect to an Insurance Policy); and (vii) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan, the Plan Supplement, the Liquidating Trust Agreement, or by an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.

(e)   *Compensation of the Liquidating Trustee*

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall fully comply with the terms, conditions, and rights set forth in this Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement. The Liquidating Trustee (and any professionals retained by the Liquidating Trustee) shall not be required to File a fee application to receive compensation.

(f)   *Retention and Payment of Professionals*

The Liquidating Trustee shall have the right, without Bankruptcy Court approval, to retain the services of attorneys, accountants, and other professionals that the Liquidating Trustee determines, in his or her sole discretion, are necessary to assist in performing his or her duties. In accordance with the Liquidating Trust Agreement, the Liquidating Trust shall pay from the Wind- Down Assets the reasonable fees and expenses of such professionals upon the monthly submission of statements to the Liquidating Trust without further order of the Bankruptcy Court.

(g)   *Payment of Liquidating Trust Expenses*

Any and all reasonable and documented costs and expenses incurred by the Liquidating Trust in connection with the Wind-Down shall be paid from the Liquidating Trust Assets, subject to the Liquidating Trust Agreement.

7.   Termination of the Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries; and (b) the fifth anniversary of the creation of the Liquidating Trust; *provided* that, if warranted by the facts and circumstances involved in resolving or monetizing any Liquidating Trust Assets, upon application to, and if approved by, the Bankruptcy Court upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Liquidating Trust Assets and distributing the proceeds to Liquidating Trust Beneficiaries, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified term in accordance with applicable tax laws and regulations.

33832587.3

This application must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

### E.    Insurance Provisions

(a)    Except for the transfer of rights to the Liquidating Trust pursuant to the Insurance Rights Transfer, or as otherwise provided by the Bankruptcy Code, applicable law, the findings made by the Bankruptcy Court in the Confirmation Order, or otherwise, nothing in the Plan shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy issued by any Insurance Company, or the rights or obligations under any such Insurance Policy to the extent such rights and obligations are otherwise available under applicable law, and the rights and obligations, if any, of any Insurance Company relating to or arising out of the Plan Documents, including the Plan, the Confirmation Order, or any provision thereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law.

(b)    Nothing in this Section IV.F of the Plan is intended or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Person.

### F.    U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust

For all U.S. federal and applicable state, local, and non-U.S. income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Liquidating Trust, other than the Disputed Claims Reserve, as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code.  In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust.  Moreover, for all U.S. federal and applicable state, local, and non-U.S. income tax purposes, it is intended that (1) the Liquidating Trust Beneficiaries be treated as if they had (i)  received a distribution from the Estate of an undivided interest in the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable Assets) and (ii) subsequently contributed such undivided interest to the Liquidating Trust in exchange for an interest in the Liquidating Trust and (2) the Liquidating Trust Beneficiaries be treated as the grantors of the Liquidating Trust and as deemed owners of the Liquidating Trust and Liquidating Trust Assets. The terms of the Liquidating Trust Agreement shall be consistent with the foregoing tax treatment, and no party hereto shall take any position inconsistent herewith.

For all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.  Following the funding of the Liquidating

Trust, Norcold LLC shall provide a "§ 1.468B-9 Statement" in respect of the Disputed Claims Reserve to the Liquidating Trustee in accordance with Treasury Regulation section 1.468B-9(g).

The Liquidating Trustee shall be responsible for filing all tax returns for the Liquidating Trust and the Debtor. The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets. The Liquidating Trustee may request an expedited determination of taxes of the Debtor under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtor for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete and deliver to the Liquidating Trustee the appropriate IRS Form W-8 or IRS Form W-9, as applicable. Notwithstanding any other provision of this Plan, (i) each Holder of an Allowed Claim that is to receive a distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such distribution and (ii) no distribution shall be made to or on behalf of such Holder under this Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with the Liquidating Trustee's tax withholding and reporting requirements. All Holders of Allowed General Unsecured Claims are deemed to have agreed to use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes.

G.      **Preservation of Causes of Action**

Except as otherwise provided in Article IX herein or in any contract, instrument, release, or agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Retained Causes of Action are preserved and shall vest in and be transferred to the Liquidating Trust on the Effective Date.

H.      **Corporate Action**

1.      Transfer of Assets and Assumption of Liabilities

On the Effective Date, (a) the Debtor shall, in accordance with this Plan, cause the Liquidating Trust Assets to be transferred to the Liquidating Trust; and (b) the Liquidating Trust shall assume all obligations of the Debtor under this Plan.

2.      Removal of Directors and Officers; Termination of Employees and Consultants

On the Effective Date, and upon the Debtor causing the Liquidating Trust Assets to be transferred to the Liquidating Trust, the Debtor shall have no further duties or responsibilities in

connection with implementation of this Plan, and the managers and officers of the Debtor shall be deemed to have resigned, and the engagement of consultants or other professionals of the Debtor shall be deemed to have terminated. From and after the Effective Date, the Liquidating Trustee shall be authorized to act on behalf of the Estate, *provided* that the Liquidating Trustee shall have no duties other than as expressly set forth in this Plan and the Liquidating Trust Agreement (as applicable).

For the avoidance of doubt, after the Effective Date, the Debtor will continue to exist with respect to (i) any applications for Professional Fee Claims or expense reimbursements for its Retained Professionals, including preparing, objecting to, defending, and attending any hearing with respect to the same; (ii) any motions or other actions seeking enforcement or implementation of the provisions of this Plan or Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect, in any material way, any cases, controversies, suits, or disputes arising in connection with the consummation, interpretation, implementation, or enforcement of this Plan or the Confirmation Order. Following the Effective Date, the Debtor's Retained Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (i) through (iii). Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court subject to the presentment of invoices to the Liquidating Trustee in customary form.

## I.   **Books and Records**

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtor and the Estate that were not sold and transferred pursuant to the Sale; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of the same is no longer necessary or beneficial.

Notwithstanding anything to the contrary in the Liquidating Trust Agreement, prior to disposing of the Debtor's books and records, the Liquidating Trustee shall file a notice of its intent to abandon or destroy such records with a ten (10) business day objection period and serve the notice on counsel to the Post-Effective Date Debtor (if applicable), the Purchaser, the U.S. Trustee, and all other parties requesting notice pursuant to Bankruptcy Rule 2002. If no objections are received by the expiration of the ten (10) business day objection period, the Liquidating Trustee shall be authorized to abandon and/ or destroy the books and records as set forth in the notice.

## J.   **Effectuating Documents and Further Transactions**

Upon entry of the Confirmation Order, the Debtor and the Liquidating Trustee (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The Debtor, the Liquidating Trustee, all Holders of Claims receiving distributions pursuant to this Plan, and all other parties in interest shall, from

time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### K.        Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, as applicable, transfers of property pursuant to this Plan shall not be subject to any stamp tax or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax and are authorized to accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax. Such exemption specifically applies, without limitation, to the transfer of the Liquidating Trust Assets to the Liquidating Trust.

### L.        Sale Orders

Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair, or supersede any Sale Order entered by the Bankruptcy Court, as applicable, which will remain in full force and effect and govern in the event of any inconsistency with this Plan.

### M.        Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the members, security holders, officers, managers, partners, or other owners of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtor is formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, partners, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

### N.        No Revesting of Liquidating Trust Assets

No Liquidating Trust Assets will revest in the Debtor on or after the date such assets vest or are transferred to the Liquidating Trust but will vest upon such transfer in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with this Plan and the Liquidating Trust Agreement.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES

### A.        General Treatment

On the Effective Date, except as otherwise provided herein (which exclusion includes the Insurance Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that are

(i) specifically designated on the Assumption Schedule filed with the Plan Supplement or (ii) the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

## B.    Rejection Damages Claims

If the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, the Liquidating Trustee, Liquidating Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent within twenty-one (21) days of the applicable counterparty to an Executory Contract or Unexpired Lease receiving notice of such rejection and the deadline to file any Claims, which notice may be included in the notice of the Effective Date of this Plan.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under this Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be subject to disallowance and, to the extent disallowed, shall be barred and unenforceable unless otherwise ordered by the Bankruptcy Court. Claims arising from the rejection of Executory Contracts or Unexpired Leases under this Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Article III.B.5 herein; *provided*, *however*, that the foregoing provision shall not limit the rights of any counterparty to an Executory Contract or Unexpired Lease who continued to provide goods or services to the Debtor following the Petition Date to seek to have its Claim(s) Allowed as Administrative Claim(s); *provided*, *further*, *however*, that any such Administrative Claims shall be filed no later than the Administrative Claims Bar Date.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor, or its respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those

record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtor or the Liquidating Trustee (as applicable); *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder and the Debtor or Liquidating Trustee (as applicable) shall have no obligation to determine alternative or current addresses.

### B.    Withholdings

The Liquidating Trustee shall (1) withhold, deduct, and pay over to the appropriate governmental authority any amount required to be withheld under tax laws with respect to any distribution pursuant to the Liquidating Trust Agreement; and (2) comply with any reporting requirements imposed by any federal, state, local, or foreign taxing authority. The Liquidating Trustee may withhold all or the appropriate portion of any distribution due to any Liquidating Trust Beneficiary until such time as such Liquidating Trust Beneficiary provides the necessary information (*i.e.*, IRS Forms) to comply with any withholding requirements of any governmental authority. Any tax withheld shall be treated as distributed and received by the applicable beneficiary for all purposes of the Liquidating Trust Agreement and Plan. If a Liquidating Trust Beneficiary fails to provide the information necessary to comply with any withholding requirements of any governmental authority on or before the day that is six (6) months after the Effective Date of this Plan, then such beneficiary's distribution may be treated as unclaimed property in accordance with the Liquidating Trust Agreement.

### C.    Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date, and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### D.    Disbursing Agent

Except as otherwise provided herein, all distributions under this Plan shall be made by the Disbursing Agent on or after the Effective Date. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. If the Disbursing Agent is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust.

### E.    Powers of Disbursing Agent

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### F.    IRS Forms

In connection with this Plan, to the extent applicable, the Debtor and the Liquidating Trustee (as applicable) shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Debtor and the Liquidating Trustee (as applicable) shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtor and the Liquidating Trustee reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

As a condition precedent to receiving any distribution under this Plan, each Holder of an Allowed Claim that is entitled to a distribution under this Plan must provide the Liquidating Trustee an executed IRS Form. The Liquidating Trustee shall make an initial request (by first-class mail) to Holders of Allowed Claims for the information required under this section as soon as reasonably practicable after the Effective Date and after such Claims are Allowed for distribution purposes and shall specify a period of sixty (60) days to respond. A second request shall be made after the expiration of the initial sixty (60) day period. Each such request shall specify that (a) the information is being requested for purposes of potential distributions under this Plan, (b) Holders must promptly provide written notice of any change in address to the Liquidating Trustee, otherwise the Liquidating Trustee is authorized to conclusively rely on the address for such Holder listed on the Debtor's books and records or in any Filed Proof of Claim or transfer of Claim, and (c) that the failure to respond will result in disallowance of the Claim in accordance with this section of this Plan, absent further other of the Bankruptcy Court to the contrary.

An Allowed Claim of a Holder that fails to provide an executed IRS Form or provide any other required information to effectuate a distribution within thirty (30) days of service (by first-class mail) of the second request for the same shall be deemed disallowed and expunged for purposes of distributions under this Plan. For the avoidance of doubt, the Liquidating Trust is not required to follow up with any Holder of an Allowed Claim if they fail to timely provide an executed IRS Form following service of the requests set forth above.

G. **Delivery of Distributions**

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (a) is returned as undeliverable for lack of a current address or otherwise; or (b) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within sixty (60) calendar days after the mailing of such distribution, the Liquidating Trustee shall be authorized to cancel such distribution check. For the avoidance of doubt, the Liquidating Trustee shall have no affirmative obligation to locate the correct current address of such Holder. Thirty (30) calendar days after the cancellation of a distribution check by the Liquidating Trustee, if the Holder has not provided the Liquidating Trustee with written notice of a change of address, (a) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Liquidating Trust for distribution in accordance with this Plan and the Liquidating Trust Agreement and (b) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under this Plan, absent further other of the Bankruptcy Court to the contrary.

H. **Manner of Payment**

Any distributions to be made by or on behalf of the Debtor or the Liquidating Trustee (as applicable) pursuant to this Plan shall be made by checks drawn on accounts maintained by the Debtor or the Liquidating Trustee (as applicable), or by wire transfer if circumstances justify, at the option of the Debtor or the Liquidating Trustee (as applicable).

I. **Foreign Currency Exchange Rate**

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

J. **Setoffs and Recoupments**

The Debtor or the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy and/or non-bankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtor or the Estate may have against the Holder of such Allowed Claim; *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Trustee (as applicable) of any such claim the Debtor or the Estate may have against the Holder of such Claim. The Liquidating Trustee shall be required to file such notice on the docket of the Chapter 11 Case.

### K.     <u>Minimum Distributions</u>

No payment of Cash in an amount of less than one-hundred U.S. dollars ($100.00) shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with this Plan and the Liquidating Trust Agreement.

If the Cash available for the final distribution is less than the cost to distribute such funds, the Liquidating Trustee may donate such funds to the unaffiliated charity of the Liquidating Trustee's choice.

### L.     <u>Allocation of Distributions Between Principal and Interest</u>

To the extent that any Allowed Claim entitled to a distribution under this Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

### M.     <u>Distributions Free and Clear</u>

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

### N.     <u>Claims Paid or Payable by Third Parties</u>

#### 1.     <u>Claims Paid by Third Parties</u>

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtor and/or the Liquidating Trustee (as applicable) on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed, and if the Claim was paid or satisfied in full other than through the Debtor and/or the Liquidating Trustee (as applicable), then such Claim shall be disallowed, and any recovery in excess of a single recovery in full shall be paid over to the Debtor or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed; *provided*, *however*, that a notice of satisfaction shall be Filed and served reflecting that a particular Claim has been satisfied. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtor and/or the Liquidating Trustee (as applicable) on account of such Claim, such Holder shall, within fourteen (14) Business Days of receipt thereof, repay or return the distribution to the Debtor or Liquidating Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.

#### 2.     <u>Claims Payable by Third Parties</u>

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's Insurance Policies until the Holder of such Allowed Claim

has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's payment of such Claim, the applicable portion of such Claim may be expunged (and the Claims Register adjusted accordingly) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, that the Debtor or the Liquidating Trustee, as applicable, shall serve notice of such satisfaction on the affected Holder of the applicable Claim.

3.     Applicability of Insurance Policies

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall take into account payments made in accordance with the provisions of any applicable Insurance Policy.  Except as set forth in Article IX herein, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity, including the Liquidating Trust, may hold against any other Person or Entity, including Insurance Companies under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurance Company of any defenses, including coverage defenses, held by such Insurance Company.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

### A.     Allowance of Claims

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses that the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

### B.     Claims Administration Responsibilities

Except as otherwise specifically provided in this Plan, after the Effective Date, the Liquidating Trustee shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.     Estimation of Claims

Before or after the Effective Date, the Debtor or the Liquidating Trustee (as applicable) may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under this Plan (including for purposes of distributions), and the Debtor or the Liquidating Trustee (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.    Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by the Purchaser in the Sale, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtor or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed following a notice filed on the docket (*i.e.*, a notice of satisfaction of claims) in the Bankruptcy Court of such adjustment or expungement.

### E.    Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended upon entry of an order by the Bankruptcy Court).

### F.    Disallowance of Late Claims

Except as provided in the Plan or otherwise agreed to by the Debtor or the Liquidating Trustee (as applicable), any Holder of a Claim Filed, via proof of claim, after the Bar Date shall not receive any distributions on account of such Claims to the extent such Claim has been disallowed and expunged upon objection on notice to the affected Claimant.

### G.    Disputed Claims

All Claims held by Persons or Entities against whom or which the Debtor or the Liquidating Trustee (as applicable) has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan. A Claim deemed Disputed pursuant to this Article VII.G shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtor or the Liquidating Trustee (as applicable) from such Holder have been paid.

### H.    No Distributions Pending Allowance

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under this Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.      **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan and the Liquidating Trust Agreement (as applicable).  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.  No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.      **Conditions Precedent**

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent provided, that, notwithstanding when a condition precedent to the Effective Date occurs, for purposes of this Plan, such condition precedent shall be deemed to have occurred simultaneously with the last condition precedent to the Effective Date to occur.

1.      The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to this Plan within the meaning of section 1125 of the Bankruptcy Code.

2.      The Bankruptcy Court shall have entered the Confirmation Order in full force and effect as a Final Order.

3.      There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the transactions contemplated by this Plan from being consummated.

4.      The Professional Fee Claim Reserve shall have been fully funded in an amount equal to the Professional Fee Claim Reserve Amount pursuant to the terms of this Plan.

5.      The Sale Documents shall have been approved and executed by the parties thereto.

6.      All actions, documents and agreements necessary to implement this Plan shall have been effected, executed, and/or tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7.      The Liquidating Trust Agreement shall have been approved and executed by the parties thereto.

8. The Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under this Plan and the Liquidating Trust Agreement, as applicable.

9. The Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any transaction contemplated hereby that are required by law, regulation, or order.

## B. <u>Waiver of Conditions</u>

Unless otherwise specifically provided for in this Plan, the conditions set forth in Article VIII.A may be waived in whole or in part by the Debtor, in consultation with the Committee, without notice to any parties in interest or the Bankruptcy Court and without a hearing.

## C. <u>Effect of Vacatur of the Confirmation Order</u>

If the Confirmation Order is vacated: (1) this Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in this Plan will (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor or (b) prejudice in any manner the rights, including any claims or defenses, of any party in interest.

## D. <u>Votes Solicited in Good Faith</u>

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code.

## ARTICLE IX.
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

## A. <u>Releases by the Debtor</u>

**As of the Effective Date, except as otherwise provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code and for good and valuable consideration, each Debtor Released Party is deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtor and the Estate from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtor or the Estate would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtor (or the Estate), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership, or operation thereof, or otherwise), any securities issued by the Debtor and the ownership thereof, the Debtor's in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sale, the DIP Order, the DIP Credit Agreement, and any related agreement, instruments, and other documents relating thereto, this Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or**

33832587.3

43

document created or entered into in connection with the Sale, this Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the Sale Process, the pursuit of consummation, the administration and implementation of this Plan, including the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, *however*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan; (2) any obligations under or in respect of the Sale Order, the Sale Documents; or (3) the Retained Causes of Action.

B.    Releases by Holders of Claims

As of the Effective Date,   except as otherwise provided in this Plan or the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under this Plan and the contributions of the Released Parties to facilitate and implement this Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release each Released Party from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtor or the Estate would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtor (or the Estate), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership or operation thereof, or otherwise), any securities issued by the Debtor and the ownership thereof, the Debtor's in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sale, or agreement or document created or entered into in connection with the Sale, the DIP Order, the DIP Credit Agreement, and any related agreement, instruments, and other documents relating thereto, this Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the Sale Process, the pursuit of consummation, the administration and implementation of this Plan, including the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, *however,* that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective

**Date obligations of any party or Entity under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan; or (2) any obligations under or in respect of the (i) Sale Order and (ii) the Sale Documents.**

### C.    Exculpation

**Except as otherwise specifically provided in this Plan, to the maximum extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim related to any act or omission arising from the Petition Date through and including the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Debtor's in-court restructuring efforts, the Disclosure Statement, documents and pleadings related to the Sale, the DIP Orders and any related agreement, instruments, and other documents relating thereto, this Plan, the Plan Supplement, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, this Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the Sale Process, the pursuit of consummation, the administration and implementation of this Plan, including the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person, but in all respects such Entities shall be entitled to reasonably rely upon the written advice of counsel with respect to their duties and responsibilities pursuant to this Plan to the extent permitted under applicable law.**

### D.    Injunction

Except as otherwise provided in this Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of this Plan; (2) have been released pursuant to this Plan; (3) are subject to exculpation pursuant to this Plan; or (4) are otherwise satisfied, stayed, released, or terminated pursuant to the terms of this Plan, are permanently enjoined and precluded, from and after the Effective Date, from taking any actions to interfere with the implementation or consummation of this Plan and from commencing or continuing in any manner, any action or other proceeding on account of any such claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtor or any Person or Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any released, settled, compromised, or exculpated claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor Released Parties, the Released Parties, or Exculpated Parties (as applicable): (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests;

(b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests ((i) other than a setoff exercised prior to the Petition Date, (ii) unless such Entity has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law; or (iii) otherwise permissible under applicable law, asserted through a timely filed or deemed timely filed proof of claim); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released, exculpated, or settled pursuant to this Plan

## E.      Waiver of Statutory Limitations on Releases

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THIS PLAN (INCLUDING UNDER ARTICLE IX OF THIS PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN ARTICLE IX OF THIS PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

## F.      No Discharge

Because the Debtor is liquidating, the Debtor is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims.

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtor. Bankruptcy Code Section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and interests against the Debtor, and Bankruptcy Code Section 1141(a) provides that the Plan, as confirmed, will be binding to the extent provided therein. As such, no Entity holding a Claim against the Debtor may receive any

payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

### G.    Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtor's Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtor and its successors and assigns.

If any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Liquidating Trustee that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

### ARTICLE X.
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case, the Sales, the Confirmation Order, the Plan Supplement, and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction over, among other items, each of the following:

1.    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.    Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.    Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or this Plan.

4.    Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to

33832587.3

which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date.

6.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action.

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement.

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of this Plan or any Person's or Entity's obligations incurred in connection with this Plan.

10.     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of this Plan.

11.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13.     Determine any other matters that may arise in connection with or related to the APA or related Sale documents, the Disclosure Statement, this Plan, the Plan Supplement, and the Confirmation Order.

14.     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan.

15.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16.     Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

17.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Plan Supplement, or the Confirmation Order.

18.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtor or the Liquidating Trustee on behalf of the Liquidating Trust (as applicable) for an expedited determination of tax under section 505(b) of the Bankruptcy Code.

19.     To recover all assets of the Debtor and property of the Estate, wherever located.

20.     To consider requests for extensions of the term of the Liquidating Trust as provided herein.

21.     Enter an order or final decree concluding or closing the Chapter 11 Case.

22.     Enforce all orders previously entered by the Bankruptcy Court.

23.     Hear any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

### A.     Modification of this Plan

Subject to the limitations contained in this Plan, the Debtor reserves the right, in consultation with the Committee and in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify this Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor may, in consultation with the Committee and upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

### B.     Other Amendments

The Debtor may make appropriate non-material, technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### C.     Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

D.      **Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date**

Subject to the conditions to the Effective Date, the Debtor reserves the right to revoke or withdraw this Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation.  If the Debtor revokes or withdraws this Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in this Plan, the Plan Supplement, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtor or any other Person or Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person or Entity.

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.      **Debtor's Operation from Confirmation Hearing Through Effective Date**

During the period from the Confirmation Hearing through and until the Effective Date, the Debtor shall continue to operate as a debtor-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

B.      **Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Liquidating Trustee, all Holders of Claims against and Interests in the Debtor (regardless of whether any such Holder has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder is entitled to receive any distribution under this Plan), all Persons or Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in this Plan, each Person or Entity acquiring property under this Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

C.      **Additional Documents**

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtor, the Liquidating Trustee, all Holders of Claims or Interests receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

### D.    Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### E.    Reservation of Rights

This Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

### F.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Person or Entity.

### G.    Determination of Tax Liabilities

As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Estate and Liquidating Trust; *provided*, *however*, that the Liquidating Trustee shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtor (which Interests shall be cancelled pursuant to this Plan), but shall provide such Holders with any information reasonably required to prepare such forms.  The Debtor and the Liquidating Trustee (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Estate or the Liquidating Trust for any tax incurred during the administration of the Chapter 11 Case.

### H.    Dissolution of the Committee

On the Effective Date, the Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Case; *provided*, *however*, that, after the Effective Date, the Committee will continue to exist solely with respect to (1) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing, objecting to, defending, and attending any hearing with respect to the same; (2) any motions or other actions seeking enforcement or implementation of the provisions of this Plan or Confirmation Order; and (3) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way the treatment of the Holders of General Unsecured Claims, including, but not limited to, any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of this Plan, the Plan Supplement, or the Confirmation Order.  Following the Effective Date, the Committee's Retained Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters

33832587.3

identified in clauses (1) through (3).  Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

**I.**    **Notices**

In order for all notices, requests, and demands to or upon the Debtor or the Liquidating Trustee, as the case may be, to be effective, such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtor | Counsel to the Debtor |
|---|---|
| **Norcold LLC**<br>Attn:  Petrus Johannes Adriana Struijs (pstruijs@thetford.eu) | **Young Conaway Stargatt & Taylor, LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attention: Sean M. Beach, Esq.; Matthew B. Lunn, Esq.; Jared W. Kochenash, Esq.<br>Email: sbeach@ycst.com; mlunn@ycst.com; jkochenash@ycst.com |
| **Liquidating Trustee** | **Counsel to the Liquidating Trustee** |
| [●] | [●] |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Persons or Entities that Filed such renewed requests.

**J.**    **Term of Injunctions or Stays**

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-Confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the Debtor or the Estate arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtor or the Estate; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Case is closed pursuant to a Final Order of the Bankruptcy Court or (b) the date that the Chapter 11 Case is dismissed pursuant to a Final

Order of the Bankruptcy Court.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect indefinitely.

### K. Entire Agreement

On the Effective Date, this Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### L. Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan.  Copies of such exhibits and documents shall be made available upon written request to the Debtor's counsel or the Liquidating Trustee's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of this Plan that does not constitute the Plan Supplement, such part of this Plan that does not constitute the Plan Supplement shall control.  The documents in the Plan Supplement are considered an integral part of this Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

### M. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

### N. Non-Severability of Plan Provision Upon Confirmation

If any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to this

Plan and may not be deleted or modified without the consent of the Debtor and the Liquidating Trustee (as applicable); and (3) non-severable and mutually dependent.

O.     **Closing of the Chapter 11 Case**

Following the Effective Date, the Liquidating Trustee shall be permitted, upon notice and a hearing, to close the Chapter 11 Case. After the full administration of the Chapter 11 Case, the Liquidating Trustee shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

*[Signature Page Follows]*

Dated: January 13, 2026

Respectfully submitted,


*/s/ Richard Wu*
By: Richard Wu
Chief Restructuring Officer
Norcold LLC

**EXHIBIT B**

**Liquidation Analysis**

**Liquidation Analysis**

**Hypothetical Liquidation Analysis**

THIS LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE UNDER WHICH THE DEBTOR HAS SOUGHT TO PROVIDE A REASONABLE, GOOD-FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTOR WAS LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE. THIS LIQUIDATION ANALYSIS WAS PREPARED FOR THE PURPOSES OF (A) PROVIDING "ADEQUATE INFORMATION" UNDER SECTION 1125 OF THE BANKRUPTCY CODE TO ENABLE THE HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN AND (B) PROVIDING THE BANKRUPTCY COURT WITH APPROPRIATE SUPPORT FOR THE SATISFACTION OF THE "BEST INTERESTS TEST," PURSUANT TO SECTION 1129(A)(7) OF THE BANKRUPTCY CODE, AND SHOULD NOT BE USED OR RELIED UPON FOR ANY OTHER PURPOSE, INCLUDING THE PURCHASE OR SALE OF SECURITIES OF, OR CLAIMS OR INTERESTS IN, THE DEBTOR.

THE DETERMINATION OF THE COSTS OF, AND PROCEEDS FROM, THE HYPOTHETICAL LIQUIDATION OF THE DEBTOR'S ASSETS IN CHAPTER 7 IS AN UNCERTAIN PROCESS INVOLVING THE EXTENSIVE USE OF SIGNIFICANT ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE BY THE DEBTOR BASED UPON ITS BUSINESS JUDGMENT AND INPUT FROM CERTAIN OF ITS ADVISORS, ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTOR, ITS MANAGEMENT, ITS ADVISORS, AND A HYPOTHETICAL CHAPTER 7 TRUSTEE. NEITHER THE ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM BY THE DEBTOR. NEITHER THE DEBTOR NOR ANY CONSENTING STAKEHOLDER SHALL BE BOUND TO THE ANALYSIS HEREIN. THE DEBTOR RESERVES ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE ANALYSIS SET FORTH HEREIN.

## INTRODUCTION

The Debtor, with the assistance of its advisors, has prepared this hypothetical liquidation analysis (the "**Liquidation Analysis**") in connection with the Plan and Disclosure Statement.  This Liquidation Analysis indicates the estimated recoveries that may be obtained by Holders of Claims and Interests in a hypothetical liquidation pursuant to Chapter 7 of the Bankruptcy Code ("**Chapter 7**"), as an alternative to the Plan.[1]

Section 1129(a)(7)(A)(i)(ii) of the Bankruptcy Code, often called " best interests" test, requires that "with respect to each impaired class of claims or interests each holder of a claim or interest of such class (i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor was liquidated under Chapter 7 of this title on such date".

To demonstrate compliance with section 1129(a)(7), this Liquidation Analysis (a) estimates the cash proceeds (the "**Liquidation Proceeds**") that a Chapter 7 trustee (the "**Trustee**") would generate if the Chapter 11 Case was converted to a Chapter 7 case on or about January 28, 2026 (the "**Conversion Date**") and the assets of the Debtor's estate were liquidated, (b) determines the distribution (the "**Liquidation Distribution**") that each Holder of a Claim or Interest would receive from the Liquidation Proceeds under the priority scheme dictated in Chapter 7, and (c) compares each Holder's Liquidation Distribution to the distribution under the Plan that such Holder is projected to receive if the Plan were confirmed and consummated.  Accordingly, asset values discussed herein may be different than amounts referred to in the Plan or the Disclosure Statement.  This Liquidation Analysis is based upon certain assumptions discussed herein and in the Disclosure Statement.

The Liquidation Analysis shows the estimated recoveries that may be obtained by each Class of Claims or Interests assuming a hypothetical liquidation under Chapter 7 of the Bankruptcy Code.  As illustrated by the Liquidation Analysis, Holders of Claims in certain Unimpaired Classes that would receive a full recovery under the Plan would receive less than a full recovery in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code. Additionally, Holders of Claims or Interests in Impaired Classes would receive a recovery on account of their Claims or Interest in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code that is no better than the recovery they would receive on account of their Claims or Interests under the Plan.  Furthermore, no Holder of a Claim or Interest would receive or retain property on account of their Claim or Interest under the Plan of a value that is less than such Holder would receive on account of such Claim or Interest in a hypothetical Chapter 7 liquidation. Accordingly, as described in greater detail below, the Plan satisfies the "best interests" test set forth in section 1129(a)(7)(A)(i)–(ii) of the Bankruptcy Code.

THE DEBTOR AND ITS ADVISORS MAKE NO REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THE ESTIMATES AND ASSUMPTIONS CONTAINED IN THIS LIQUIDATION ANALYSIS, OR A CHAPTER 7 TRUSTEE'S ABILITY TO ACHIEVE FORECASTED RESULTS IN THE EVENT THAT THE CHAPTER 11 CASE IS CONVERTED TO CHAPTER 7.  ACTUAL RESULTS COULD VARY MATERIALLY FROM THE ESTIMATES AND PROJECTIONS SET FORTH IN THIS LIQUIDATION ANALYSIS.

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in (a) the *Amended Chapter 11 Plan of Liquidation for Norcold LLC* (as may be amended, modified, or supplemented from time to time and including all exhibits thereto, the "**Disclosure Statement**") or (b) the *Amended Disclosure Statement for the Amended Chapter 11 Plan of Liquidation for Norcold LLC*  (as may be amended, modified, or supplemented from time to time and including all exhibits thereto, the "**Plan**"), as applicable.

33813366.4

**OVERVIEW, GENERAL ASSUMPTIONS, AND STATEMENT OF LIMITATIONS**

This Liquidation Analysis has been prepared assuming that the Debtor would convert its case from a Chapter 11 case to a Chapter 7 case on the Conversion Date and would be liquidated thereafter pursuant to Chapter 7. The pro forma distributable values referenced herein are projected to be as of January 28, 2026, and those values are assumed to be representative of the Debtor's assets as of the Conversion Date. This Liquidation Analysis is summarized in the table contained herein.

This Liquidation Analysis represents an estimate of recovery values and percentages based upon a hypothetical liquidation of the Debtor. It is assumed that, on the Conversion Date, operations will cease and the only funding available will come from the Debtor's current cash on hand and asset liquidations. In addition, the Bankruptcy Court would appoint a Trustee who would sell or otherwise dispose of the Debtor's assets and complete the winddown of the Debtor's estate and distribute all proceeds over a twelve-month period. It is assumed that the Trustee will retain lawyers and other necessary financial advisors to assist in the liquidation and wind down. The Trustee would distribute the cash proceeds, net of liquidation-related costs, to holders of Claims and Interests in accordance with the priority scheme set forth in Chapter 7.

The determination of the hypothetical proceeds from the liquidation of assets is a highly uncertain process involving the extensive use of estimates, inputs, and assumptions which, although considered reasonable by the Debtor's managing officers ("**Management**") and the Debtor's advisors, are inherently subject to significant business, economic, competitive, and market uncertainties and contingencies beyond the control of the Debtor or its advisors.

Professional fees, Trustee fees, administrative expenses, priority Claims, and other such Claims that may arise in a liquidation scenario would have to be fully paid from the Liquidation Proceeds before any proceeds are made available to Holders of General Unsecured Claims. Under the priority scheme dictated in Chapter 7, no junior creditor would receive any distributions until all senior creditors are paid in full, and no equity holder would receive any distribution until all creditors are paid in full. The assumed distributions to creditors as reflected in this Liquidation Analysis are estimated in accordance with the priority scheme dictated in Chapter 7 of the Bankruptcy Code.

The following is a summary of some other major assumptions underlying this Liquidation Analysis:

1. **Dependence on Assumptions**. This Liquidation Analysis depends on a number of estimates and assumptions. Although developed and considered reasonable by Management and the Debtor's advisors, the assumptions are inherently subject to significant economic, business, regulatory and execution uncertainties and contingencies beyond the control of the Debtor. The Liquidation Analysis is also based on the Debtor's best judgment of how numerous decisions in the liquidation process would be resolved. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtor was, in fact, to undergo such a liquidation and actual results could vary materially and adversely from those contained herein.

2. **Dependence on a Forecast Balance Sheet**. This Liquidation Analysis primarily utilizes the book values of the Debtor's assets and liabilities as of October 31, 2025, as a starting point, or more recent values where available. Management believes that the October 31, 2025, book value of certain assets and liabilities are an acceptable proxy for certain book values as of the Conversion Date, whereas other balances are projected (*e.g.*, cash). The value of the Debtor's assets in a liquidation scenario is uncertain and could vary from the values set forth in this Liquidation Analysis.

3. **Avoidance Actions and Causes of Action**. This Liquidation Analysis assumes no recovery (or associated costs) pursuant to (i) any potential preference or fraudulent transfer avoidance actions and (ii) any other potential causes of action.

4. **Chapter 7 Trustee and Professional Fees**. The Debtor's hypothetical liquidation would be conducted in a Chapter 7 case with the Trustee managing the estate to maximize recovery in an expedited process. In accordance with section 704 of the Bankruptcy Code, a Trustee must, among other duties, collect and convert the property of the estate as expeditiously as is compatible with the best interests of parties in interest (generally at distressed

prices). A Trustee would also appoint professionals (*e.g.*, attorneys, investment bankers, financial advisors, accountants, tax advisors, consultants, appraisers, liquidators, and other experts) to assist in the liquidation as necessary. Costs for a Trustee and supporting Chapter 7 professionals are estimated in the Liquidation Costs section below. This Liquidation Analysis does not include estimates for tax consequences, either federal or state, that may be triggered upon the liquidation and sale of assets, which consequences could be material.

The Trustee's initial step would be to develop a liquidation and winddown plan for the assets, followed by distribution to creditors in accordance with the priority scheme dictated in Chapter 7. The major components of the liquidation are:

- cash proceeds from asset liquidation, to maximize value to the estate;

- costs related to the liquidation process, such as post-Conversion Date operating disbursements and estate winddown costs including professional fees, trustee fees, and other administrative fees; and

- distribution of net proceeds to claimants in accordance with the priority scheme dictated in Chapter 7.

The Plan reflects certain settlements and agreements that may not occur if the Chapter 11 Case is converted to a Chapter 7 liquidation, in which case it is possible that significant litigation and other professional fees would be incurred by the estate to determine the allowance and treatment for such Claims; the Liquidation Analysis assumes that these fees would be incurred, with recoveries reflecting the impact of the incurrence of such fees.

The Liquidation Analysis assumes a period of three to six months following the assumed Conversion Date (the "**Projection Period**") to distribute all of the Debtor's assets and resolve all outstanding claims.

5. **Claims Estimates**. In preparing this Liquidation Analysis, the Debtor has preliminarily estimated an amount of Allowed Claims for each Class (except for Litigation Claims) based upon a review of the Debtor's books and records as of October 31, 2025, adjusted for estimated balances as of the Conversion Date, where applicable. DIP Claims, Administrative Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, Prepetition Loan Guarantee Claims, General Unsecured Claims, Intercompany Claims, Section 510(b) Claims, and Interests were estimated based on the estimated book value of those Claims, where applicable, or estimated using a more reasonable method. No order or finding has been entered or made by the Bankruptcy Court estimating or otherwise fixing the amount of Claims at the estimated amounts of Allowed Claims set forth in this Liquidation Analysis. The estimate of the amounts of Allowed Claims set forth in this Liquidation Analysis should not be relied upon for any determination of the value of any distribution to be made on account of Allowed Claims under the Plan. The actual amount of Allowed Claims, both under the Plan and in a hypothetical Chapter 7 liquidation, may be materially different from the amount of Claims estimated in this Liquidation Analysis.

6. **Distribution of Proceeds**. Any available net proceeds are allocated to the applicable creditors and equity holders in strict priority in accordance with section 726 of the Bankruptcy Code.

- DIP Claims
- Administrative Claims
- Priority Tax Claims
- Other Priority Claims
- Other Secured Claims
- Prepetition Loan Guarantee Claims
- General Unsecured Claims and Litigation Claims
- Intercompany Claims
- Section 510(b) Claims
- Interests

**CONCLUSION**

Notwithstanding the difficulties in quantifying recoveries to Holders of Claims with precision, as summarized in the tables below (which should be reviewed with the foregoing discussion and the footnotes that follow the tables), the Debtor believes that, upon the anticipated Conversion Date, the Plan will provide all Holders of Claims and Interests with a recovery (if any) that is not less than what such Holder would otherwise receive if the Chapter 11 Case was converted to a case under Chapter 7. Therefore, the Debtor believes that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

I.    **BEST INTEREST TEST SUMMARY**

| Claim Classes (% Recovery) | Chapter 11 | | Chapter 7 Liquidation | | Best Interest Test |
|---|---|---|---|---|---|
| | Low | High | Low | High | |
| DIP Claims | 100.0% | 100.0% | 51.7% | 80.3% | PASS |
| Administrative Claims | 100.0% | 100.0% | 0.0% | 0.0% | PASS |
| Priority Tax Claims | 100.0% | 100.0% | 0.0% | 0.0% | PASS |
| Class 1: Other Priority Claims | N/A | N/A | N/A | N/A | PASS |
| Class 2: Other Secured Claims | N/A | N/A | N/A | N/A | PASS |
| Class 3: Prepetition Loan Guarantee Claims | < 1.0% | 100.0% | 0.0% | 0.0% | PASS |
| Class 4: General Unsecured Claims | < 2.0% | 100.0% | 0.0% | 0.0% | PASS |
| Class 5: Litigation Claims | < 2.0% | 100.0% | 0.0% | 0.0% | PASS |
| Class 6: Intercompany Claims | 0.0% | 100.0% | 0.0% | 0.0% | PASS |
| Class 7: Section 510(b) Claims | 0.0% | 0.0% | 0.0% | 0.0% | PASS |
| Class 8: Interests | 0.0% | 0.0% | 0.0% | 0.0% | PASS |

A.    **Chapter 11 Plan Assumptions**

**ALL ESTIMATES AND ASSUMPTIONS INCLUDED BELOW ARE PRELIMINARY IN NATURE AND SUBJECT TO MATERIAL CHANGE.**

**Low:** Under the low scenario of the Plan, it is assumed that no Class 4 liabilities are assumed pursuant to the Plan.. The analysis assumes that Class 4 liabilities will receive $250,000 of remaining distributable value from the Wind-Down Budget (the "**Wind-Down Budget**"), after costs related to the wind-down of the Estate and various fees for the Liquidating Trustee and professionals. No additional recovery will be available to Class 4 under this scenario.

**High:** Under the high scenario of the Plan, it is assumed that Class 4 and Class 6 liabilities are fully assumed, in connection with the sales transaction contemplated under the Plan.

**Litigation Claims:** As of the time of preparation and filing this Liquidation Analysis, Litigation Claims remain contingent, unliquidated, and disputed, and, as a result, the aggregate amount of Litigation Claims is unknown. Given the highly contingent, unliquidated, and disputed nature of product Litigation Claims, estimating such claims' aggregate amount and value would be costly and overly burdensome given the facts and circumstances of this chapter 11 case, and the Debtor therefore has assigned no value to Class 5 under the low scenario of the Plan. However, under the Plan, if a Litigation Claim is liquidated through a judicial process or settlement with the Liquidation Trust, under certain circumstances such Litigation Claim may possess the right to access funds available under the Insurance Policies and potentially recover the full liquidated amount of such Litigation Claim. Accordingly, the high scenario of the Plan provides for a 100.0% recovery.

## II.    LIQUIDATION ANALYSIS RESULTS

| Distributable Value Summary | Notes | Balance | Recovery ($) | | Recovery (%) | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| Cash & Equivalents | [A] | $ 183,719 | $ 183,719 | $ 183,719 | 100.0% | 100.0% |
| Trade Receivables | [B] | 2,328,597 | 1,651,192 | 1,784,698 | 70.9% | 76.6% |
| Other Receivables | [C] | 1,337,543 | - | 1,337,543 | 0.0% | 100.0% |
| Inventory | [D] | 6,594,797 | 3,126,867 | 4,829,709 | 47.4% | 73.2% |
| Prepaid Expenses & Other | [E] | - | - | - | 1.0% | 5.0% |
| Net PP&E | [F] | 203,887 | 50,972 | 152,916 | 25.0% | 75.0% |
| Intercompany Receivable | [G] | 2,821,076 | 2,115,807 | 2,821,076 | 75.0% | 100.0% |
| Goodwill | [H] | 10,043,604 | - | - | 0.0% | 0.0% |
| **Distributable Value from Assets** | | **$ 23,513,224** | **$ 7,128,557** | **$ 11,109,661** | | |
| (-) Chapter 7 Trustee Fees | [I] | | (168,121) | (266,396) | | |
| (-) Incremental Professional Fees | [I] | | (144,871) | (243,146) | | |
| **Total Distributable Value** | | | **$ 6,815,565** | **$ 10,600,119** | | |
| **DIP Claims** | | | | | | |
| DIP Financing | [J] | 13,193,530 | 6,815,565 | 10,600,119 | 51.7% | 80.3% |
| **Total DIP Claims** | | **13,193,530** | **6,815,565** | **10,600,119** | **51.7%** | **80.3%** |
| **Remaining Distributable Value** | | | **$ -** | **$ -** | | |
| **Administrative Claims** | [K] | | | | | |
| Professional Fees | | - | - | - | N/A | N/A |
| Est. 503(b)(9) Claims | | 252,777 | - | - | 0.0% | 0.0% |
| Postpetition Tariffs | | 403,000 | - | - | 0.0% | 0.0% |
| Postpetition Intercompany Claims | | - | - | - | N/A | N/A |
| **Total Administrative Claims** | | **655,777** | **-** | **-** | **0.0%** | **0.0%** |
| **Remaining Distributable Value** | | | **$ -** | **$ -** | | |
| **Priority Tax Claims** | [L] | | | | | |
| Taxes Payable (State) | | 2,301 | - | - | 0.0% | 0.0% |
| **Total Priority Tax Claims** | | **2,301** | **-** | **-** | **0.0%** | **0.0%** |
| **Remaining Distributable Value** | | | **$ -** | **$ -** | | |
| **Class 1: Other Priority Claims** | [M] | | | | | |
| Other Priority Claims | | - | - | - | N/A | N/A |
| **Total Other Priority Claims** | | **-** | **-** | **-** | **N/A** | **N/A** |
| **Remaining Distributable Value** | | | **$ -** | **$ -** | | |
| **Class 2: Other Secured Claims** | [N] | | | | | |
| Long Term Debt | | - | - | - | N/A | N/A |
| **Total Other Secured Debt** | | **-** | **-** | **-** | **N/A** | **N/A** |
| **Remaining Distributable Value** | | | **$ -** | **$ -** | | |
| **Class 3: Prepetition Loan Guarantee Claims** | [O] | | | | | |
| Prepetition Loans | | 344,326,318 | - | - | 0.0% | 0.0% |
| **Total Prepetition Loan Guarantee Claims** | | **344,326,318** | **-** | **-** | **0.0%** | **0.0%** |
| **Remaining Distributable Value** | | | **$ -** | **$ -** | | |
| **Class 4: General Unsecured Claims** | [P] | | | | | |
| Accounts Payable | | 1,657,193 | - | - | 0.0% | 0.0% |
| Customer Rebates & Marketing Allowances | | 188,358 | - | - | 0.0% | 0.0% |
| Other Accrued & Long Term Liabilities | | 127,423 | - | - | 0.0% | 0.0% |
| Warranty Liabilities | | 2,252,722 | - | - | 0.0% | 73.2% |
| **Total GUC Claims** | | **4,225,696** | **-** | **-** | **0.0%** | **0.0%** |
| **Class 5: Litigation Claims** | [Q] | | | | | |
| Outstanding Litigation Claims | | Undetermined | - | - | 0.0% | 0.0% |
| **Total Litigation Claims** | | **-** | **-** | **-** | **0.0%** | **0.0%** |
| **Remaining Distributable Value** | | | **$ -** | **$ -** | | |
| **Class 6: Intercompany Claims** | [R] | | | | | |
| Prepetition Intercompany Payables | | 3,912,013 | - | - | 0.0% | 0.0% |
| **Total Intercompany Claims** | | **3,912,013** | **-** | **-** | **0.0%** | **0.0%** |
| **Remaining Distributable Value** | | | **$ -** | **$ -** | | |

33813366.4

### III.    NOTES FOR PROCEEDS AVAILABLE FOR DISTRIBUTION

#### Note A – Cash & Equivalents

Includes estimated unrestricted cash and equivalents as of the Conversion Date.

#### Note B – Trade Receivables

All receivables arising from sales of goods or services in the ordinary course of business, whether billed or unbilled, together with all rights, remedies, and proceeds related thereto. The estimated value is based on forecasted accounts receivable as of the Conversion Date.

Recovery Ranges for Trade Receivables are determined by the receivable age, with lower recoveries applied to older receivables to reflect diminished collectability in a liquidation scenario. These estimates are further supported by industry borrowing base metrics, which provide a historical benchmark for recoverability under distressed conditions.

#### Note C – Other Receivables

Includes a receivable from the United States Internal Revenue Service ("**IRS**") related to Employee Retention Credits. The IRS receivable is assumed not to be received prior to the Conversion Date. Upon receipt, the receivable would convert to cash on the balance sheet. Other Non-Debtor entities affiliated with Norcold have received payment from the IRS for similar credits.

#### Note D – Inventory

Consists primarily of finished goods and other inventories held for sale, use, or consumption in the ordinary course of business, wherever located and whether in transit or otherwise. The inventory is categorized by large and small gas absorption units, large and small compressor units, and spare parts. Recovery estimates are based on the type and size of refrigeration unit or spare part, as marketability of each category varies by demand. These assumptions were developed in consultation with Management.

#### Note E – Prepaid Expenses & Other

All prepaid items, deposits, advances, deferred charges, and other similar assets, including rights to receive future goods, services, or benefits arising from payments made in advance of performance. The Prepaid Expense account includes pre-funding for defense costs associated with product liability claims and non-cash amortization for insurance expenses incurred at Norcold but paid by Yosemite I.

#### Note F – Net PP&E

PP&E consists primarily of specialized tooling, machinery, and equipment. This may reduce realizable value under a Liquidation Analysis absent an active secondary market.

#### Note G – Intercompany Receivable

Includes Intercompany Receivables of due from Yosemite I are the result of daily cash sweeps from certain of Norcold's bank accounts to Yosemite I.

#### Note H – Goodwill

Goodwill consists primarily of amounts from a historical acquisition. For purposes of this Liquidation Analysis, these amounts are not transferable and are assumed to have no recovery value in a Chapter 7.

IV.   **NOTES FOR LIQUIDATION COSTS**

**Note I – Liquidation Costs**

The Liquidation Costs include, but are not limited to, direct liquidation costs, including marketing and advertising, claims reconciliation, accounting and tax services, liquidator's commission, and other professionals, Chapter 7 Trustee fees and other Chapter 7 professional fees.

Chapter 7 Trustee fees are dictated by the fee guidelines of section 326 of the Bankruptcy Code which allows reasonable compensation for the Trustee's services, not to exceed 25% on the first $5,000 or less, 10% on any amount in excess of $5,000 but not in excess of $50,000, 5% on any amount in excess of $50,000 but not in excess of $1 million, and reasonable compensation not to exceed 3% of such moneys in excess of $1 million, upon all moneys disbursed or turned over in the Chapter 7 case by the Trustee to parties in interest. For purposes of this Liquidation Analysis, Chapter 7 Trustee fees are estimated to be between 2.4% - 2.5% of gross distributable value from assets, not including cash on hand and intercompany receivables, or approximately $0.2 - $0.3 million.

In addition to Chapter 7 Trustee fees, assets are monetized, Incremental Professional Fees will occur due to lawyers and asset managers, responsible for finalizing the liquidation of assets. Incremental Professional Fees are estimated to be approximately 3% of gross distributable value from assets, not including cash on hand or intercompany receivables, or approximately $0.1 - $0.3 million.

V.   **NOTES FOR SECURED CLAIMS**

**Note J – DIP Claims**

Claims of the DIP Lender in connection with postpetition financing provided under the DIP Order and DIP Term Sheet. DIP Claims include principal, PIK interest, Unused Line Fees, and other obligations owed to the DIP Lender.

VI.   **NOTES FOR ADMINISTRATIVE & PRIORITY CLAIMS**

**Note K – Administrative Claims**

Administrative Claims are claims entitled to priority under section 503(b), 507(a)(2), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including (a) actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate, operating the Debtor's business, and the ongoing liquidation of the Debtor, (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court), and (c) all fees and charges assessed against the Estate under Chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

Professional Fee Claims are defined in the Plan as Claims by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Conversion Date.  Additionally, Professional Fee Claims include estimates of the aggregate unpaid Professional Fee Claims through the Conversion Date, including fee estimates from ordinary course professionals.

Professional Fees incurred during the case are assumed to be funded into escrow on a weekly basis. As a result of this funding mechanism, no outstanding Professional Fee liabilities are reflected under the Plan or the Liquidation Analysis.

Furthermore, Administrative Claims include Postpetition Tariffs consisting of administrative expense obligations arising from duties, taxes, or other governmental charges imposed on imports, including customs duties assessed by the United States. To the extent incurred postpetition, Tariffs constitute administrative expenses under section 503(b) of the Bankruptcy Code and are entitled to priority payment in accordance with section 507(a)(2) of the Bankruptcy Code.

**Note L – Priority Tax Claims**

Priority Tax Claims include Claim(s) of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

## VII.    NOTES FOR OTHER CLAIMS

### Note M – Other Priority Claims (Class 1)

Any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code. Includes any Postpetition Intercompany Claims that arise between and among the Debtor and its Non-Debtor affiliates or related entities, including receivables, payables, advances, or other intercompany balances generated in the ordinary course of business on or after the Petition Date through the Conversion Date.

### Note N – Other Secured Claims (Class 2)

No Other Secured Claims assumed in this Liquidation Analysis.

### Note O – Prepetition Loan Guarantee Claims (Class 3)

Class 3 consists of the Secured Claims of the Prepetition Agent (on behalf of the Prepetition Lenders) against the Debtor arising under and related to the Debtor's guarantee of the Prepetition Financing Agreement.

### Note P – General Unsecured Claims (Class 4)

General Unsecured Claims means any Unsecured Claim against the Debtor (other than an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, a Litigation Claim, a Section 510(b) Claim, or an Intercompany Claim), including claims resulting from the rejection of unexpired leases or executory contracts. This class includes unsecured obligations of the Debtor arising from the provision of goods or services by vendors, suppliers, and other trade counterparties in the ordinary course of business prior to the Petition Date.

This Class also includes Accounts Payable, Customer Rebates and Marketing Allowances, Deferred Revenue, Other Accrued and Long-Term Liabilities, and Warranty Liabilities.

The Warranty Liabilities are related to the servicing of the Debtor's products or services prior to the Petition Date. Such claims may include, without limitation, obligations to repair, replace, or refund defective products, damages for breach of warranty, and indemnification or reimbursement obligations owed to customers, distributors, or other counterparties relating to warranty coverage.

### Note Q – Litigation Claims (Class 5)

Litigation Claims include any Unsecured Claim, demand, suit, Cause of Action, proceeding, or any other right or asserted right to payment, whether existing heretofore, now, or hereafter, whether known or unknown, based upon or in any manner arising from, related to, or in any way involving bodily injury, wrongful death, and/or property damage occurring prior to the Petition Date, including, without limitation any alleged property damage, product recall, personal injury, wrongful death, emotional distress, or other similar claim based on harms (whether physical, emotional or otherwise and whether or not diagnosable or manifested prior to the Petition Date).

### Note R – Intercompany Claims (Class 6)

Intercompany Claims consist of claims against the Debtor that are held by a direct or indirect parent or direct or indirect subsidiaries of such direct or indirect parent. The payable balances to Non-Debtor affiliates arise from purchases of inventory and general corporate expense allocations including labor, insurance, and other overhead.

### Note S – Other Claims & Interests (Classes 7-8)

Other Claims and Interests refers to Classes 7 and 8,  including Section 510(b) Claims and Interests, respectively.

Section 510(b) Claims against the Debtor arise from (i) the rescission of a purchase or sale of a security of the Debtor or an affiliate of the Debtor; (ii) for damages arising from the purchase or sale of such security; or (iii) for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such Claim;

provided, that, if such security is an Interest, such Claim shall not be a Section 510(b) Claim and shall instead receive the treatment applicable to such Interest.

Interests include equity securities, as defined in section 101(16) of the Bankruptcy Code, of the Debtor, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtor.