## EXHIBIT A

**Third Amended Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NORCOLD LLC,[1] | Case No. 25-11933 (TMH) |
| Debtor. | |

**THIRD AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR NORCOLD LLC**

**Dated: February 19, 2026**

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Jared W. Kochenash (No. 6557)
Daniel Trager (No. 7465)
Roger L. Sharp (No. 7454)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Emails:  sbeach@ycst.com
         mlunn@ycst.com
         jkochenash@ycst.com
         dtrager@ycst.com
         rsharp@ycst.com

*Counsel to the Debtor and Debtor in Possession*

---

[1]    The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Norcold LLC (6081).  For purposes of this chapter 11 case, the Debtor's service address is 7101 Jackson Road, Ann Arbor, MI 48103.

34030755.3

54222723.3

**TABLE OF CONTENTS**

ARTICLE I.   DEFINED TERMS AND RULES OF INTERPRETATION ................................ 6

    A.    Definitions ................................................................................................ 6

    B.    Rules of Interpretation .............................................................................. 18

    C.    Computation of Time ................................................................................ 18

    D.    Controlling Document .............................................................................. 18

ARTICLE II.     ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES ................................................................................................... 19

    A.    Administrative Claims .............................................................................. 19

    B.    Professional Fee Claims and Administrative Claims of OCPs .................................. 20

        1.    Final Fee Applications .............................................................................. 20

        2.    Administrative Claims of OCPs ............................................................... 20

        3.    Post-Effective Date Fees and Expenses .................................................... 20

        4.    Professional Fee Reserve Amount ............................................................ 20

        5.    Professional Fee Reserve .......................................................................... 21

    C.    Priority Tax Claims ................................................................................... 21

    D.    DIP Claims ............................................................................................... 21

    E.    U.S. Trustee Statutory Fees ..................................................................... 21

ARTICLE III.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ... 22

    A.    Classification of Claims and Interests ...................................................... 22

    B.    Treatment of Claims and Interests ............................................................ 22

        1.    Class 1 – Other Priority Claims ............................................................... 22

        2.    Class 2 – Other Secured Claims ............................................................... 23

        3.    Class 3 – Prepetition Loan Guarantee Claims .......................................... 23

        4.    Class 4 – General Unsecured Claims ....................................................... 24

        5.    Class 5 – Litigation Claims ...................................................................... 24

        6.    Class 6 – Intercompany Claims ............................................................... 24

        7.    Class 7 – Section 510(b) Claims .............................................................. 24

        8.    Class 8 – Interests .................................................................................... 25

    C.    Special Provisions Governing Unimpaired Claims ................................... 25

    D.    Elimination of Vacant Classes ................................................................. 25

    E.    Controversy Concerning Impairment ....................................................... 25

    F.    Subordination of Claims ........................................................................... 25

    G.    Reservation of Rights Regarding Claims .................................................. 26

34030755.3

i

54222723.3

**TABLE OF CONTENTS**
(continued)

| | | | |
|---|---|---|---|
| H. | Postpetition Interest on Claims | | 26 |
| I. | Insurance | | 26 |
| ARTICLE IV. | MEANS FOR IMPLEMENTATION OF THIS PLAN | | 26 |
| A. | Sources of Consideration for Plan Distributions | | 26 |
| B. | Wind-Down | | 26 |
| C. | Vesting of Assets | | 27 |
| D. | Liquidating Trust | | 27 |
| | 1. | Establishment of the Liquidating Trust | 27 |
| | 2. | Transfer of the Liquidating Trust Assets | 27 |
| | 3. | Insurance Rights Transfer | 28 |
| | 4. | Liquidating Trust Agreement | 29 |
| | 5. | Purpose of the Liquidating Trust | 29 |
| | 6. | Liquidating Trustee | 29 |
| | 7. | Termination of the Liquidating Trust | 32 |
| E. | Insurance Provisions | | 32 |
| F. | U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust | | 33 |
| G. | Preservation of Causes of Action | | 34 |
| H. | Corporate Action | | 34 |
| | 1. | Transfer of Assets and Assumption of Liabilities | 34 |
| | 2. | Removal of Directors and Officers; Termination of Employees and Consultants | 34 |
| I. | Books and Records | | 34 |
| J. | Effectuating Documents and Further Transactions | | 35 |
| K. | Section 1146 Exemption from Certain Taxes and Fees | | 35 |
| L. | Sale Orders | | 35 |
| M. | Authority to Act | | 36 |
| N. | No Revesting of Liquidating Trust Assets | | 36 |
| ARTICLE V. | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES | | 36 |
| A. | General Treatment | | 36 |
| B. | Rejection Damages Claims | | 36 |

**TABLE OF CONTENTS**
(continued)

ARTICLE VI.    PROVISIONS GOVERNING DISTRIBUTIONS..............................................37

    A.    Distribution Record Date...........................................................................................37

    B.    Withholdings .............................................................................................................37

    C.    Date of Distributions ................................................................................................38

    D.    Disbursing Agent ......................................................................................................38

    E.    Powers of Disbursing Agent.....................................................................................38

    F.    IRS Forms..................................................................................................................38

    G.    Delivery of Distributions..........................................................................................39

    H.    Manner of Payment ...................................................................................................39

    I.    Foreign Currency Exchange Rate..............................................................................40

    J.    Setoffs and Recoupments .........................................................................................40

    K.    Minimum Distributions .............................................................................................40

    L.    Allocation of Distributions Between Principal and Interest......................................40

    M.    Distributions Free and Clear.....................................................................................40

    N.    Claims Paid or Payable by Third Parties...................................................................41

        1.    Claims Paid by Third Parties .............................................................................41

        2.    Claims Payable by Third Parties........................................................................41

        3.    Applicability of Insurance Policies....................................................................41

ARTICLE VII.    PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED
CLAIMS ...................................................................................................................................42

    A.    Allowance of Claims .................................................................................................42

    B.    Claims Administration Responsibilities....................................................................42

    C.    Estimation of Claims ................................................................................................42

    D.    Adjustment to Claims Without Objection .................................................................43

    E.    Time to File Objections to Claims ............................................................................43

    F.    Disallowance of Late Claims ....................................................................................43

    G.    Disputed Claims ........................................................................................................43

    H.    No Distributions Pending Allowance........................................................................44

    I.    Distributions After Allowance ..................................................................................44

34030755.3

iii

54222723.3

**TABLE OF CONTENTS**
(continued)

ARTICLE VIII.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........................ 44

    A.    Conditions Precedent............................................................................. 44

    B.    Waiver of Conditions ........................................................................... 45

    C.    Effect of Vacatur of the Confirmation Order ....................................... 45

    D.    Votes Solicited in Good Faith .............................................................. 45

ARTICLE IX.    RELEASE, INJUNCTION, AND RELATED PROVISIONS........................... 45

    A.    Releases by the Debtor ......................................................................... 45

    B.    Releases by Holders of Claims............................................................. 46

    C.    Exculpation .......................................................................................... 47

    D.    Injunction............................................................................................. 47

    E.    Waiver of Statutory Limitations on Releases........................................ 48

    F.    No Discharge ....................................................................................... 49

    G.    Release of Liens ................................................................................... 49

ARTICLE X.    RETENTION OF JURISDICTION .................................................................. 50

ARTICLE XI.    MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN ... 52

    A.    Modification of this Plan....................................................................... 52

    B.    Other Amendments................................................................................ 52

    C.    Effect of Confirmation on Modifications.............................................. 52

    D.    Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date .. 52

ARTICLE XII.    MISCELLANEOUS PROVISIONS .................................................................. 53

    A.    Debtor's Operation from Confirmation Hearing Through Effective Date................... 53

    B.    Immediate Binding Effect ..................................................................... 53

    C.    Additional Documents........................................................................... 53

    D.    Substantial Consummation.................................................................... 53

    E.    Reservation of Rights ........................................................................... 53

    F.    Successors and Assigns ........................................................................ 54

    G.    Determination of Tax Liabilities ........................................................... 54

    H.    Dissolution of the Committee................................................................ 54

    I.    Notices................................................................................................. 54

    J.    Term of Injunctions or Stays................................................................. 55

**TABLE OF CONTENTS**
(continued)

|   |   |   |
|---|---|---|
| K. | Entire Agreement | 55 |
| L. | Plan Supplement Exhibits | 56 |
| M. | Governing Law | 56 |
| N. | Non-Severability of Plan Provision Upon Confirmation | 56 |
| O. | Closing of the Chapter 11 Case | 56 |

34030755.3

v

54222723.3

**INTRODUCTION**

Norcold LLC, as debtor and debtor in possession (the "<u>Debtor</u>") in the above-captioned chapter 11 case, proposes this chapter 11 plan (this "<u>Plan</u>") under section 1121 of the Bankruptcy Code.  The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.  Supplemental agreements and documents referenced in this Plan and the Disclosure Statement (as defined below) are available for review on both the Bankruptcy Court's docket and on the Debtor's case information website: https://cases.stretto.com/Norcold.

Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, historical financial information, and liquidation analysis, as well as a summary and analysis of this Plan and certain related matters, including distributions to be made under this Plan.

**ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN**.

**ARTICLE I.
DEFINED TERMS AND RULES OF INTERPRETATION**

**A.       <u>Definitions</u>**

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.       "<u>Administrative Claim(s)</u>" means a Claim entitled to priority under section 503(b), 507(a)(2), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including (a) actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate, operating the Debtor's business, and the ongoing liquidation of the Debtor, (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court), and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

2.       "<u>Administrative Claims Bar Date</u>" means the deadline for Filing all requests for allowance and payment of Administrative Claims (other than requests for payment of Professional Fee Claims by Retained Professionals or OCPs or requests for payment of claims pursuant to section 503(b)(9) of the Bankruptcy Code), which shall be the date that is thirty (30) days after the Effective Date.

3.       "<u>Allowed</u>" means, with respect to any Claim, except as otherwise provided in this Plan:  (a) a Claim that is evidenced by a Filed Proof of Claim (or for which Claim under this Plan, the Bankruptcy Code, or pursuant to a Final Order, a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been Filed in an amount different than the amount listed on such Schedules; (c) a Claim Allowed pursuant to the

34030755.3

54222723.3

Bankruptcy Code, this Plan, or a Final Order of the Bankruptcy Court; or (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtor or the Liquidating Trustee, as applicable; *provided* that with respect to a Claim described in clause (a) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection or challenge to the allowance, validity, extent or priority thereof has been Filed by the Debtor, the Liquidating Trustee, or any other party in interest within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection was so Filed and the Claim shall have been Allowed by a Final Order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtor to the Debtor or the Liquidating Trust (as applicable).  "Allow" and "Allowing" shall have correlative meanings.

4.     "APA" means that certain agreement, dated as of January 12, 2026, between the Debtor and the Purchaser reflecting the sale of substantially all the Debtor's assets to the Purchaser (as may be amended, modified, or supplemented from time to time), which is attached to the Sale Order as Exhibit 1.

5.     "Assumption Schedule" means the schedule of Executory Contracts (if any) to be assumed or assumed and assigned by the Debtor pursuant to the Plan and sections 365 and 1123 of the Bankruptcy Code, which will be included in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the Confirmation Order.

6.     "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination, or other similar Causes of Action that may be brought by or on behalf of the Debtor or the Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Causes of Action or remedies arising under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common law, including fraudulent transfer laws.

7.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

8.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

9.     "Bankruptcy Rule(s)" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code.

10.     "Bar Date" means, as applicable, the Administrative Claims Bar Date, and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed, including the general bar date and bar date for Governmental Units, each as determined by order of the Bankruptcy Court.  Notwithstanding the foregoing, Professional Fee Claims shall be Filed in accordance with Article II.B herein and shall not otherwise be subject to the Bar Date.

34030755.3

54222723.3

11.    "Bid Procedures" means the bid procedures with respect to the Sale Process approved by the Bankruptcy Court through the Bid Procedures Order.

12.    "Bid Procedures Order" means, as applicable, the order of the Bankruptcy Court establishing the Bid Procedures.

13.    "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

14.    "Cash" means cash and cash equivalents in legal tender of the United States of America.

15.    "Causes of Action" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws).  For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, (e) any Avoidance Action or state law fraudulent transfer claim, (f) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence, and (g) any state or foreign fraudulent transfer or similar claim.

16.    "Chapter 11 Case" means the chapter 11 case Filed by the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

17.    "Claim(s)" means any "claim", as defined in section 101(5) of the Bankruptcy Code, against the Debtor or the Estate.

18.    "Claims Objection Deadline" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other deadline as may be fixed by an order of the Bankruptcy Court for objecting to such Claims; *provided*, *however*, that the Liquidating Trustee may seek extensions of such date from the Bankruptcy Court at any time.

19.    "Claims Register" means the official register of Claims against the Debtor maintained by the Notice and Claims Agent.

20.     "Class" means a category of Claims or Interests as established by and set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

21.     "Class 4 Liquidating Trust Interests" means the beneficial interests in the Liquidating Trust, which interests shall be uncertificated, non-transferable (except as expressly provided otherwise in the Liquidating Trust Agreement), and distributed to holders of Allowed General Unsecured Claims, in accordance with Section III.4 of this Plan.

22.     "Class 5 Liquidating Trust Interests" means the beneficial interests in the Liquidating Trust, which interests shall be uncertificated, non-transferable (except as expressly provided otherwise in the Liquidating Trust Agreement), and distributed to holders of Allowed Litigation Claims, in accordance with Section III.5 of this Plan.

23.     "Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee on November 22, 2025 [*see* Docket No. 72], as it may be reconstituted from time to time.

24.     "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court.

25.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

26.     "Confirmation Hearing" means the hearing(s) conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider Confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

27.     "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

28.     "D&O Policies" means, collectively, the Debtor's director and officer liability insurance policies along with any other applicable directors' and officers' liability insurance policies, including primary insurance, excess insurance, or tail insurance policies.

29.     "DCA" means Dave Carter & Associates, Inc.

30.     "Debtor" means Norcold LLC as debtor and debtor-in-possession.

31.     "DIP Claim(s)" means a Claim of the DIP Lender in connection with the DIP Order and DIP Term Sheet.

32.     "DIP Term Sheet" means that certain *Senior Secured Superpriority Debtor-In-Possession Revolving Loan Facility Term Sheet* between Norcold LLC, as borrower, and the DIP Lender, as lender.

33.     "DIP Lender" means DCA, in its capacity as lender under the DIP Term Sheet.

34.     "DIP Order" means, an interim or final order of the Bankruptcy Court (as may be amended, modified, or supplemented from time to time) authorizing the Debtor to obtain postpetition financing from the DIP Lender and approving the terms of the DIP Term Sheet, as applicable.

35.     "Disbursing Agent" means the Debtor, the Liquidating Trustee, or the Entity(ies) selected by the Liquidating Trustee, which Entity(ies) may include the Notice and Claims Agent, as applicable, to make or to facilitate distributions pursuant to this Plan.

36.     "Disclosure Statement" means the *Amended Disclosure Statement for the Amended Chapter 11 Plan of Liquidation for Norcold LLC* [Docket No. 191] (as such may be amended, supplemented, or modified from time to time), including all exhibits and schedules thereto and references therein that relate to this Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

37.     "Disputed" means, with respect to any Claim, except as otherwise provided herein, a Claim that is not Allowed and not disallowed under this Plan, the Bankruptcy Code, or a Final Order.  To the extent that a Claim is held by a Holder that is or may be liable to the Debtor or the Estate on account of a Retained Cause of Action, such Claim shall be a Disputed Claim unless and until such Retained Cause of Action has been settled or withdrawn or has been determined by a Final Order.

38.     "Disputed Claims Reserve" means any Cash that is reserved for Disputed Claims established and maintained by the Liquidating Trustee.

39.     "Distribution Record Date" means the date established for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

40.     "Effective Date" means the date that is the first Business Day after the entry of the Confirmation Order on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent to the occurrence of the Effective Date, as set forth in Article VIII.A herein, have been satisfied or waived in accordance with this Plan; and (c) the Debtor declares this Plan effective by filing a notice on the docket of the Chapter 11 Case.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

41.     "Entity" means any "entity," as defined in section 101(15) of the Bankruptcy Code.

42.     "Estate" means the bankruptcy estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

43.     "Excess Cash" has the meaning set forth in the APA.

44.     "Exculpated Party" or "Exculpated Parties" means, collectively, and in each case in its capacity as such: (i) the Debtor; (ii) the managers of the Debtor; (iii) any other person serving as a fiduciary of the Debtor's Estate, to the extent claims against such person are based on conduct performed in their fiduciary capacity, who served at any time between the Petition

34030755.3

10

54222723.3

Date and the Effective Date; (iv) the Committee and Committee members (in their capacity as such) (v) all financial advisors, attorneys, accountants, investment bankers, and other professionals retained by the Debtor and the Committee in the Chapter 11 Case.

45.     "Executory Contract(s)" means a contract to which the Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

46.     "File" or "Filed" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case, or in the case of a Proof of Claim, the Notice and Claims Agent.

47.     "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

48.     "General Unsecured Claim(s)" means any Unsecured Claim against the Debtor (other than (a) an Administrative Claim, (b) a Priority Tax Claim, (c) an Other Priority Claim, (d) a Litigation Claim, (e) a Section 510(b) Claim, or (f) an Intercompany Claim), including claims resulting from the rejection of unexpired leases or executory contracts.

49.     "Governmental Unit(s)" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

50.     "Holder(s)" means a Person or Entity, as applicable, holding a Claim against, or an Interest in, the Debtor, as the context requires.

51.     "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

52.     "Independent Manager" means Michael Buenzow.

53.     "Insurance Company" means any Entity that issued, or that have any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any Insurance Policy, and any third party administrator, parent, subsidiary, affiliate, successor,

34030755.3

11

54222723.3

predecessor, or assign of any of the foregoing, solely in their capacity as such with respect to an Insurance Policy.

54.    "Insurance Policies" means all insurance policies that have been issued at any time to provide coverage to the Debtor and all agreements, documents, or instruments relating thereto.

55.    "Insurance Rights" means any and all rights, titles, privileges, interests, claims, demands, or entitlements of the Debtor or any Litigation Claimants to any proceeds, payments, benefits, Causes of Action, choses in action, defense or indemnity arising under, or attributable to, any and all Insurance Policies available to the Debtor as of the Effective Date now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including: (i) any Insurance Company's failure to provide coverage or otherwise pay under an Insurance Policy; (ii) the refusal of any Insurance Company to compromise and settle any claim or provide defense to any claim; (iii) the interpretation or enforcement of the terms of any Insurance Policy with respect to any Claim; (iv) any conduct by any Insurance Company constituting "bad faith" conduct or that could otherwise give rise to extra-contractual damages, or other wrongful conduct under applicable law; or (v) any right to receive proceeds with respect to any Insurance Policy or a coverage action.

56.    "Insurance Rights Transfer" means the transfer, assignment, and vesting of the Insurance Rights described in Section IV.E.3 of this Plan.

57.    "Intercompany Claim" shall mean a Claim against the Debtor that is held by a direct or indirect parent, subsidiary, or affiliate of the Debtor.

58.    "Interest(s)" means "equity security" (as defined in section 101(16) of the Bankruptcy Code) of the Debtor, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtor, whether fully vested or vesting in the future, including without limitation, equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be granted to current or former employees, directors, officers, or contractors of the Debtor, to acquire any such interest in the Debtor that existed immediately before the Petition Date.

59.    "IRS Form" means IRS Form W-9, any acceptable substitute, or any other tax information form that the Disbursing Agent may require from a Holder of a Claim for a distribution under this Plan.

60.    "Law" means any federal, state, local, or foreign law (including provincial and common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

61.    "Lien" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

34030755.3

12

54222723.3

62.     "Liquidating Trust" means the liquidating trust established on the Effective Date pursuant to Article IV.D herein and the Liquidating Trust Agreement.

63.     "Liquidating Trustee" means the Entity designated and retained as the trustee of the Liquidating Trust in accordance with Article IV.D herein, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Liquidating Trust, and taking such other actions as may be authorized under the Liquidating Trust Agreement, and any successor subsequently appointed pursuant to the Liquidating Trust Agreement.  The identity and compensation of the Liquidating Trustee shall be disclosed in the Plan Supplement.

64.     "Liquidating Trust Agreement" means the agreement included with the Plan Supplement and executed as of the Effective Date that establishes and governs the Liquidating Trust.

65.     "Liquidating Trust Assets" means all property of the Debtor's Estate not transferred pursuant to the Sale or distributed to holders of Allowed Claims on the Effective Date, including, without limitation, the Sale Proceeds, the Retained Causes of Action, and the Liquidating Trust Unsecured Pool; *provided*, *however*, that the following shall not constitute Liquidating Trust Assets: (i) the Debtor's Cash reserved for payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Other Priority Claims; (ii) the Professional Fee Claim Reserve; and (iii) Excess Cash.

66.     "Liquidating Trust Beneficiaries" means all Holders of Class 4 Liquidating Trust Interests and Class 5 Liquidating Trust Interests.

67.     "Liquidating Trust Unsecured Pool" means $1,000,000 to be used for the following purposes: (i) reconciling Claims and providing distributions to the Liquidating Trust Beneficiaries as provided in the Plan and Plan Supplement, (ii) the expenses of the Liquidating Trust, and (iii) the Statutory Fees; *provided* that the Statutory Fees accrued or payable through and including the Effective Date shall be paid from the Wind-Down Amount.

68.     "Litigation Claim" means any Unsecured Claim, demand, suit, Cause of Action (excluding setoff rights), proceeding, or any other right or asserted right to payment, whether existing heretofore, now, or hereafter, whether known or unknown, based upon or in any manner arising from, related to, or in any way involving bodily injury, wrongful death, and/or property damage occurring prior to the Petition Date, including, without limitation any alleged property damage, product recall, personal injury, wrongful death, emotional distress, or other similar claim based on harms (whether physical, emotional or otherwise and whether or not diagnosable or manifested prior to the Petition Date).

69.     "Litigation Claimant" means a party asserting or alleging a Litigation Claim.

70.     "Notice and Claims Agent" means Stretto, Inc. in its capacity as noticing, claims, and solicitation agent for the Debtor.

71.     "OCP(s)" means any ordinary course professional whose retention and compensation has been authorized by the Bankruptcy Court in accordance with the OCP Order.

34030755.3

13

54222723.3

72.    "OCP Order" means the order of the Bankruptcy Court authorizing the Debtor to retain and compensate the OCPs for services rendered during the Chapter 11 Case.

73.    "Other Priority Claim(s)" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

74.    "Other Secured Claim(s)" means any Claim that is:  (a) secured by a lien on property in which the Debtor has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) Allowed pursuant to this Plan, or separate order of the Bankruptcy Court, as a secured Claim.

75.    "Person" means a "person," as defined in section 101(41) of the Bankruptcy Code.

76.    "Petition Date" means November 3, 2025, which is the date on which the Debtor Filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Case.

77.    "Plan" means this plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

78.    "Plan Supplement" means a supplemental appendix to this Plan containing, among other things, forms of applicable documents, schedules, and exhibits to this Plan to be filed with the Bankruptcy Court, including, but not limited to, the following:  (i) the Liquidating Trust Agreement; (ii) the Schedule of Retained Causes of Action; and (iii) the Assumption Schedule.

79.    "Post-Effective Date Debtor" means the Debtor and its successor after the Effective Date.

80.    "Prepetition Agent" means Cerberus Business Finance Agency, LLC, as Administrative Agent and Collateral Agent under the Prepetition Financing Agreement.

81.    "Prepetition Financing Agreement" means that certain Financing Agreement, dated as of December 13, 2021 by and among Yosemite Intermediate I, Inc. as Borrower, Trailblazer IV, Inc. as Parent, the Guarantors party thereto, the lenders from time to time party thereto and Cerberus Business Finance Agency, LLC, as Administrative Agent and Collateral Agent (as amended by that certain Consent and Amendment to Financing Agreement, dated as of December 27, 2021 and that certain Second Amendment to Financing Agreement and First Amendment to Pledge and Security Agreement dated as of June 29, 2023 and that certain Third Amendment to Financing Agreement, dated as of September 29, 2025 and that certain Consent to

34030755.3

14

54222723.3

Financing Agreement dated as of November 2, 2025 and as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time).

82.  "Prepetition Lenders" mean the lenders under the Prepetition Financing Agreement.

83.  "Prepetition Loan Guarantee Claim" means the secured Claims of the Prepetition Agent (on behalf of the Prepetition Lenders) against the Debtor arising under and related to the Debtor's guarantee under the Prepetition Financing Agreement.

84.  "Priority Tax Claim(s)" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

85.  "Professional Fee Claim(s)" means a Claim by a professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

86.  "Professional Fee Claims Estimate" means an estimate of the aggregate unpaid Professional Fee Claims through the Effective Date, including fee estimates from ordinary course professionals.

87.  "Professional Fee Claim Reserve" means the reserve established and funded by the Debtor prior to the Effective Date in an amount equal to the Professional Fee Reserve Amount to be held in trust to satisfy the unpaid Professional Fee Claims.

88.  "Professional Fee Reserve Amount" has the meaning set forth in Article II.B.4 herein.

89.  "Proof of Claim" means a proof of Claim Filed against a Debtor in the Chapter 11 Case.

90.  "Purchaser" means DCA.

91.  "Purchase Price" means the price paid by the Purchaser for the Debtor's assets in connection with the Sale.

92.  "Related Party" means, with respect to any Person or Entity, such Person's or Entity's respective current and former (i) officers; (ii) directors; (iii) employees; (iv) partners; (v) affiliates and subsidiaries; (vi) professionals; (vii) advisors and advisory board members; (viii) agents, (ix) shareholders; (x) principals; (xi) members; (xii) managers; (xiii) managed accounts and funds; (xiv) fund advisors; (xv) attorneys, (xvi) accountants, (xvii) consultants, (xviii) investment bankers, (xix) financial advisors, and (xx) the predecessors, successors, assigns, estates, nominees or heirs of such Person or Entity (in each case, solely in their respective capacities as such).

93.  "Released Party" means, except to the extent such party is included in the Schedule of Retained Causes of Action, each of the following solely in their capacity as such: (i)

34030755.3

15

54222723.3

the Debtor and the Estate; (ii) the DIP Lender; (iii) the Purchaser; (iv) the Committee and its members (solely in their capacity as Committee members); (v) the Prepetition Agent; (vi) the Prepetition Lenders; and (vii) to the extent not included in the foregoing, each of the preceding entities' respective Related Parties, including the Independent Manager and any professional retained by the Debtor, DIP Lender, the Prepetition Agent, the Prepetition Lenders or the Committee. Notwithstanding the foregoing, if any party identified in clauses (i) through (vii) elects to opt-out of the releases in the Plan, such party shall not be considered a Released Party.

94.     "Releasing Parties" means, collectively, and in each case, in their respective capacities as such: (i) the Released Parties; (ii) all Holders of Claims or Interests who vote to accept the Plan and who do not opt out of the releases in the Plan; (iii) all Holders of Claims or Interests who vote to reject the Plan and who do not opt out of the releases in the Plan; and (iv) with respect to each Entity in clause (i) through (iii), each such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

95.     "Retained Causes of Action" means the Causes of Action identified on the Schedule of Retained Causes of Action and not released pursuant to Article IX.A. herein, if any, which shall be filed with the Plan Supplement.

96.     "Retained Professional(s)" means a Person or Entity (other than an OCP) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 328, 363, and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

97.     "Sale" means the transaction between the Debtor and the Purchaser, pursuant to which the Debtor sold substantially all of its assets to the Purchaser pursuant to sections 363 and 365 of the Bankruptcy Code, as set forth in the Sale Order and the APA.

98.     "Sale Documents" means any agreements, documents, or instruments related to the Sale.

99.     "Sale Order" means that certain *Order (I) Approving the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving the Debtor's Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 245].

100.    "Sale Proceeds" means all cash and non-cash proceeds of the Sale received by the Debtor.

101.    "Sale Process" means the marketing and sale process conducted by the Debtor concurrently with the solicitation of votes on this Plan pursuant to the Bid Procedures and approved by the Bankruptcy Court through the Bid Procedures Order, for the purpose of soliciting, receiving, and considering offers in connection with the Sale.

102.    "Schedules" means, collectively, the schedules of assets and liabilities and statements of financial affairs required to be Filed by the Debtor pursuant to section 521 of the

34030755.3

16

54222723.3

Bankruptcy Code, the Bankruptcy Rules, and the official bankruptcy forms, as the same may be amended, modified, or supplemented from time to time.

103. "Schedule of Retained Causes of Action" means a schedule of the Causes of Action retained by the Post-Effective Date Debtor and transferred to the Liquidating Trust, which shall be included in the Plan Supplement.

104. "Section 510(b) Claims" means a Claim against the Debtor (i) arising from the rescission of a purchase or sale of a security of the Debtor or an affiliate of the Debtor; (ii) for damages arising from the purchase or sale of such security; or (iii) for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such Claim; provided, that, if such security is an Interest, such Claim shall not be a Section 510(b) Claim and shall instead receive the treatment applicable to such Interest.

105. "Statutory Fees" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

106. "Subordinated Claim(s)" means any Claim that is subject to subordination in accordance with sections 510(b)-(c) of the Bankruptcy Code or otherwise, including, but not limited to, and solely to the extent determined to be Claims and not Interests, Claims for damages arising from alleged non-payment to such Holder of amounts based on such Holder's status as an Interest Holder, Claims arising from the issuance of founders shares, and Claims arising from, or related to, options.

107. "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

108. "Unexpired Lease(s)" means a lease to which the Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

109. "Unimpaired" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

110. "Unsecured Claim" means, with respect to any Claim, a Claim that is not a Secured Claim, an Administrative Claim, a Priority Tax Claim, or an Other Priority Claim.

111. "Voting Deadline" means the date and time by which all ballots to accept or reject this Plan must be received to be counted.

112. "Wind-Down" means the process to (i) wind-down, dissolve, and liquidate the Debtor's Estate, including, among other things, pursuing the Retained Causes of Action, and (ii) distributing any resulting or remaining assets in accordance with this Plan.

113. "Wind-Down Amount" shall mean Cash in an amount of $300,000, which amount is separate and in addition to the Liquidating Trust Unsecured Pool, to be used solely to satisfy unpaid Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Secured

34030755.3

17

54222723.3

Claims, and to pay the Statutory Fees accrued or payable through and including the Effective Date.

### B.     Rules of Interpretation

For the purposes of this Plan, and except as otherwise provided herein, the following rules of interpretation shall apply:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan or Confirmation Order; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in this Plan to "Articles" and "Exhibits" are references to the articles and exhibits of or to this Plan unless otherwise noted; (6) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (7) the words "includes" or "including" are not limiting; (8) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (9) unless otherwise specified, references in this Plan to "Docket No." refer to entries on the Chapter 11 Case's docket; (10) subject to the provisions of any contract, certificate of incorporation, by-laws, or similar constituent document, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules, and, to the extent applicable, the laws of the State of Delaware; (11) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (12) all references in this Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### C.     Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.  Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

### D.     Controlling Document

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and the Plan Supplement, or any documents included therein, including the Liquidating Trust Agreement, the terms of the Plan shall control.  In the event of an inconsistency between this Plan or the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

34030755.3

18

54222723.3

# ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III herein.

### A.        Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor or the Liquidating Trustee (as applicable), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims, OCPs, and Holders of Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which (i) an order allowing such Administrative Claim becomes a Final Order or (ii) the Debtor or the Liquidating Trustee (as applicable) and the holder of the Administrative Claim consensually agree to the Allowed amount of such claim, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims, all applications seeking allowance and payment of Administrative Claims must be Filed and served on the Debtor or the Liquidating Trustee (as applicable) and their counsel no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date.  The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Any objection to such applications must be Filed and served on the requesting party on or before the Claims Objection Deadline.  After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**Except as otherwise provided in Articles II.B or II.E herein, Holders of Administrative Claims that do not File and serve an application for payment of administrative expense requesting the allowance of an Administrative Claim no later than the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, or their assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date, without further order of the Court, unless otherwise ordered by the Court.**

34030755.3

19

54222723.3

**B.**      **Professional Fee Claims and Administrative Claims of OCPs**

1.      Final Fee Applications

All requests for payment of Professional Fee Claims by Retained Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than thirty (30) days after the Effective Date.  Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  Unless otherwise agreed to by the Debtor and the Retained Professional, the Debtor shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Claim Reserve within five (5) Business Days of the entry of such Final Order.

2.      Administrative Claims of OCPs

All requests for payment of Administrative Claims of OCPs shall be made pursuant to the OCP Order.  To the extent any Administrative Claims of OCPs have not been paid pursuant to the OCP Order on or before the Effective Date, the amount of Administrative Claims owing to such OCPs shall be paid in Cash to such OCPs by the Debtor or the Liquidating Trustee (as applicable) as soon as reasonably practicable after such Administrative Claims are authorized in accordance with the OCP Order.

3.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in this Plan, from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the Chapter 11 Case that are incurred after the Effective Date.  Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 of the Bankruptcy Code or that OCPs comply with the OCP Order in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee may employ and pay any retained professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

4.      Professional Fee Reserve Amount

Unless otherwise agreed to prior to the Effective Date by the Debtor and the Retained Professional, to receive payment for (a) unpaid fees and expenses incurred through the Effective Date and (b) unpaid fees and expenses anticipated to be incurred post-Effective Date in connection with the preparation of the Retained Professionals' Professional Fee Claims, the Retained Professionals shall estimate such amounts and shall deliver such estimates to the Debtor and its counsel no later than three (3) Business Days prior to the Effective Date; *provided* that such estimates shall not be binding with respect to the fees and expenses of such Retained Professional.  If a Retained Professional does not provide an estimate of its unpaid fees and

34030755.3

20

54222723.3

expenses, the Debtor may estimate such fees and expenses of the Retained Professional. The total amount so estimated hereunder as of the Effective Date shall comprise the "Professional Fee Reserve Amount." The Retained Professionals may submit invoices for their post-Effective Date services to the Liquidating Trust in the ordinary course of business.

5.      Professional Fee Reserve

On or before the Effective Date, the Debtor shall fund the Professional Fee Claim Reserve with Cash equal to the Professional Fee Reserve Amount, which shall be held in the trust account of counsel to the Debtor. The Professional Fee Reserve and amounts funded therein are, and shall continue to be, maintained in trust solely for the benefit of each Retained Professional separately on a per-Retained Professional basis until all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more Final Orders. Such funds shall not be considered property of the Debtor, the Estate, or the Liquidating Trust (as applicable), and the Purchaser shall have a reversionary interest in any Cash remaining in the Professional Fee Reserve after payment in full of all Allowed Professional Fee Claims without any further notice, action, or order of the Bankruptcy Court; *provided, that* no such Cash shall be transferred to the Purchaser until all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Secured Claims have been paid in full or reserved for in the Wind-Down Amount.

**C.      Priority Tax Claims**

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the Debtor or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

**D.      DIP Claims**

In full and final satisfaction, compromise, settlement, and release of and in exchange for all Allowed DIP Claims, the Allowed DIP Claims shall be credited and applied to the Purchase Price.

**E.      U.S. Trustee Statutory Fees**

All Statutory Fees that are due and owing as of the Effective Date shall be paid by the Debtor, the Post-Effective Date Debtor, or the Liquidating Trust, as applicable, in full in Cash on the Effective Date. The Debtor shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Post-Effective Date Debtor and the Liquidating Trustee, as applicable, shall file with the Bankruptcy Court the final monthly operating reports and separate UST Form 11- PCR reports when they become due. After the Effective Date, the Post-Effective Date Debtor and the Liquidating Trustee shall be jointly and severally liable to pay any and all applicable Statutory Fees in full in Cash when due and payable. The U.S. Trustee shall not be treated as providing any release under this Plan. Statutory Fees are Allowed. The U.S. Trustee shall not be required to file any proof of

34030755.3

21

54222723.3

claim or any request for administrative expense for Statutory Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in this Plan to the contrary.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.       **Classification of Claims and Interests**

Except for the Claims addressed in Article II herein, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtor pursuant to this Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition Loan Guarantee Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Litigation Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.       **Treatment of Claims and Interests**

1.       <u>Class 1 – Other Priority Claims</u>

(a)       *Classification*:  Class 1 consists of all Other Priority Claims against the Debtor.

34030755.3

54222723.3

(b)     *Treatment*:   As soon as reasonably practicable following the Effective Date, each holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

(c)     *Voting*:   Class 1 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject this Plan.

2.     Class 2 – Other Secured Claims

(a)     *Classification*:   Class 2 consists of all Other Secured Claims against the Debtor.

(b)     *Treatment*:   As soon as reasonably practicable following the Effective Date, each holder of an Allowed Other Secured Claim shall receive, at the Debtor's option:  (a) payment in full in Cash, (b) the collateral securing its Allowed Other Secured Claim, (c) reinstatement of its Allowed Other Secured Claim, or (d) such other treatment rendering its Allowed Other Secured Claim as Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)     *Voting*:   Class 2 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject this Plan.

3.     Class 3 – Prepetition Loan Guarantee Claims

(a)     *Classification*:   Class 3 consists of the Prepetition Loan Guarantee Claims.

(b)     *Treatment*:   As soon as reasonably practicable following the Effective Date, each holder of an Allowed Prepetition Loan Guarantee Claim shall (i) have such Claim assumed by the Purchaser under the Sale, (ii) receive payment on account of such Claim from the Loan Parties (as defined in the Prepetition Financing Agreement) other than the Debtor in accordance with the terms of the Prepetition Financing Agreement, or (iii) receive any distributable Sale Proceeds available after satisfaction of the DIP Claims in connection with the Sale (with any deficiency Claim being treated as a General Unsecured Claim) if such Claim is not assumed by the Purchaser.[2]

(c)     *Voting*:   Class 3 is Impaired, and Holders of Prepetition Loan Guarantee Claims are entitled to vote to accept or reject this Plan.

---

[2]   For the avoidance of doubt, nothing contained in this Plan or the Confirmation Order shall in any respect amend, modify, restrict or impair the rights of the Prepetition Senior Secured Parties against any Loan Party (other than the Debtor) under the Prepetition Documents.

34030755.3

23

54222723.3

4.      Class 4 – General Unsecured Claims

(a)      *Classification*:  Class 4 consists of all General Unsecured Claims.

(b)      *Treatment*:   On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtor or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, each Holder thereof will receive its pro rata share of the Class 4 Liquidating Trust Interests, which Class 4 Liquidating Trust Interests shall entitle the holders thereof to receive their pro rata share of the distributable proceeds from the Liquidating Trust Assets.

(c)      *Voting*:  Class 4 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject this Plan.

5.      Class 5 – Litigation Claims

(a)       *Classification*:  Class 5 consists of all Litigation Claims against the Debtor.

(b)      *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Litigation Claim and the Debtor or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, each Holder thereof will receive its pro rata share of the Class 5 Liquidating Trust Interests, which Class 5 Liquidating Trust Interests shall entitle the holders thereof to receive their pro rata share of the distributable proceeds from the Liquidating Trust Assets and any Insurance Rights under any Insurance Policies.

(c)      *Voting*:  Class 5 is Impaired, and Holders of Litigation Claims are entitled to vote to accept or reject this Plan.

6.      Class 6 – Intercompany Claims

(a)      *Classification*:  Class 6 consists of all Intercompany Claims.

(b)      *Treatment*: On the Effective Date, except to the extent that an Intercompany Claim is assumed under the Plan, all Intercompany Claims shall be extinguished, subject to any setoff, recoupment, or defense of the Holder of such Intercompany Claim.

(c)      *Voting*: Class 6 is Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject this Plan.

7.      Class 7 – Section 510(b) Claims

(a)      *Classification*:  Class 7 consists of all Section 510(b) Claims.

34030755.3

24

54222723.3

(b)      *Treatment*:  On the Effective Date, all Section 510(b) Claims, if any, shall be cancelled, released, and extinguished without distribution, and will be of no further force or effect.

(c)      *Voting*: Class 7 is Impaired, and Holders of Section 510(b) Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Section 510(b) Claims are not entitled to vote to accept or reject this Plan.

8.    Class 8 – Interests

(a)      *Classification*:  Class 8 consists of all Interests.

(b)      *Treatment*:  On the Effective Date, all Interests shall be cancelled, released, and extinguished without distribution, and will be of no further force or effect.

(c)      *Voting*: Class 8 is Impaired, and Holders of Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 8 Interests are not entitled to vote to accept or reject this Plan.

C.      **Special Provisions Governing Unimpaired Claims**

Except as otherwise provided in this Plan, nothing under this Plan shall affect the Debtor's or the Liquidating Trustee's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

D.      **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      **Controversy Concerning Impairment**

If a controversy arises as to whether any Claim or any Class of Claims or Interests is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Hearing.

F.      **Subordination of Claims**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under this Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor or the Liquidating

34030755.3

25

54222723.3

Trustee (as applicable) reserves the right to seek the Bankruptcy Court's permission to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### G.      Reservation of Rights Regarding Claims

Except as otherwise provided in this Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtor's or the Liquidating Trustee's respective rights and defenses, whether legal or equitable, with respect to any Claim, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### H.      Postpetition Interest on Claims

Except as required by applicable bankruptcy law or as otherwise expressly provided in this Plan or the Confirmation Order, postpetition interest, penalties, or other fees will not accrue or be payable on account of any Claim.

### I.      Insurance

Notwithstanding anything to the contrary in this Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of this Plan governing the Class applicable to such Claim.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

### A.      Sources of Consideration for Plan Distributions

Subject in all respects to the provisions of this Plan concerning the Professional Fee Reserve, and except as otherwise provided for herein, the Debtor or the Liquidating Trustee (as applicable) shall fund distributions under this Plan from the Sale Proceeds, Cash on hand as of the Effective Date, and all other Liquidating Trust Assets.  For the avoidance of doubt, distributions to Liquidating Trust Beneficiaries shall be funded solely from the Liquidating Trust Assets.

### B.      Wind-Down and Dissolution

Following the occurrence of the Effective Date and subject to the terms of this Plan, the Liquidating Trustee shall wind-down the affairs and operations of the Debtor and the Estate, as applicable, including, but not limited to, (i) expeditiously and efficiently liquidating the Liquidating Trust Assets; (ii) procuring any appropriate insurance to facilitate the Wind-Down, including appropriate D&O Liability Insurance Policies; and (iii) expeditiously and efficiently pursuing, compromising, settling, and/or liquidating the Retained Causes of Actions.

After the Effective Date, the Liquidating Trustee may file a certification with the Bankruptcy Court that it has substantially administered the Plan for the Debtor, and such Debtor

34030755.3

54222723.3

shall be deemed dissolved without further order of the Bankruptcy Court or action by the Liquidating Trustee, including the filing of any documents with the secretary of state for the state in which the Debtor is formed or any other jurisdiction.  The Liquidating Trustee is authorized to take all necessary or appropriate actions to dissolve the Post-Effective Date Debtor in and withdraw the Post-Effective Date Debtor from the applicable states.

## C.    Vesting of Assets

On the Effective Date, subject to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in and be transferred to the Liquidating Trust free and clear of all Claims, Liens and interests of creditors, equity security holders and of members of the Debtor, except as otherwise expressly provided in this Plan.

## D.    Liquidating Trust

### 1.    Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, which will be Filed with the Bankruptcy Court as part of the Plan Supplement.  On the Effective Date, all property of the Estate not transferred pursuant to the Sale or distributed to holders of Allowed Claims on the Effective Date, including, without limitation, the Retained Causes of Action, shall vest in the Liquidating Trust.  Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtor or any employees, members, managers, officers, agents, advisors, or representatives of the Debtor.  The Liquidating Trust shall be funded with (i) the Liquidating Trust Unsecured Pool and (ii) the Wind-Down Amount, which Wind-Down Amount shall include a reasonable reserve solely for the payment of unpaid Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Secured Claims and the payment of Statutory Fees accrued or payable through and including the Effective Date; *provided that* to the extent the aggregate amount of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Secured Claims exceeds the Wind-Down Amount, the Purchaser shall be obligated to fund such amounts up to the amount of Excess Cash received by the Purchaser prior to the Effective Date; *provided further that* to the extent the Liquidating Trustee seeks to compromise, resolve, settle, or otherwise Allow an asserted Administrative Claim, Priority Tax Claim, or Secured Claim, the Liquidating Trustee shall provide the Purchaser with no fewer than five (5) business days' advance notice, and the Purchaser shall have a right to object to such Claim during that notice period or such later time as agreed upon by the Purchaser and the Liquidating Trustee and, to the extent Purchaser files such objection, the Liquidating Trustee shall not compromise, resolve, settle, or otherwise Allow and pay such Claim prior to adjudication of the objection by the Court. Any remaining Excess Cash shall be returned to the Purchaser on the Excess Cash Payment Date (as defined in the APA) or as soon as practicable thereafter.

### 2.    Transfer of the Liquidating Trust Assets

Subject to section 1141 of the Bankruptcy Code, all property vesting in and transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, and interests of creditors,

34030755.3

27

54222723.3

equity security holders and of general partners in the Debtor, except as may be otherwise provided for in this Plan.  Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtor will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust.  For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

3.      Insurance Rights Transfer

In furtherance of the purpose of the Liquidating Trust:

a.  On the Effective Date, the Debtor shall irrevocably transfer, grant, and assign to the Liquidating Trust, and the Liquidating Trust shall receive and accept the Debtor's Insurance Rights.

b.  The Insurance Rights Transfer is made free and clear of all Claims, Liens, encumbrances, or Causes of Action of any nature whatsoever, except available limits of liability for coverage of certain types of Claims under one or more Insurance Policies that may have been reduced by certain prepetition payments made by an Insurance Company to, or on behalf of, the Debtor.

c.  The Insurance Rights Transfer is made to the maximum extent possible under applicable law.

d.  The Insurance Rights Transfer is absolute and does not require any further action by the Debtor, the Post-Effective Date Debtor, the Liquidating Trust, the Bankruptcy Court, or any other Entity.

e.  The Insurance Rights Transfer shall be governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the Insurance Policies.

34030755.3

28

54222723.3

4.      Liquidating Trust Agreement

On the Effective Date, the Debtor shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement. Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtor or the Liquidating Trustee (as applicable) will be automatically ratified if made in accordance with the terms of the Liquidating Trust Agreement. The Liquidating Trust Agreement shall contain provisions permitting the amendment or modification of the Liquidating Trust Agreement necessary to implement the provisions of this Plan.

5.      Purpose of the Liquidating Trust

The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) conducting, administering, and facilitating the Wind-Down; (c) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests; (d) making distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement; (e) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries; and (f) commencing and pursuing the Retained Causes of Action and managing and administering any proceeds thereof, with no objective to continue or engage in the conduct of a trade or business in accordance with Treasury Regulation section 301.7701-4(d). The Liquidating Trust is intended to qualify as a "liquidating trust" under Treasury Regulation section 301.7701-4(d) and a "grantor trust" under section 671 of the Internal Revenue Code (the "Tax Code"), to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

6.      Liquidating Trustee

(a)      *Appointment of the Liquidating Trustee*

Upon the occurrence of the Effective Date, the Liquidating Trustee shall be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be mutually agreed upon by the Debtor, the Committee, and DCA. The Debtor and DCA shall not unreasonably withhold consent to the Committee's preferred candidate.

Once appointed, the Liquidating Trustee shall be the sole officer and manager of the Post-Effective Date Debtor and the Liquidating Trust, as applicable. The Liquidating Trustee, subject to the terms and conditions of this Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, including the Wind-Down. The Liquidating Trustee shall have and perform all of the

duties, responsibilities, rights, and obligations set forth in this Plan and the Liquidating Trust Agreement, as applicable.

(b)    *Liquidating Trustee as Representative of the Estate*

From and after the occurrence of the Effective Date, the Liquidating Trustee shall act as the exclusive representative of the Estate for all purposes and shall succeed to the rights, powers, and authority that would have been applicable to the Debtor's officers and managers prior to the Effective Date, including the authority to facilitate the Wind-Down, analyze, preserve, and pursue Insurance Policy proceeds (including the authority to settle with any Insurance Company with respect to an Insurance Policy), and pursue the Retained Causes of Action.  The Debtor's existing managers as of the Effective Date shall be deemed to have resigned on the Effective Date, and all powers of managers shall vest in the Liquidating Trustee on the Effective Date. Upon the occurrence of the Effective Date, the Liquidating Trustee shall have the power to dissolve the Post-Effective Date Debtor, and the Post-Effective Date Debtor shall be dissolved upon the conclusion of the Wind-Down.  Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of this Plan, the Confirmation Order, and the Liquidating Trust Agreement.

(c)    *Responsibilities and Authority of the Liquidating Trustee*

The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following rights and responsibilities, which shall be the exclusive rights and responsibilities of the Liquidating Trustee:  (i) preserving and liquidating the Liquidating Trust Assets, including the Retained Causes of Action; (ii) facilitating the Wind-Down; (iii) administering and paying taxes, including, among other things, (1) filing tax returns and (2) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (iv) retaining and paying, without the need for retention or fee applications, professionals in connection with the Liquidating Trustee's performance of its duties under this Plan and the Liquidating Trust Agreement; (v) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (vi) preparing and filing all monthly operating reports due after the Effective Date and all post-confirmation reports as required by the U.S. Trustee; (vii) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; (viii) making distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and Liquidating Trust Agreement; and (ix) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Plan Supplement, the Liquidating Trust Agreement, or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.

(d)    *Powers of the Liquidating Trustee*

The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of this Plan, including without limitation any set forth herein, *provided*, *however*, that enumeration of the

34030755.3

54222723.3

following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of this Plan, the Liquidating Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidating Trustee, including, without limitation, to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by this Plan.

The powers of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following:  (i) the power to invest funds of the Liquidating Trust, and withdraw, make distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with this Plan and the Liquidating Trust Agreement; (ii) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; (iii) the exclusive power and authority to investigate, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Causes of Action, or to decline to take any of the foregoing actions, in accordance with the best interests of the Liquidating Trust Beneficiaries, *provided*, in each case, the Liquidating Trustee need not obtain the consent or approval of any third party or provide further notice to, or obtain approval of the Bankruptcy Court; (iv) the power to object to Claims, including, without limitation, the power to seek subordination or recharacterization of Claims by objection, motion, or adversary proceeding, as applicable; (v) the power and authority to conduct, facilitate, and administer the Wind-Down pursuant to the terms of this Plan, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Entity or its members or any payments to be made in connection therewith, other than the filing of a certificate of cancellation with the appropriate governmental authorities, pursuant to Section 18-203 of the Delaware Limited Liability Company Act codified at title 6 of the Delaware Code or other applicable state or foreign law; (vi) the power and authority to pursue Insurance Policy proceeds (including the authority to settle with any Insurance Company with respect to an Insurance Policy); and (vii) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan, the Plan Supplement, the Liquidating Trust Agreement, or by an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.

(e)    *Compensation of the Liquidating Trustee*

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall fully comply with the terms, conditions, and rights set forth in this Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trustee (and any professionals retained by the Liquidating Trustee) shall not be required to File a fee application to receive compensation.

(f)    *Retention and Payment of Professionals*

The Liquidating Trustee shall have the right, without Bankruptcy Court approval, to retain the services of attorneys, accountants, and other professionals that the Liquidating Trustee determines, in his or her sole discretion, are necessary to assist in performing his or her duties.

34030755.3

31

54222723.3

In accordance with the Liquidating Trust Agreement, the Liquidating Trust shall pay from the Wind- Down Assets the reasonable fees and expenses of such professionals upon the monthly submission of statements to the Liquidating Trust without further order of the Bankruptcy Court.

(g)    *Payment of Liquidating Trust Expenses*

Any and all reasonable and documented costs and expenses incurred by the Liquidating Trust in connection with the Wind-Down shall be paid from the Liquidating Trust Assets, subject to the Liquidating Trust Agreement.

7.    Termination of the Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries; and (b) the fifth anniversary of the creation of the Liquidating Trust; *provided* that, if warranted by the facts and circumstances involved in resolving or monetizing any Liquidating Trust Assets, upon application to, and if approved by, the Bankruptcy Court upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Liquidating Trust Assets and distributing the proceeds to Liquidating Trust Beneficiaries, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified term in accordance with applicable tax laws and regulations. This application must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

E.    **Insurance Provisions**

(a)    Except for the transfer of rights to the Liquidating Trust pursuant to the Insurance Rights Transfer, or as otherwise provided by the Bankruptcy Code, applicable law, the findings made by the Bankruptcy Court in the Confirmation Order, or otherwise, nothing in the Plan shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy issued by any Insurance Company, or the rights or obligations under any such Insurance Policy to the extent such rights and obligations are otherwise available under applicable law, and the rights and obligations, if any, of any Insurance Company relating to or arising out of the Plan Documents, including the Plan, the Confirmation Order, or any provision thereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law.

(b)    Nothing in this Section IV.F of the Plan is intended or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Person.

F.        **U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust**

For all U.S. federal and applicable state, local, and non-U.S. income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Liquidating Trust, other than the Disputed Claims Reserve, as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code.  In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust.  Moreover, for all U.S. federal and applicable state, local, and non-U.S. income tax purposes, it is intended that (1) the Liquidating Trust Beneficiaries be treated as if they had (i) received a distribution from the Estate of an undivided interest in the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable Assets) and (ii) subsequently contributed such undivided interest to the Liquidating Trust in exchange for an interest in the Liquidating Trust and (2) the Liquidating Trust Beneficiaries be treated as the grantors of the Liquidating Trust and as deemed owners of the Liquidating Trust and Liquidating Trust Assets. The terms of the Liquidating Trust Agreement shall be consistent with the foregoing tax treatment, and no party hereto shall take any position inconsistent herewith.

For all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.  Following the funding of the Liquidating Trust, Norcold LLC shall provide a "§ 1.468B-9 Statement" in respect of the Disputed Claims Reserve to the Liquidating Trustee in accordance with Treasury Regulation section 1.468B-9(g).

The Liquidating Trustee shall be responsible for filing all tax returns for the Liquidating Trust and the Debtor.  The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets.  The Liquidating Trustee may request an expedited determination of taxes of the Debtor under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtor for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete and deliver to the Liquidating Trustee the appropriate IRS Form W-8 or IRS Form W-9, as applicable.  Notwithstanding any other provision of this Plan, (i) each Holder of an Allowed Claim that is to receive a distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such distribution and (ii) no distribution shall be made to or on behalf of such Holder under this Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee

34030755.3

33

54222723.3

to allow it to comply with the Liquidating Trustee's tax withholding and reporting requirements. All Holders of Allowed General Unsecured Claims are deemed to have agreed to use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes.

### G.   Preservation of Causes of Action

Except as otherwise provided in Article IX herein or in any contract, instrument, release, or agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Retained Causes of Action are preserved and shall vest in and be transferred to the Liquidating Trust on the Effective Date.

### H.   Corporate Action

#### 1.   Transfer of Assets and Assumption of Liabilities

On the Effective Date, (a) the Debtor shall, in accordance with this Plan, cause the Liquidating Trust Assets to be transferred to the Liquidating Trust; and (b) the Liquidating Trust shall assume all obligations of the Debtor under this Plan.

#### 2.   Removal of Directors and Officers; Termination of Employees and Consultants

On the Effective Date, and upon the Debtor causing the Liquidating Trust Assets to be transferred to the Liquidating Trust, the Debtor shall have no further duties or responsibilities in connection with implementation of this Plan, and the managers and officers of the Debtor shall be deemed to have resigned, and the engagement of consultants or other professionals of the Debtor shall be deemed to have terminated. From and after the Effective Date, the Liquidating Trustee shall be authorized to act on behalf of the Estate, *provided* that the Liquidating Trustee shall have no duties other than as expressly set forth in this Plan and the Liquidating Trust Agreement (as applicable).

For the avoidance of doubt, after the Effective Date, the Debtor will continue to exist with respect to (i) any applications for Professional Fee Claims or expense reimbursements for its Retained Professionals, including preparing, objecting to, defending, and attending any hearing with respect to the same; (ii) any motions or other actions seeking enforcement or implementation of the provisions of this Plan or Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect, in any material way, any cases, controversies, suits, or disputes arising in connection with the consummation, interpretation, implementation, or enforcement of this Plan or the Confirmation Order. Following the Effective Date, the Debtor's Retained Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (i) through (iii).

### I.   Books and Records

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtor and the Estate that were not sold and transferred pursuant to the

34030755.3

54222723.3

Sale; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of the same is no longer necessary or beneficial. To the extent that the Debtor's books and records were transferred to the Purchaser pursuant to the Sale, the Liquidating Trust shall be granted reasonable access to the Debtor's books and records, on a cost-free basis, for the purposes of (i) the Wind-Down and (ii) reconciling Claims and making distributions of the Liquidating Trust Assets (including the Liquidating Trust Unsecured Pool) to the Liquidating Trust Beneficiaries.

Notwithstanding anything to the contrary in the Liquidating Trust Agreement, prior to disposing of the Debtor's books and records, the Liquidating Trustee shall file a notice of its intent to abandon or destroy such records with a ten (10) business day objection period and serve the notice on counsel to the Post-Effective Date Debtor (if applicable), the Purchaser, the U.S. Trustee, and all other parties requesting notice pursuant to Bankruptcy Rule 2002. If no objections are received by the expiration of the ten (10) business day objection period, the Liquidating Trustee shall be authorized to abandon and/ or destroy the books and records as set forth in the notice.

## J. Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtor and the Liquidating Trustee (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The Debtor, the Liquidating Trustee, all Holders of Claims receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

## K. Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, as applicable, transfers of property pursuant to this Plan shall not be subject to any stamp tax or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax and are authorized to accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax. Such exemption specifically applies, without limitation, to the transfer of the Liquidating Trust Assets to the Liquidating Trust.

## L. Sale Orders

Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair, or supersede any Sale Order entered by the Bankruptcy Court, as applicable, which will remain in full force and effect and govern in the event of any inconsistency with this Plan.

34030755.3

35

54222723.3

**M.      Authority to Act**

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the members, security holders, officers, managers, partners, or other owners of the Debtor shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtor is formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, partners, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

**N.      No Revesting of Liquidating Trust Assets**

No Liquidating Trust Assets will revest in the Debtor on or after the date such assets vest or are transferred to the Liquidating Trust but will vest upon such transfer in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with this Plan and the Liquidating Trust Agreement.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES**

**A.      General Treatment**

On the Effective Date, except as otherwise provided herein (which exclusion includes the Insurance Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that are (i) specifically designated on the Assumption Schedule filed with the Plan Supplement or (ii) the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

**B.      Rejection Damages Claims**

If the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be subject to disallowance and, to the extent disallowed, shall be forever barred and shall not be enforceable against the Debtor, the Estate, the Liquidating Trustee, Liquidating Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent within twenty-one (21) days of the applicable counterparty to an Executory

34030755.3

54222723.3

36

Contract or Unexpired Lease receiving notice of such rejection and the deadline to file any Claims, which notice may be included in the notice of the Effective Date of this Plan.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under this Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be subject to disallowance and, to the extent disallowed, shall be barred and unenforceable unless otherwise ordered by the Bankruptcy Court. Claims arising from the rejection of Executory Contracts or Unexpired Leases under this Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Article III.B.5 herein; *provided*, *however*, that the foregoing provision shall not limit the rights of any counterparty to an Executory Contract or Unexpired Lease who continued to provide goods or services to the Debtor following the Petition Date to seek to have its Claim(s) Allowed as Administrative Claim(s); *provided*, *further*, *however*, that any such Administrative Claims shall be filed no later than the Administrative Claims Bar Date.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.  Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor, or its respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtor or the Liquidating Trustee (as applicable); *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder and the Debtor or Liquidating Trustee (as applicable) shall have no obligation to determine alternative or current addresses.

### B.  Withholdings

The Liquidating Trustee shall (1) withhold, deduct, and pay over to the appropriate governmental authority any amount required to be withheld under tax laws with respect to any distribution pursuant to the Liquidating Trust Agreement; and (2) comply with any reporting requirements imposed by any federal, state, local, or foreign taxing authority.  The Liquidating Trustee may withhold all or the appropriate portion of any distribution due to any Liquidating Trust Beneficiary until such time as such Liquidating Trust Beneficiary provides the necessary

34030755.3

37

54222723.3

information (*i.e.*, IRS Forms) to comply with any withholding requirements of any governmental authority. Any tax withheld shall be treated as distributed and received by the applicable beneficiary for all purposes of the Liquidating Trust Agreement and Plan. If a Liquidating Trust Beneficiary fails to provide the information necessary to comply with any withholding requirements of any governmental authority on or before the day that is six (6) months after the Effective Date of this Plan, then such beneficiary's distribution may be treated as unclaimed property in accordance with the Liquidating Trust Agreement.

### C.    Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date, and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### D.    Disbursing Agent

Except as otherwise provided herein, all distributions under this Plan shall be made by the Disbursing Agent on or after the Effective Date. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. If the Disbursing Agent is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust.

### E.    Powers of Disbursing Agent

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### F.    IRS Forms

In connection with this Plan, to the extent applicable, the Debtor and the Liquidating Trustee (as applicable) shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Debtor and the Liquidating Trustee (as applicable) shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtor and the Liquidating Trustee reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

34030755.3

38

54222723.3

As a condition precedent to receiving any distribution under this Plan, each Holder of an Allowed Claim that is entitled to a distribution under this Plan must provide the Liquidating Trustee an executed IRS Form. The Liquidating Trustee shall make an initial request (by first-class mail) to Holders of Allowed Claims for the information required under this section as soon as reasonably practicable after the Effective Date and after such Claims are Allowed for distribution purposes and shall specify a period of sixty (60) days to respond.  A second request shall be made after the expiration of the initial sixty (60) day period.  Each such request shall specify that (a) the information is being requested for purposes of potential distributions under this Plan, (b) Holders must promptly provide written notice of any change in address to the Liquidating Trustee, otherwise the Liquidating Trustee is authorized to conclusively rely on the address for such Holder listed on the Debtor's books and records or in any Filed Proof of Claim or transfer of Claim, and (c) that the failure to respond will result in disallowance of the Claim in accordance with this section of this Plan, absent further other of the Bankruptcy Court to the contrary.

An Allowed Claim of a Holder that fails to provide an executed IRS Form or provide any other required information to effectuate a distribution within thirty (30) days of service (by first-class mail) of the second request for the same shall be deemed disallowed and expunged for purposes of distributions under this Plan.  For the avoidance of doubt, the Liquidating Trust is not required to follow up with any Holder of an Allowed Claim if they fail to timely provide an executed IRS Form following service of the requests set forth above.

### G.   Delivery of Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (a) is returned as undeliverable for lack of a current address or otherwise; or (b) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within sixty (60) calendar days after the mailing of such distribution, the Liquidating Trustee shall be authorized to cancel such distribution check.  For the avoidance of doubt, the Liquidating Trustee shall have no affirmative obligation to locate the correct current address of such Holder.  Thirty (30) calendar days after the cancellation of a distribution check by the Liquidating Trustee, if the Holder has not provided the Liquidating Trustee with written notice of a change of address, (a) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Liquidating Trust for distribution in accordance with this Plan and the Liquidating Trust Agreement and (b) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under this Plan, absent further other of the Bankruptcy Court to the contrary.

### H.   Manner of Payment

Any distributions to be made by or on behalf of the Debtor or the Liquidating Trustee (as applicable) pursuant to this Plan shall be made by checks drawn on accounts maintained by

34030755.3

39

54222723.3

the Debtor or the Liquidating Trustee (as applicable), or by wire transfer if circumstances justify, at the option of the Debtor or the Liquidating Trustee (as applicable).

### I.    Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

### J.    Setoffs and Recoupments

The Debtor or the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy and/or non-bankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtor or the Estate may have against the Holder of such Allowed Claim; *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Trustee (as applicable) of any such claim the Debtor or the Estate may have against the Holder of such Claim. The Liquidating Trustee shall be required to file such notice on the docket of the Chapter 11 Case.

### K.    Minimum Distributions

No payment of Cash in an amount of less than one-hundred U.S. dollars ($100.00) shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with this Plan and the Liquidating Trust Agreement.

If the Cash available for the final distribution is less than the cost to distribute such funds, the Liquidating Trustee may donate such funds to the unaffiliated charity of the Liquidating Trustee's choice.

### L.    Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under this Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

### M.    Distributions Free and Clear

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

34030755.3

40

54222723.3

### N.      Claims Paid or Payable by Third Parties

#### 1.      Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtor and/or the Liquidating Trustee (as applicable) on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed, and if the Claim was paid or satisfied in full other than through the Debtor and/or the Liquidating Trustee (as applicable), then such Claim shall be disallowed, and any recovery in excess of a single recovery in full shall be paid over to the Debtor or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed; *provided*, *however*, that a notice of satisfaction shall be Filed and served reflecting that a particular Claim has been satisfied.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtor and/or the Liquidating Trustee (as applicable) on account of such Claim, such Holder shall, within fourteen (14) Business Days of receipt thereof, repay or return the distribution to the Debtor or Liquidating Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.

#### 2.      Claims Payable by Third Parties

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's Insurance Policies until the Holder of such Allowed Claim has exhausted such Insurance Policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurer's payment of such Claim, the applicable portion of such Claim may be expunged up to the amount of the insurance proceeds paid and received (and the Claims Register adjusted accordingly) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, that the Debtor or the Liquidating Trustee, as applicable, shall serve notice of such satisfaction or partial satisfaction on the affected Holder of the applicable Claim.

#### 3.      Applicability of Insurance Policies

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall account for any payments made in accordance with the provisions of any applicable Insurance Policy.  Except as set forth in Article IX herein, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity, including the Liquidating Trust, may hold against any other Person or Entity, including Insurance Companies under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurance Company of any defenses, including coverage defenses, held by such Insurance Company.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies alleged or which may be alleged in pending litigation with respect to such Insurance Policy.  To the extent that one or more of the Debtor's Insurance Companies agrees to satisfy in full or in part a Claim, then immediately upon such Insurance

Company's agreement, the applicable portion of such Claim may be expunged up to the amount of the insurance proceeds paid and received without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court. If an applicable Insurance Policy has a self-insured retention ("SIR") or a deductible, the Holder of an Allowed Litigation Claim that is payable pursuant to such Insurance Policy, upon the allowance of such Claim, shall have an Allowed Litigation Claim against the Debtor up to the amount of the portion of the Allowed Litigation Claim that remains unpaid by any applicable Insurance Policy up to the amount of the SIR, and such Holder's recovery from the Liquidating Trust shall be solely in the form of its distribution on account of such Allowed Litigation Claim in Class 5 under the Plan. Such SIR shall be considered satisfied pursuant to the Plan through allowance of the Litigation Claim solely in the amount of the applicable SIR, if any, and nothing herein obligates the Debtor, the Post-Effective Date Debtor, or the Liquidating Trust to otherwise satisfy any SIR under any Insurance Policy nor shall the Debtor be permitted to interfere with payment under any applicable insurance policies proffered by the Debtor's insurance carriers. Any recovery on account of the Litigation Claim in excess of the SIR established upon the liquidation of the Claim shall be recovered solely from the Debtor's insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof, irrespective of whether or not the Debtor can satisfy the SIR. Nothing in this Plan shall be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim is payable pursuant to an Insurance Policy. Nothing herein relieves any Entity from the requirement to timely file a Proof of Claim by the applicable Bar Date.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

### A.    Allowance of Claims

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses that the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

### B.    Claims Administration Responsibilities

Except as otherwise specifically provided in this Plan, after the Effective Date, the Liquidating Trustee shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; *provided, however,* the allowance and payment of any amounts from the Wind-Down Amount or Excess Cash shall be subject to Article IV.D.1 of this Plan.

### C.    Estimation of Claims

Before or after the Effective Date, the Debtor or the Liquidating Trustee (as applicable) may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for

34030755.3

42

54222723.3

any reason, regardless of whether any party has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection (provided, however, that nothing in this subsection VII.C shall bar any preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, or issue preclusion), and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under this Plan (including for purposes of distributions), and the Debtor or the Liquidating Trustee (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.   Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by the Purchaser in the Sale, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtor or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed following a notice filed on the docket (*i.e.*, a notice of satisfaction of claims) in the Bankruptcy Court of such adjustment or expungement.

### E.   Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended upon entry of an order by the Bankruptcy Court).

### F.   Disallowance of Late Claims

Except as provided in the Plan or otherwise agreed to by the Debtor or the Liquidating Trustee (as applicable), any Holder of a Claim Filed, via proof of claim, after the Bar Date shall not receive any distributions on account of such Claims to the extent such Claim has been disallowed and expunged upon objection on notice to the affected Claimant.

### G.   Disputed Claims

All Claims held by Persons or Entities against whom or which the Debtor or the Liquidating Trustee (as applicable) has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan. A Claim deemed Disputed pursuant to this Article VII.G shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or

34030755.3

43

54222723.3

resolved by a Final Order and any sums due to the Debtor or the Liquidating Trustee (as applicable) from such Holder have been paid.

**H.      No Distributions Pending Allowance**

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under this Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

**I.      Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan and the Liquidating Trust Agreement (as applicable).  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.  No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

**ARTICLE VIII.**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**A.      Conditions Precedent**

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent provided, that, notwithstanding when a condition precedent to the Effective Date occurs, for purposes of this Plan, such condition precedent shall be deemed to have occurred simultaneously with the last condition precedent to the Effective Date to occur.

1.      The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to this Plan within the meaning of section 1125 of the Bankruptcy Code.

2.      The Bankruptcy Court shall have entered the Confirmation Order in full force and effect as a Final Order.

3.      There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the transactions contemplated by this Plan from being consummated.

4.      The Professional Fee Claim Reserve shall have been fully funded in an amount equal to the Professional Fee Claim Reserve Amount pursuant to the terms of this Plan.

5.      The Sale Documents shall have been approved and executed by the parties thereto.

34030755.3

54222723.3

44

6.      All actions, documents and agreements necessary to implement this Plan shall have been effected, executed, and/or tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7.      The Liquidating Trust Agreement shall have been approved and executed by the parties thereto.

8.      The Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under this Plan and the Liquidating Trust Agreement, as applicable.

9.      The Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any transaction contemplated hereby that are required by law, regulation, or order.

**B.      Waiver of Conditions**

Unless otherwise specifically provided for in this Plan, the conditions set forth in Article VIII.A may be waived in whole or in part by the Debtor, in consultation with the Committee, without notice to any parties in interest or the Bankruptcy Court and without a hearing.

**C.      Effect of Vacatur of the Confirmation Order**

If the Confirmation Order is vacated: (1) this Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in this Plan will (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor or (b) prejudice in any manner the rights, including any claims or defenses, of any party in interest.

**D.      Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code.

**ARTICLE IX.**
**RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**A.      Releases by the Debtor**

**As of the Effective Date, except as otherwise provided in this Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code and for good and valuable consideration, each Debtor Released Party is deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtor and the Estate from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtor, the Estate, or a person with standing acting derivatively on behalf of the Debtor or the Estate would**

34030755.3

45

54222723.3

have been legally entitled to assert based on, or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership, or operation thereof, or otherwise), any securities issued by the Debtor and the ownership thereof, the Debtor's in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sale, the DIP Orders, the DIP Credit Agreement, and any related agreement, instruments, and other documents relating thereto, this Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, this Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the Sale Process, the pursuit of consummation, the administration and implementation of this Plan, including the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, *however*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan; (2) any obligations under or in respect of the Sale Order, the Sale Documents; or (3) the Retained Causes of Action.

### B.    Releases by Holders of Claims

As of the Effective Date,  except as otherwise provided in this Plan or the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtor under this Plan and the contributions of the Released Parties to facilitate and implement this Plan, to the fullest extent permissible under applicable law, each Releasing Party shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release each Released Party from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtor, the Estate, or a person with standing acting derivatively on behalf of the Debtor or the Estate would have been legally entitled to assert based on, relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership or operation thereof, or otherwise), any securities issued by the Debtor and the ownership thereof, the Debtor's in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sale, or agreement or document created or entered into in connection with the Sale, the DIP Orders, the DIP Credit Agreement, and any related agreement, instruments, and other documents relating thereto, this Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the Sale Process, the pursuit of consummation, the administration and implementation of this Plan, including the distribution of property

34030755.3

46

54222723.3

**under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided, however,* that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under this Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan; or (2) any obligations under or in respect of the (i) Sale Order and (ii) the Sale Documents.**

#### C.    Exculpation

**Except as otherwise specifically provided in this Plan, to the maximum extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim related to any act or omission arising from the Petition Date through and including the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Debtor's in-court restructuring efforts, the Disclosure Statement, documents and pleadings related to the Sale, the DIP Orders and any related agreement, instruments, and other documents relating thereto, this Plan, the Plan Supplement, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, this Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of the Confirmation Order, the pursuit of the Sale Order, the conduct of the Sale Process, the pursuit of consummation, the administration and implementation of this Plan, including the distribution of property under this Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person, but in all respects such Entities shall be entitled to reasonably rely upon the written advice of counsel with respect to their duties and responsibilities pursuant to this Plan to the extent permitted under applicable law.**

#### D.    Injunction

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtor. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtor.  As such, no Entity holding a Claim against the Debtor may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation

34030755.3

47

54222723.3

Order. Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Estate, the Liquidating Trust, their successors and assigns, and any of their assets and properties; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Estate, the Liquidating Trust, their successors and assigns, and any of their assets and properties; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Estate, the Liquidating Trust, their successors and assigns, and any of their assets and properties; (iv) asserting any right of setoff or subrogation of any kind against any obligation due from the Estate, the Liquidating Trust or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed Proof of Claim; or (v) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action released under Article IX of the Plan.

Except as otherwise provided in this Plan or the Confirmation Order, all Entities who have provided a release or are subject to the exculpation provisions pursuant to Article IX.A, B, or C of the Plan are permanently enjoined and precluded, from and after the Effective Date, from taking any actions to interfere with the implementation or consummation of this Plan and from commencing or continuing in any manner, any action or other proceeding on account of any such released or exculpated claims, Interests, Causes of Action, or liabilities against any Person or Entity so released (or the property or estate of any Entity, directly or indirectly, so released), including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, any Released Party or Exculpated Party to whom the Releasing Party has provided a release: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests ((i) other than a setoff exercised prior to the Petition Date, (ii) unless such Entity has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law; or (iii) otherwise permissible under applicable law, asserted through a timely filed or deemed timely filed proof of claim); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released, exculpated, or settled pursuant to this Plan.

### E. <u>Waiver of Statutory Limitations on Releases</u>

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THIS PLAN (INCLUDING UNDER ARTICLE IX OF THIS PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY

34030755.3

54222723.3

NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST  IN THEIR FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND  TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES  THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS.  WITHOUT  LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY  EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND  TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS  FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY  HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY,  INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542.   THE RELEASES CONTAINED IN ARTICLE IX OF THIS PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

### F.     No Discharge

Because the Debtor is liquidating, the Debtor is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims.

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Plan does not discharge the Debtor. Bankruptcy Code Section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and interests against the Debtor, and Bankruptcy Code Section 1141(a) provides that the Plan, as confirmed, will be binding to the extent provided therein. As such, no Entity holding a Claim against the Debtor may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

### G.     Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtor's Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtor and its successors and assigns.

If any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take

34030755.3

49

54222723.3

any and all steps requested by the Liquidating Trustee that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

## ARTICLE X.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case, the Sales, the Confirmation Order, the Plan Supplement, and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction over, among other items, each of the following:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.      Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.      Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or this Plan.

4.      Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date.

6.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action.

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement.

34030755.3

54222723.3

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of this Plan or any Person's or Entity's obligations incurred in connection with this Plan.

10.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of this Plan.

11.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13.      Determine any other matters that may arise in connection with or related to the APA or related Sale documents, the Disclosure Statement, this Plan, the Plan Supplement, and the Confirmation Order.

14.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan.

15.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16.      Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

17.      Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Plan Supplement, or the Confirmation Order.

18.      Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtor or the Liquidating Trustee on behalf of the Liquidating Trust (as applicable) for an expedited determination of tax under section 505(b) of the Bankruptcy Code.

19.      To recover all assets of the Debtor and property of the Estate, wherever located.

20.      To consider requests for extensions of the term of the Liquidating Trust as provided herein.

21.      Enter an order or final decree concluding or closing the Chapter 11 Case.

22.      Enforce all orders previously entered by the Bankruptcy Court.

34030755.3

51

54222723.3

23.     Hear any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN

### A.     Modification of this Plan

Subject to the limitations contained in this Plan, the Debtor reserves the right, in consultation with the Committee and in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify this Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor may, in consultation with the Committee and upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

### B.     Other Amendments

The Debtor, in consultation with the Committee, may make appropriate non-material, technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### C.     Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### D.     Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date

Subject to the conditions to the Effective Date, the Debtor reserves the right to revoke or withdraw this Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation.  If the Debtor revokes or withdraws this Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in this Plan, the Plan Supplement, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtor or any other Person or Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person or Entity.

34030755.3

52

54222723.3

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.    Debtor's Operation from Confirmation Hearing Through Effective Date

During the period from the Confirmation Hearing through and until the Effective Date, the Debtor shall continue to operate as a debtor-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### B.    Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Liquidating Trustee, all Holders of Claims against and Interests in the Debtor (regardless of whether any such Holder has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder is entitled to receive any distribution under this Plan), all Persons or Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in this Plan, each Person or Entity acquiring property under this Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

### C.    Additional Documents

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtor, the Liquidating Trustee, all Holders of Claims or Interests receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

### D.    Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### E.    Reservation of Rights

This Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

34030755.3

54222723.3

F.      **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Person or Entity.

G.      **Determination of Tax Liabilities**

As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Estate and Liquidating Trust; *provided*, *however*, that the Liquidating Trustee shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtor (which Interests shall be cancelled pursuant to this Plan), but shall provide such Holders with any information reasonably required to prepare such forms.  The Debtor and the Liquidating Trustee (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Estate or the Liquidating Trust for any tax incurred during the administration of the Chapter 11 Case.

H.      **Dissolution of the Committee**

On the Effective Date, the Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Case; *provided*, *however*, that, after the Effective Date, the Committee will continue to exist solely with respect to (1) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing, objecting to, defending, and attending any hearing with respect to the same; (2) any motions or other actions seeking enforcement or implementation of the provisions of this Plan or Confirmation Order; and (3) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way the treatment of the Holders of General Unsecured Claims, including, but not limited to, any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of this Plan, the Plan Supplement, or the Confirmation Order.  Following the Effective Date, the Committee's Retained Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (1) through (3).

I.      **Notices**

In order for all notices, requests, and demands to or upon the Debtor or the Liquidating Trustee, as the case may be, to be effective, such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

34030755.3

54

54222723.3

| Debtor | Counsel to the Debtor |
|---|---|
| **Norcold LLC**<br>Attn:  Petrus Johannes Adriana Struijs<br>(pstruijs@thetford.eu) | **Young Conaway Stargatt & Taylor, LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attention: Sean M. Beach, Esq.; Matthew B. Lunn, Esq.; Jared W. Kochenash, Esq.<br>Email: sbeach@ycst.com; mlunn@ycst.com; jkochenash@ycst.com |
| **Liquidating Trustee** | **Counsel to the Liquidating Trustee** |
| **Olympus Guardians LLC**<br>Attn: Arian Eghbali<br>(arian@olympusguardian.com) | [●] |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Persons or Entities that Filed such renewed requests.

## J.      Term of Injunctions or Stays

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-Confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the Debtor or the Estate arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtor or the Estate; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Case is closed pursuant to a Final Order of the Bankruptcy Court or (b) the date that the Chapter 11 Case is dismissed pursuant to a Final Order of the Bankruptcy Court.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect indefinitely.

## K.      Entire Agreement

On the Effective Date, this Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

34030755.3

55

54222723.3

L.      **Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan.  Copies of such exhibits and documents shall be made available upon written request to the Debtor's counsel or the Liquidating Trustee's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of this Plan that does not constitute the Plan Supplement, such part of this Plan that does not constitute the Plan Supplement shall control.  The documents in the Plan Supplement are considered an integral part of this Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

M.      **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

N.      **Non-Severability of Plan Provision Upon Confirmation**

If any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the consent of the Debtor and the Liquidating Trustee (as applicable); and (3) non-severable and mutually dependent.

O.      **Closing of the Chapter 11 Case**

Following the Effective Date, the Liquidating Trustee shall be permitted, upon notice and a hearing, to close the Chapter 11 Case.  After the full administration of the Chapter 11 Case, the Liquidating Trustee shall promptly File with the Bankruptcy Court all documents required by

34030755.3

54222723.3

Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

*[Signature Page Follows]*

Dated:  February 17, 2026

Respectfully submitted,


/s/_____
By: Richard Wu
Chief Restructuring Officer
Norcold LLC

34030755.3